## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

RCM Technologies, Inc.                          *
20 Waterview Boulevard
Parsippany, NJ  07054                           *

            Plaintiff,               *

   v.                                           *

Beacon Hill Staffing Group, LLC                 *        Case No. _____
152 Bowdoin Street
Boston, MA  02108                               *

     Serve On:                                *
     Corporation Service Company
     Registered Agent                         *
     1090 Vermont Avenue, N.W.
     Washington, D.C.  20005                  *

  and                                           *

Kimberly A. Ayers                               *
1375 Kenyon Street, N.W.
Apartment 414                                   *
Washington, D.C.  20010-7209
                                                *
           Defendants.          *

*     *     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

Plaintiff, RCM Technologies, Inc. ("RCM"), states as follows:

## PARTIES

1.        RCM is a Nevada corporation with its principal place of business in Parsippany,

New Jersey.  RCM is engaged in the business of providing contract and temporary employees to

perform technical and IT development services for the company's clients.

2.      Beacon Hill Staffing Group, LLC ("Beacon Hill") is a Massachusetts limited liability company with its principal business in Boston, Massachusetts and with an office in the District of Columbia.   Beacon Hill is engaged in the business of providing contract and temporary employees to perform technical and IT services for the company's clients.

3.      Kimberly Ayers ("Ayers") is a citizen of the District of Columbia who is employed by Beacon Hill.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction in this case pursuant to 28 U.S.C. § 1332.

5.      This Court is a proper venue for this case pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

6.      From August 2006 until November 2006, RCM employed Ayers as a Senior Technical Recruiter at RCM's office in Rockville, Maryland.

7.      As a Senior Technical Recruiter, Ayers was responsible, among things, for recruiting candidates for RCM's technical and IT development staffing needs.

8.      When RCM hired Ayers, she signed a Non-Disclosure/Non-Solicitation/Non-Competition Agreement ("the Agreement") which provides in paragraphs 4 and 5 as follows:

**4.      Non-Solicitation**

Employee agrees that he/she will not, during the term of his/her employment or for one year thereafter, do or commit any of the following acts:

a.      Induce, entice, hire or attempt to hire or employ any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, either directly or on behalf of an individual or other entity who provides the same of similar services, processes, or products as the Company.

b.      Induce, or attempt to induce any person or entity, whether an employee of the Company or an independent contractor or a third party consultant

2

of any other person or entity of providing services to, for or on behalf of the Company, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with the Company.

\*        \*        \*

d.      Induce, or attempt to induce any individual to violate the provisions or prohibitions contained in the Agreement.

## 5.      Non-Competition.

The services provided by Employee are of a special, unique and extraordinary nature. Employee shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during his/her employment with the Company or any subsidiary or affiliate, or during the one-year period following termination, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by the Company. The limitations and restrictions contained in this paragraph shall apply only to a) present and former clients of the Company, irrespective of where located, to or for whom the Employee, while employed by the Company, has directly or indirectly provided services or caused the Company to provide services within the twelve months prior to the date of his/her termination of employment, or b) prospective customer/clients of the Company, irrespective of where located, to whose potential business the Company has given specific development attention within the twelve months prior to the date of his/her termination of employment.

A copy of the Agreement is Exhibit 1 to this Complaint.

9.      On or about December 1, 2006, Ayers resigned from her employment with RCM.

10.     When Ayers resigned, she told RCM that she was resigning for personal reasons.

11.     In or about January 2007, Ayers began working for Beacon Hill in a position responsible for recruiting candidates to staff that company's contracts with its clients.

12.     Beacon Hill is a direct competitor of RCM in the Washington Metropolitan Area.

13.     As of May 17, 2006, RCM employed Scott M. Baillie ("Baillie") and William Blackford ("Blackford") as Technical Recruiters.

3

14.     When hired by RCM, Baillie and Blackford signed contracts with terms identical to the provisions of the Agreement. Copies of those contracts are Exhibits 2 and 3 to this Complaint.

15.     Ayers supervised Baillie and Blackford while she was employed RCM.

16.     After Ayers was hired by Beacon Hill, Ayers and Beacon Hill induced, enticed, and attempted to hire Baillie and Blackford to work as Recruiters for Beacon Hill.

17.     On December 14, 2006, Baillie and Blackford resigned from their employment with RCM.

18.     When Baillie and Blackford resigned, they gave RCM no reason for doing so.

19.     Beacon Hill currently employs Ayers, Baillie and Blackford to recruit personnel to staff that company's clients.

### FIRST COUNT
### (BREACH OF CONTRACT—AYERS)

20.     RCM incorporates by reference the allegations in paragraphs 1 through 19.

21.     Ayers has breached the Agreement by performing services for Beacon Hill.

22.     Ayers has breached the Agreement by inducing, enticing, and attempting to hire Baillie and Blackford to work for Beacon Hill.

23.     Ayers' breach of the Agreement caused RCM to sustain consequential damages.

### SECOND COUNT
### (TORTIOUS INTERFERENCE WITH CONTRACT—BEACON HILL)

24.     RCM incorporates by reference the allegations in paragraphs 1 through 23.

25.     Beacon Hill intentionally and knowingly recruited and employed Ayers to work in a capacity that breached the terms of the Agreement.

4

26.    Beacon Hill has acted tortiously in soliciting, recruiting, hiring, and employing Ayers in violation of the Agreement.

27.    Beacon Hill's tortious conduct has caused RCM to sustain compensatory damages.

28.    In hiring and employing Ayers, Beacon acted knowingly, intentionally, maliciously, and in willful disregard of RCM's rights and interests.

## THIRD COUNT
## (TORTIOUS INTERFERENCE WITH CONTRACT—AYERS AND BEACON HILL)

29.    RCM incorporates by reference the allegations in paragraphs 1 through 28.

30.    Ayers and Beacon Hill intentionally and knowingly induced, enticed, attempted to hire, and hired Baillie and Blackford to work for Beacon Hill in a capacity that breached the terms of the Agreements signed by Baillie and Blackford while employed by RCM.

31.    Ayers and Beacon Hill acted tortiously in inducing, enticing, attempting to hire, and hiring Baillie and Blackford and employing them in violation of their Agreements with RCM.

32.    The tortious conduct of Ayers and Beacon Hill has caused RCM to sustain compensatory damages.

33.    In inducing, enticing, attempting to hire, hiring, and employing Baillie and Blackford, Ayers and Beacon Hill acted knowingly, intentionally, maliciously, and in willful disregard of RCM's rights and interests.

WHEREFORE, RCM asks the Court to enter judgment, jointly and severally, against Ayers and Beacon Hill for: (1) compensatory, consequential, and punitive damages in an amount that will be proven at trial and that will exceed $75,000.00; (2) the costs incurred by RCM in conjunction with this case; and (3) such other relief deemed appropriate by the Court.

## JURY DEMAND

RCM demands a jury trial on all claims properly triable to a jury.

Respectfully submitted,

R. Michael Smith (D.C. Bar No. 372654)
Gordon, Feinblatt, Rothman,
  Hoffberger & Hollander, LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland  21202-3332
410-576-4174
Attorney for RCM Technologies, Inc.

520984.1
4/11/2007

EXHIBIT
1



RCM Technologies
*The Source of Smart Solutions*

## NON-DISCLOSURE / NON-SOLICITATION / NON-COMPETITION AGREEMENT

This Non-Disclosure / Non-Solicitation / Non-Competition Agreement ("Agreement") is entered into between **Kimberly Ayers** ("Employee") and RCM Technologies, Inc., ("Company") in light of the following background facts:

      A.     In the course of performing his/her job duties for the Company; the Company will provide Employee with certain confidential information, trade secrets, specialized training, and access to computer information, which are the exclusive proprietary information and property of the Company. The Company desires to protect such information from disclosure and prevent unfair competition by the Employee during employment and for a one-year period thereafter.

      B.     The Employee desires to be employed by the Company under the non-disclosure, non-solicitation, and non-competition restrictions contained in this Agreement, and acknowledges that, as a consequence of employment in a specialized position with the Company, he/she will be provided, or will be in a position to access, utilize, create, obtain, and/or receive confidential and proprietary information, trade secrets, training, and computer information which is the exclusive proprietary information and property of the Company.

      C.     In consideration of Employee's being given access to confidential and proprietary information, trade secrets, specialized training, benefits, access to various computer processes, designs, and programs, and/or for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that the following provisions will govern during the Employee's employment with the Company and for one year thereafter:

      1.     *Inventions.*

      Employee agrees that during employment he/she will promptly inform and disclose to the Company all copyrighted materials or programs, programs or materials subject to being copyrighted, inventions, designs, improvements and discoveries which he/she has or may have during his/her employment which pertain or relate to the business of the Company or to any research or experimental or developmental work carried on by the Company, or which results from or is suggested by any work performed by Employee on behalf of the Company or any of its customers. Such disclosure shall be made whether or not such programs, materials, inventions, designs, improvements and discoveries are conceived by the Employee alone or with others and whether or not conceived during regular working hours. All such copyrighted programs, materials, inventions, designs, improvements and discoveries shall be the exclusive property of the Company and Employee hereby assigns to the Company all of his right, title and interest therein. At the Company's sole expense, the Employee shall assist in obtaining patents or copyrights on all such inventions, programs, materials, designs, improvements and discoveries deemed patentable or subject to copyright by the Company and shall execute all documents and do all things necessary to obtain letters, patent, or vest the Company with full and exclusive title thereto, and protect the same against infringement by others. Employee will not be entitled to additional compensation for any inventions or designs made during the course of his/her employment.

      2.     *Government Compliance.*

      Employee will comply and will take all action necessary to enable the Company to comply with all state and federal government rules, regulations and terms and

conditions of contracts between agencies of the United States government or their contractors and the Company, which relate either to patent rights or to the safeguarding of information pertaining to the defense of the United States. Employee, at the time of signing this Agreement, has no right, title or interest in, or no right to assign (because it shall previously have been assigned) any copyrighted programs or materials, programs or materials subject to copyright, invention, design, improvement or discovery which pertains or relates to the Company's business

3.     *Trade Secrets.*

Due to the nature of the Company's business, maintaining confidentiality of information regarding the Company's operations, activities and plans is especially important. Employee has an affirmative obligation to protect the Company's information. The parties acknowledge and agree that trade secret and confidential and proprietary information are valuable assets of the Company. Solely by virtue of specialized employment with the Company, Employee will acquire knowledge of and gain access to trade secrets and confidential and proprietary information of the Company. Such trade secrets and confidential and proprietary information is defined as all items, materials, and information (whether or not reduced to writing and whether or not patentable or copyrightable) which belong to the Company, relate to the present or future business of the Company, are kept confidential or secret by the Company, or are not generally known in the industry in which the Company is engaged.

Trade secrets and confidential and proprietary information includes, without limitation, customer lists, personnel lists, fee schedules, training manuals and materials, devices, inventions, processes and compilations of information, records and specifications, computer database, programs and software, financial data and plans, profit margins and pricing policies and practices, sales and marketing techniques, history, and data forecasts, and personnel training techniques, materials and any Protected Health Information (PHI) that is covered by HIPAA (hereinafter collectively referred to as "Confidential Information"). The failure to designate particular information as confidential and/or proprietary and/or secret shall not preclude any later claim by the Company that such information is confidential and/or proprietary and/or secret. Employee agrees that he/she shall not disclose to any individual, corporation, firm or other entity, any Confidential Information, directly or indirectly, or in any way use, or cause, facilitate or allow any third party to use, Confidential Information in any way, either during the term of his/her employment or for one year thereafter, except as required in the course of his/her employment with the Company.

All Confidential Information provided to Employee during his/her employment is the exclusive property of the Company and/or its clients. No Confidential Information or copies, summaries or compilations of any kind will be removed from the Company's premises or the premises of the Company's customers under any circumstances whatsoever without prior written consent of the Company. Employee will return all Confidential Information, including copies, summaries or compilations of such information to the Company upon termination of employment or at any other time at the request of the Company.

4.     *Non-Solicitation.*

Employee agrees that he/she will not, during the term of his/her employment or for one year thereafter, do or commit any of the following acts:

a.     Induce, entice, hire or attempt to hire or employ any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, either directly or on behalf of an individual or other entity

who provides the same or similar services, processes, or products as the Company.

   b.   Induce, or attempt to induce any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with the Company.

   c.   Induce, or attempt to induce, any customer, supplier, vendor or any other person to cease doing business with the Company.

   d.   Induce, or attempt to induce any individual to violate the provisions or prohibitions contained in the Agreement.

5.  *Non-Competition.*

   The services provided by Employee are of a special, unique and extraordinary nature. Employee shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during his/her employment with the Company or any subsidiary or affiliate, or during the one-year period following termination, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by the Company. The limitations and restrictions contained in this paragraph shall apply only to a) present and former clients of the Company, irrespective of where located, to or for whom the Employee, while employed by the Company, has directly or indirectly provided services or caused the Company to provide services within the twelve months prior to the date of his/her termination of employment, or b) prospective customers/clients of the Company, irrespective of where located, to whose potential business the Company has given specific development attention within the twelve months prior to the date of his/her termination of employment.

   Employee further agrees and acknowledges that if he/she is on an assignment with a Company client, he/she will not continue to perform that same or similar assignment on behalf of another entity for a period of one year after the date that Employee ceases to perform that assignment for the Company.

6.  *Remedy for Breach.*

   Employee acknowledges that any violation of this Agreement may result in immediate termination and dismissal and may subject employee to a claim by the Company for money damages for any and all losses sustained as a result of the unauthorized release of any Confidential Information or the actions of Employee, which may have violated any provision of this Agreement.

   Employee acknowledges and agrees that the Company's remedies at law may be inadequate and that the Company shall have the right to seek injunctive relief in addition to any other remedy available to it. If Employee breaches this Agreement or any of the covenants contained herein, the Company has the right to, and will seek, appropriate injunctive relief as well as any and all other remedies and damages, to compel the enforcement of the terms stated herein.

   It is agreed by the parties that in the event of an actual or threatened breach by Employee of any of the provisions in this Agreement, in addition to any other remedy provided for herein or at law, the Company shall have the right to notify Employee's then present or prospective employer of the terms of this Agreement (including but not limited to providing a copy of this Agreement) without in any manner being liable for such action

7.  *Waiver.*

The failure of the Company to insist upon strict adherence to one or more of the covenants and restrictions contained herein, on one or more occasions, shall not be construed as a waiver, nor shall such course of action deprive the Company of the right thereafter to require strict compliance with the same.

8.  *Construction.*

Employee acknowledges that the restrictions upon his/her employment and the geographical restrictions hereby imposed are fair and reasonable and are reasonably required for the protection of the Company.  If any part of this Agreement is held unenforceable or invalid, the remaining parts thereof shall continue to be enforceable.  If the provisions imposing geographic or time restrictions are deemed unenforceable by a court of competent jurisdiction, then such provisions for the purposes of this Agreement shall include the maximum geographic area or time period which a court of competent jurisdiction determines to be reasonable, valid and enforceable.  To the extent that the court permits "blue-penciling," the parties to this Agreement intend that the court will take all action necessary to revise this Agreement so as to ensure its enforceability against Employee to the greatest extent consistent with law.

9.  *Governing Law/Jurisdiction.*

This Agreement shall be subject to and governed by the internal laws of the State of New Jersey irrespective of the choice of law rules in the state of execution of this Agreement or performance of employment.  Employee consents to the exercise of personal jurisdiction over him by the state and federal courts of New Jersey in the event of an actual or threatened breach of this Agreement by Employee.

10.  *Length of Employment/At Will Employment.*

Nothing contained in this Agreement shall be construed as guaranteeing Employee employment for any particular duration or length of time.  Employee's employment relationship with the Company is exclusively that of an at will employee and his/her employment may be terminated at any time, with or without cause.

11.  *Assignment.*

This agreement may be assigned without the consent of Employee in connection with the sale, transfer or other assignment of all or substantially all of the capital stock or assets of, or the merger of, the Company, provided that the party acquiring such capital stock or assets or into which the Company merges assumes in writing the obligations of the Company hereunder and provided further that no such assignment shall release the Company from its obligations hereunder.  Otherwise, any party may not assign the Agreement hereto without the prior written consent of all of the other parties.

12.  *No Violation of Existing Agreements/Restrictions*

Employee represents to the Company that other than the agreement which is Attachment D to Employee's employment offer letter of even date (the "Offer Letter"), he/she is not subject to any form of non-competition restrictions or agreements with any former employers or other organizations or entities, which would be violated by his/her contemplated employment with the Company under the arrangements set forth in the Offer Letter.  Employee agrees that he/she will not use or disclose to any current or future employee of the Company any proprietary or confidential information or trade secrets of any former employers or other organizations or entities that Employee may possess.  Employee acknowledges his understanding that the use or disclosure of proprietary or

confidential information or trade secrets of other persons or entities is a ground for termination of employment with the Company.

13.    *Understanding of Agreement*

Employee acknowledges that he/she has read and understands all of the provisions of this Agreement and the accompanying offer letter. Employee further acknowledges that he/she has had adequate time and opportunity to consult with his/her personal legal counsel or other advisors as Employee deemed necessary in order to come to a complete understanding of the provisions of this Agreement and enters into this Agreement voluntarily and on the basis of that understanding.

_____          9.18.06

Employee                                                 Dated: August____, 2006

_____

Human Resources                                     Dated: August 30, 2006



**EXHIBIT**

**2**



RCM ) Technologies
The Source of Smart Solutions

## NON-DISCLOSURE / NON-SOLICITATION / NON-COMPETITION AGREEMENT

This Non-Disclosure / Non-Solicitation / Non-Competition Agreement ("Agreement") is entered into between Scott Baillie ("Employee") and RCM Technologies, Inc., ("Company") in light of the following background facts:

A.    In the course of performing his/her job duties for the Company, the Company will provide Employee with certain confidential information, trade secrets, specialized training, and access to computer information, which are the exclusive proprietary information and property of the Company. The Company desires to protect such information from disclosure and prevent unfair competition by the Employee during employment and for a one-year period thereafter.

B.    The Employee desires to be employed by the Company under the non-disclosure, non-solicitation, and non-competition restrictions contained in this Agreement, and acknowledges that, as a consequence of employment in a specialized position with the Company, he/she will be provided, or will be in a position to access, utilize, create, obtain, and/or receive confidential and proprietary information, trade secrets, training, and computer information which is the exclusive proprietary information and property of the Company.

C.    In consideration of Employee's being given access to confidential and proprietary information, trade secrets, specialized training, benefits, access to various computer processes, designs, and programs, and/or for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that the following provisions will govern during the Employee's employment with the Company and for one year thereafter:

1.    *Inventions.*

Employee agrees that during employment he/she will promptly inform and disclose to the Company all copyrighted materials or programs, programs or materials subject to being copyrighted, inventions, designs, improvements and discoveries which he/she has or may have during his/her employment which pertain or relate to the business of the Company or to any research or experimental or developmental work carried on by the Company, or which results from or is suggested by any work performed by Employee on behalf of the Company or any of its customers. Such disclosure shall be made whether or not such programs, materials, inventions, designs, improvements and discoveries are conceived by the Employee alone or with others and whether or not conceived during regular working hours. All such copyrighted programs, materials, inventions, designs, improvements and discoveries shall be the exclusive property of the Company and Employee hereby assigns to the Company all of his right, title and interest therein. At the Company's sole expense, the Employee shall assist in obtaining patents or copyrights on all such inventions, programs, materials, designs, improvements and discoveries deemed patentable or subject to copyright by the Company and shall execute all documents and do all things necessary to obtain letters, patent, or vest the Company with full and exclusive title thereto, and protect the same against infringement by others. Employee will not be entitled to additional compensation for any inventions or designs made during the course of his/her employment.

2.    *Government Compliance.*

Employee will comply and will take all action necessary to enable the Company to comply with all state and federal government rules, regulations and terms and

conditions of contracts between agencies of the United States government or their contractors and the Company, which relate either to patent rights or to the safeguarding of information pertaining to the defense of the United States. Employee, at the time of signing this Agreement, has no right, title or interest in, or no right to assign (because it shall previously have been assigned) any copyrighted programs or materials, programs or materials subject to copyright, invention, design, improvement or discovery which pertains or relates to the Company's business

3.    *Trade Secrets.*

Due to the nature of the Company's business, maintaining confidentiality of information regarding the Company's operations, activities and plans is especially important. Employee has an affirmative obligation to protect the Company's information. The parties acknowledge and agree that trade secret and confidential and proprietary information are valuable assets of the Company. Solely by virtue of specialized employment with the Company, Employee will acquire knowledge of and gain access to trade secrets and confidential and proprietary information of the Company. Such trade secrets and confidential and proprietary information is defined as all items, materials, and information (whether or not reduced to writing and whether or not patentable or copyrightable) which belong to the Company, relate to the present or future business of the Company, are kept confidential or secret by the Company, or are not generally known in the industry in which the Company is engaged.

Trade secrets and confidential and proprietary information includes, without limitation, customer lists, personnel lists, fee schedules, training manuals and materials, devices, inventions, processes and compilations of information, records and specifications, computer database, programs and software, financial data and plans, profit margins and pricing policies and practices, sales and marketing techniques, history, and data forecasts, and personnel training techniques, materials and any Protected Health Information (PHI) that is covered by HIPAA (hereinafter collectively referred to as "Confidential Information"). The failure to designate particular information as confidential and/or proprietary and/or secret shall not preclude any later claim by the Company that such information is confidential and/or proprietary and/or secret. Employee agrees that he/she shall not disclose to any individual, corporation, firm or other entity, any Confidential Information, directly or indirectly, or in any way use, or cause, facilitate or allow any third party to use, Confidential Information in any way, either during the term of his/her employment or for one year thereafter, except as required in the course of his/her employment with the Company.

All Confidential Information provided to Employee during his/her employment is the exclusive property of the Company and/or its clients. No Confidential Information or copies, summaries or compilations of any kind will be removed from the Company's premises or the premises of the Company's customers under any circumstances whatsoever without prior written consent of the Company. Employee will return all Confidential Information, including copies, summaries or compilations of such information to the Company upon termination of employment or at any other time at the request of the Company.

4.    *Non-Solicitation.*

Employee agrees that he/she will not, during the term of his/her employment or for one year thereafter, do or commit any of the following acts:

a.    Induce, entice, hire or attempt to hire or employ any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, either directly or on behalf of an individual or other entity

who provides the same or similar services, processes, or products as the Company.

b.     Induce, or attempt to induce any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with the Company.

c.     Induce, or attempt to induce, any customer, supplier, vendor or any other person to cease doing business with the Company.

d.     Induce, or attempt to induce any individual to violate the provisions or prohibitions contained in the Agreement.

5.     *Non-Competition.*

The services provided by Employee are of a special, unique and extraordinary nature. Employee shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during his/her employment with the Company or any subsidiary or affiliate, or during the one-year period following termination, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by the Company. The limitations and restrictions contained in this paragraph shall apply only to a) present and former clients of the Company, irrespective of where located, to or for whom the Employee, while employed by the Company, has directly or indirectly provided services or caused the Company to provide services within the twelve months prior to the date of his/her termination of employment, or b) prospective customers/clients of the Company, irrespective of where located, to whose potential business the Company has given specific development attention within the twelve months prior to the date of his/her termination of employment.

Employee further agrees and acknowledges that if he/she is on an assignment with a Company client, he/she will not continue to perform that same or similar assignment on behalf of another entity for a period of one year after the date that Employee ceases to perform that assignment for the Company.

6.     *Remedy for Breach.*

Employee acknowledges that any violation of this Agreement may result in immediate termination and dismissal and may subject employee to a claim by the Company for money damages for any and all losses sustained as a result of the unauthorized release of any Confidential Information or the actions of Employee, which may have violated any provision of this Agreement.

Employee acknowledges and agrees that the Company's remedies at law may be inadequate and that the Company shall have the right to seek injunctive relief in addition to any other remedy available to it. If Employee breaches this Agreement or any of the covenants contained herein, the Company has the right to, and will seek, appropriate injunctive relief as well as any and all other remedies and damages, to compel the enforcement of the terms stated herein.

It is agreed by the parties that in the event of an actual or threatened breach by Employee of any of the provisions in this Agreement, in addition to any other remedy provided for herein or at law, the Company shall have the right to notify Employee's then present or prospective employer of the terms of this Agreement (including but not limited to providing a copy of this Agreement) without in any manner being liable for such action

7.    Waiver.

The failure of the Company to insist upon strict adherence to one or more of the covenants and restrictions contained herein, on one or more occasions, shall not be construed as a waiver, nor shall such course of action deprive the Company of the right thereafter to require strict compliance with the same.

8.    Construction.

Employee acknowledges that the restrictions upon his/her employment and the geographical restrictions hereby imposed are fair and reasonable and are reasonably required for the protection of the Company. If any part of this Agreement is held unenforceable or invalid, the remaining parts thereof shall continue to be enforceable. If the provisions imposing geographic or time restrictions are deemed unenforceable by a court of competent jurisdiction, then such provisions for the purposes of this Agreement shall include the maximum geographic area or time period which a court of competent jurisdiction determines to be reasonable, valid and enforceable. To the extent that the court permits "blue-penciling," the parties to this Agreement intend that the court will take all action necessary to revise this Agreement so as to ensure its enforceability against Employee to the greatest extent consistent with law.

9.    Governing Law/Jurisdiction.

This Agreement shall be subject to and governed by the internal laws of the State of New Jersey irrespective of the choice of law rules in the state of execution of this Agreement or performance of employment. Employee consents to the exercise of personal jurisdiction over him by the state and federal courts of New Jersey in the event of an actual or threatened breach of this Agreement by Employee.

10.    Length of Employment/At Will Employment.

Nothing contained in this Agreement shall be construed as guaranteeing Employee employment for any particular duration or length of time. Employee's employment relationship with the Company is exclusively that of an at will employee and his/her employment may be terminated at any time, with or without cause.

11.    Assignment.

This agreement may be assigned without the consent of Employee in connection with the sale, transfer or other assignment of all or substantially all of the capital stock or assets of, or the merger of, the Company, provided that the party acquiring such capital stock or assets or into which the Company merges assumes in writing the obligations of the Company hereunder and provided further that no such assignment shall release the Company from its obligations hereunder. Otherwise, any party may not assign the Agreement hereto without the prior written consent of all of the other parties.

12.    No Violation of Existing Agreements/Restrictions

Employee represents to the Company that other than the agreement which is Attachment D to Employee's employment offer letter of even date (the "Offer Letter"), he/she is not subject to any form of non-competition restrictions or agreements with any former employers or other organizations or entities, which would be violated by his/her contemplated employment with the Company under the arrangements set forth in the Offer Letter. Employee agrees that he/she will not use or disclose to any current or future employee of the Company any proprietary or confidential information or trade secrets of any former employers or other organizations or entities that Employee may possess. Employee acknowledges his understanding that the use or disclosure of proprietary or

confidential information or trade secrets of other persons or entities is a ground for termination of employment with the Company.

13.    *Understanding of Agreement*

Employee acknowledges that he/she has read and understands all of the provisions of this Agreement and the accompanying offer letter. Employee further acknowledges that he/she has had adequate time and opportunity to consult with his/her personal legal counsel or other advisors as Employee deemed necessary in order to come to a complete understanding of the provisions of this Agreement and enters into this Agreement voluntarily and on the basis of that understanding.


_____          Dated: May 22 , 2006
Employee


_____          Dated: May 12 , 2006
Human Resources

**EXHIBIT**

**3**



# NON-DISCLOSURE / NON-SOLICITATION / NON-COMPETITION AGREEMENT

This Non-Disclosure / Non-Solicitation / Non-Competition Agreement ("Agreement") is entered into between **William Blackford** ("Employee") and RCM Technologies, Inc., ("Company") in light of the following background facts:

A.      In the course of performing his/her job duties for the Company; the Company will provide Employee with certain confidential information, trade secrets, specialized training, and access to computer information, which are the exclusive proprietary information and property of the Company.  The Company desires to protect such information from disclosure and prevent unfair competition by the Employee during employment and for a one-year period thereafter.

B.      The Employee desires to be employed by the Company under the non-disclosure, non-solicitation, and non-competition restrictions contained in this Agreement, and acknowledges that, as a consequence of employment in a specialized position with the Company, he/she will be provided, or will be in a position to access, utilize, create, obtain, and/or receive confidential and proprietary information, trade secrets, training, and computer information which is the exclusive proprietary information and property of the Company.

C.      In consideration of Employee's being given access to confidential and proprietary information, trade secrets, specialized training, benefits, access to various computer processes, designs, and programs, and/or for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that the following provisions will govern during the Employee's employment with the Company and for one year thereafter:

1.      *Inventions.*

Employee agrees that during employment he/she will promptly inform and disclose to the Company all copyrighted materials or programs, programs or materials subject to being copyrighted, inventions, designs, improvements and discoveries which he/she has or may have during his/her employment which pertain or relate to the business of the Company or to any research or experimental or developmental work carried on by the Company, or which results from or is suggested by any work performed by Employee on behalf of the Company or any of its customers.  Such disclosure shall be made whether or not such programs, materials, inventions, designs, improvements and discoveries are conceived by the Employee alone or with others and whether or not conceived during regular working hours.  All such copyrighted programs, materials, inventions, designs, improvements and discoveries shall be the exclusive property of the Company and Employee hereby assigns to the Company all of his right, title and interest therein.  At the Company's sole expense, the Employee shall assist in obtaining patents or copyrights on all such inventions, programs, materials, designs, improvements and discoveries deemed patentable or subject to copyright by the Company and shall execute all documents and do all things necessary to obtain letters, patent, or vest the Company with full and exclusive title thereto, and protect the same against infringement by others.  Employee will not be entitled to additional compensation for any inventions or designs made during the course of his/her employment.

2.      *Government Compliance.*

Employee will comply and will take all action necessary to enable the Company to comply with all state and federal government rules, regulations and terms and

conditions of contracts between agencies of the United States government or their contractors and the Company, which relate either to patent rights or to the safeguarding of information pertaining to the defense of the United States. Employee, at the time of signing this Agreement, has no right, title or interest in, or no right to assign (because it shall previously have been assigned) any copyrighted programs or materials, programs or materials subject to copyright, invention, design, improvement or discovery which pertains or relates to the Company's business

3.      *Trade Secrets.*

Due to the nature of the Company's business, maintaining confidentiality of information regarding the Company's operations, activities and plans is especially important. Employee has an affirmative obligation to protect the Company's information. The parties acknowledge and agree that trade secret and confidential and proprietary information are valuable assets of the Company. Solely by virtue of specialized employment with the Company, Employee will acquire knowledge of and gain access to trade secrets and confidential and proprietary information of the Company. Such trade secrets and confidential and proprietary information is defined as all items, materials, and information (whether or not reduced to writing and whether or not patentable or copyrightable) which belong to the Company, relate to the present or future business of the Company, are kept confidential or secret by the Company, or are not generally known in the industry in which the Company is engaged.

Trade secrets and confidential and proprietary information includes, without limitation, customer lists, personnel lists, fee schedules, training manuals and materials, devices, inventions, processes and compilations of information, records and specifications, computer database, programs and software, financial data and plans, profit margins and pricing policies and practices, sales and marketing techniques, history, and data forecasts, and personnel training techniques, materials and any Protected Health Information (PHI) that is covered by HIPAA (hereinafter collectively referred to as "Confidential Information"). The failure to designate particular information as confidential and/or proprietary and/or secret shall not preclude any later claim by the Company that such information is confidential and/or proprietary and/or secret. Employee agrees that he/she shall not disclose to any individual, corporation, firm or other entity, any Confidential Information, directly or indirectly, or in any way use, or cause, facilitate or allow any third party to use, Confidential Information in any way, either during the term of his/her employment or for one year thereafter, except as required in the course of his/her employment with the Company.

All Confidential Information provided to Employee during his/her employment is the exclusive property of the Company and/or its clients. No Confidential Information or copies, summaries or compilations of any kind will be removed from the Company's premises or the premises of the Company's customers under any circumstances whatsoever without prior written consent of the Company. Employee will return all Confidential Information, including copies, summaries or compilations of such information to the Company upon termination of employment or at any other time at the request of the Company.

4.      *Non-Solicitation.*

Employee agrees that he/she will not, during the term of his/her employment or for one year thereafter, do or commit any of the following acts:

        a.      Induce, entice, hire or attempt to hire or employ any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, either directly or on behalf of an individual or other entity

who provides the same or similar services, processes, or products as the Company.

   b.    Induce, or attempt to induce any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with the Company.

   c.    Induce, or attempt to induce, any customer, supplier, vendor or any other person to cease doing business with the Company.

   d.    Induce, or attempt to induce any individual to violate the provisions or prohibitions contained in the Agreement.

5.    *Non-Competition.*

   The services provided by Employee are of a special, unique and extraordinary nature. Employee shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during his/her employment with the Company or any subsidiary or affiliate, or during the one-year period following termination, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by the Company. The limitations and restrictions contained in this paragraph shall apply only to a) present and former clients of the Company, irrespective of where located, to or for whom the Employee, while employed by the Company, has directly or indirectly provided services or caused the Company to provide services within the twelve months prior to the date of his/her termination of employment, or b) prospective customers/clients of the Company, irrespective of where located, to whose potential business the Company has given specific development attention within the twelve months prior to the date of his/her termination of employment.

   Employee further agrees and acknowledges that if he/she is on an assignment with a Company client, he/she will not continue to perform that same or similar assignment on behalf of another entity for a period of one year after the date that Employee ceases to perform that assignment for the Company.

6.    *Remedy for Breach.*

   Employee acknowledges that any violation of this Agreement may result in immediate termination and dismissal and may subject employee to a claim by the Company for money damages for any and all losses sustained as a result of the unauthorized release of any Confidential Information or the actions of Employee, which may have violated any provision of this Agreement.

   Employee acknowledges and agrees that the Company's remedies at law may be inadequate and that the Company shall have the right to seek injunctive relief in addition to any other remedy available to it. If Employee breaches this Agreement or any of the covenants contained herein, the Company has the right to, and will seek, appropriate injunctive relief as well as any and all other remedies and damages, to compel the enforcement of the terms stated herein.

   It is agreed by the parties that in the event of an actual or threatened breach by Employee of any of the provisions in this Agreement, in addition to any other remedy provided for herein or at law, the Company shall have the right to notify Employee's then present or prospective employer of the terms of this Agreement (including but not limited to providing a copy of this Agreement) without in any manner being liable for such action

7.    *Waiver.*

The failure of the Company to insist upon strict adherence to one or more of the covenants and restrictions contained herein, on one or more occasions, shall not be construed as a waiver, nor shall such course of action deprive the Company of the right thereafter to require strict compliance with the same.

8.    *Construction.*

Employee acknowledges that the restrictions upon his/her employment and the geographical restrictions hereby imposed are fair and reasonable and are reasonably required for the protection of the Company. If any part of this Agreement is held unenforceable or invalid, the remaining parts thereof shall continue to be enforceable. If the provisions imposing geographic or time restrictions are deemed unenforceable by a court of competent jurisdiction, then such provisions for the purposes of this Agreement shall include the maximum geographic area or time period which a court of competent jurisdiction determines to be reasonable, valid and enforceable. To the extent that the court permits "blue-penciling," the parties to this Agreement intend that the court will take all action necessary to revise this Agreement so as to ensure its enforceability against Employee to the greatest extent consistent with law.

9.    *Governing Law/Jurisdiction.*

This Agreement shall be subject to and governed by the internal laws of the State of New Jersey irrespective of the choice of law rules in the state of execution of this Agreement or performance of employment. Employee consents to the exercise of personal jurisdiction over him by the state and federal courts of New Jersey in the event of an actual or threatened breach of this Agreement by Employee.

10.    *Length of Employment/At Will Employment.*

Nothing contained in this Agreement shall be construed as guaranteeing Employee employment for any particular duration or length of time. Employee's employment relationship with the Company is exclusively that of an at will employee and his/her employment may be terminated at any time, with or without cause.

11.    *Assignment.*

This agreement may be assigned without the consent of Employee in connection with the sale, transfer or other assignment of all or substantially all of the capital stock or assets of, or the merger of, the Company, provided that the party acquiring such capital stock or assets or into which the Company merges assumes in writing the obligations of the Company hereunder and provided further that no such assignment shall release the Company from its obligations hereunder. Otherwise, any party may not assign the Agreement hereto without the prior written consent of all of the other parties.

12.    *No Violation of Existing Agreements/Restrictions*

Employee represents to the Company that other than the agreement which is Attachment D to Employee's employment offer letter of even date (the "Offer Letter"), he/she is not subject to any form of non-competition restrictions or agreements with any former employers or other organizations or entities, which would be violated by his/her contemplated employment with the Company under the arrangements set forth in the Offer Letter. Employee agrees that he/she will not use or disclose to any current or future employee of the Company any proprietary or confidential information or trade secrets of any former employers or other organizations or entities that Employee may possess. Employee acknowledges his understanding that the use or disclosure of proprietary or

confidential information or trade secrets of other persons or entities is a ground for termination of employment with the Company.

13.    *Understanding of Agreement*

Employee acknowledges that he/she has read and understands all of the provisions of this Agreement and the accompanying offer letter.  Employee further acknowledges that he/she has had adequate time and opportunity to consult with his/her personal legal counsel or other advisors as Employee deemed necessary in order to come to a complete understanding of the provisions of this Agreement and enters into this Agreement voluntarily and on the basis of that understanding.


Employee                                                Dated: May _8_ , 2006

Human Resources                                         Dated: May _5_ , 2006

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RCM Technologies, Inc. | Beacon Hill Staffing Group, LLC and Kimberly A. Ayers |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___88888___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

R. Michael Smith, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, 233 E. Redwood Street, Baltimore, MD 21202, 410-576-4174

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant
⊙ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ⊙ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ⊙ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**      OR      ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ◎ **G.** *Habeas Corpus/ 2255* | ◎ **H.** *Employment Discrimination* | ◎ **I.** *FOIA/PRIVACY ACT* | ◎ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>  (criteria: race, gender/sex,<br>  national origin,<br>  discrimination, disability<br>  age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>  (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (excluding veterans) |

| ◎ **K.** *Labor/ERISA (non-employment)* | ◎ **L.** *Other Civil Rights (non-employment)* | ◉ **M.** *Contract* | ◎ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>  Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>  Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>  Employment<br>☐ 446 Americans w/Disabilities-<br>  Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>  Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>  Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>  (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ◎ 2 Removed from State Court    ◎ 3 Remanded from Appellate Court    ◎ 4 Reinstated or Reopened    ◎ 5 Transferred from another district (specify)    ◎ 6 Multi district Litigation    ◎ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. Sec. 1332. Employer suing former employee for breach of non-solicitation agreement.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ [_____]    Check YES only if demanded in complaint    JURY DEMAND: YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 4/11/07    SIGNATURE OF ATTORNEY OF RECORD *[signature]*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.