# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RCM Technologies, Inc.,** | * | **Case No. 1:07-CV-00670-JDB** |
| **Plaintiff,** | * | |
| **vs.** | * | |
| **Beacon Hill Staffing Group, LLC,** *et al.,* | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff, RCM Technologies, Inc. ("RCM"), moves for a temporary restraining order enjoining:

1.      Defendants, Kimberly A. Ayers ("Ayers"), William Blackford ("Blackford"), and Scott Baillie ("Baillie"), from:

a.      Inducing, enticing, hiring, attempting to hire, or employing any person or entity, whether an employee of RCM or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of RCM, either directly or on behalf of an individual or other entity who provides the same or similar services, processes, or products as RCM;

b.      Inducing or attempting to induce any person or entity, whether an employee of RCM or an independent contractor or a third party consultant of any other person or entity of providing services to, for or on behalf of RCM, to leave

the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with RCM;

c.      Inducing or attempting to induce any individual to violate the provisions or prohibitions contained in the Non-Disclosure/Non-Solicitation/Non-Competition Agreements ("Agreements") executed signed by RCM, Ayers, Blackford, and Baillie;

d.      Engaging in or contributing their knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by RCM. That limitation and restriction shall apply only to: (1) present and former customers of the Company, irrespective of where located, to or for whom Ayers, Blackford, or Baillie, while employed by RCM, have directly or indirectly provided services or caused RCM to provide services within the twelve months prior to the date of his/her termination of employment: or (2) prospective customer/customers of RCM, irrespective of where located, to whose potential business RCM has given specific development attention within the twelve months prior to the date of his/her termination of employment.

2.      Defendant, Beacon Hill Staffing Group, Inc. ("Beacon Hill"), from: (a) employing Ayers, Blackford, and Baillie in a manner which breaches their Agreements with RCM; and (b) interfering with RCM's contractual relations and prospective business advantage with RCM's customers and prospective customers and individuals used to staff RCM's customers; and

3.     Beacon Hill, Ayers, Blackford, and Baillie from using and disclosing RCM's Trade Secrets and Confidential Information.

RCM's Amended Complaint seeks injunctive relief prohibiting: (a) Ayers, Blackford, and Baillie from breaching their Agreements with RCM; (b) Beacon Hill from engaging in certain tortious conduct related to the employment of Ayers, Blackflord, and Baillie; and (c) Beacon Hill, Ayers, Blackford, and Baillie from misappropriating and disclosing RCM's Trade Secrets and Confidential Information.

RCM will sustain immediate, irreparable, and substantial injury for which no adequate legal remedy exists unless the Court issues a temporary restraing order.

RCM asks the Court to grant the requested temporary restraining order by no later than **August 7, 2007.**

The memorandum submitted by RCM sets forth the grounds supporting this application.

Respectfully Submitted,

R. Michael Smith (D.C. Bar No. 372654)
Charles R. Bachrach (D.C. Bar No. 448842)
Gordon, Feinblatt, Rothman,
  Hoffberger & Hollander
233 E. Redwood Street
Baltimore, MD  21202
410-576-4174
Attorneys for RCM Technologies, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 31, 2007, a copy of the foregoing Plaintiff's

Application For Temporary Restraining Order was mailed, first-class, postage prepaid, to:

Edward J. Longosz, II
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Ave., NW
Suite 1200
Washington, D.C.  20006

Robert W. Levy
Eckert Seamans Cherin & Mellott, LLC
One International Place
18th Floor
Boston, MA 02110-2602

R. Michael Smith

601324.1
7/31/2007
30462/102329

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RCM Technologies, Inc., | * | Case No. 1:07-CV-00670-JDB |
| **Plaintiff,** | * | |
| vs. | * | |
| Beacon Hill Staffing Group, LLC, *et al.,* | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN SUPPORT OF APPLICATION
## FOR TEMPORARY RESTRAINING ORDER

**I.      Introduction**

Plaintiff, RCM Technologies, Inc. ("RCM"), provides temporary and contract IT and technical employees to customers in the Washington Metropolitan Area.   RCM employed Defendant, Kimberly A. Ayers ("Ayers"), as a Senior Technical Recruiter and Defendants, William Blackford ("Blackford") and Scott Baillie ("Baillie"), as Technical Recruiters, until they resigned in late 2006 to work for Defendant, Beacon Hill Staffing Group, Inc. ("Beacon Hill"), a direct competitor of RCM.[1]

While employed by RCM, Ayers, Blackford, and Baillie signed identical Non-Disclosure/Non-Solicitation/Non-Competition Agreements ("Agreements") which prohibited them from: (1) recruiting and employing individuals working for RCM; and (2) engaging in certain activities which compete against RCM.   (Declaration of Craig Park, Exs. 3, 4, and 5)

---

[1]   RCM realizes that Blackford and Baillie may not have been served with the Amended Verified Complaint as of the time that RCM files an application for a temporary restraining order.   RCM, however, will notify Blackford and Baillie that the application has been filed and provide a copy to them immediately after the Court grants RCM's motion for leave to amend the Complaint.

Ayers breached her Agreement with RCM by hiring Blackford and Baillie to work for Beacon Hill after she resigned from RCM. As more fully explained below, Ayers, Blackford, and Baillie have also breached their Agreements by soliciting and servicing RCM customers and by recruiting personnel used by RCM to staff its customers and prospective customers.

Beacon Hill has tortiously interfered with those Agreements by employing Ayers, Blackford, and Baillie to perform services which breach those contracts. Finally, Ayers, Blackford, Baillie, and Beacon Hill have misappropriated RCM's trade secrets and Confidential Information.

RCM has applied for a temporary restraining order which prohibits Defendants from continuing their unlawful conduct. RCM will also apply for a similar preliminary injunction.

## II.     Statement of Facts.

### A.     RCM Employed Ayers, Blackford, And Baillie Until They Resigned To Work For Beacon Hill.

RCM provides temporary and contract employees who work as IT specialists and technical personnel for private and public sector customers in the Washington Metropolitan Area. RCM employed Ayers as a Senior Technical Recruiter at its Bethesda, Maryland office where she was responsible for conferring with customers about their staffing needs and recruiting candidates to satisfy those requirements. RCM also employed Baillie and Blackford as Technical Recruiters to perform similar duties at the Bethesda office. (Declaration of Craig Park)

An Account Executive generally serves as the primary point of contact for RCM's customers, but at least one Technical Recruiter is also assigned to each customer as an additional point of contact. While serving in that capacity, the Technical Recruiter develops a close relationship with the customer and becomes familiar with its preferences, habits, business

2

operations, decision-making process, and criteria for selecting temporary and contract employees. Moreover, RCM encourages the Technical Recruiter to enhance that relationship by taking out key consultants and managers for meals at the company's expense. (Park Declaration)

Ayers, Blackford, and Baillie attended regular staff meetings at RCM at which Confidential Information as defined by their Agreements, including pricing and marketing strategies, profit margins, future needs of customers, and the identity of prospective customers who were being targeted, was discussed. Ayers, Blackford, and Baillie also learned about sales opportunities identified by RCM and the expiration dates of contracts with customers. (Park Declaration)

The process of identifying and recruiting candidates to staff customers involves a substantial investment of time and expense. For example, RCM reimbursed Blackford and Baillie for expenses incurred by them in conjunction with that activity. In the course of dealing with those individuals, RCM also compiles information regarding their dependability, skills, and job performance. That data and the list of qualified personnel candidates constitute a valuable asset and Confidential Information which can be used by RCM's direct competitors, such as Beacon Hill. (Park Declaration, Exs. 1 and 2)

When hired by RCM, Ayers, Blackford, and Baillie had little, if any, experience working as recruiters in the company's particular market niche. RCM paid them a salary, plus a guaranteed draw, during the time which they needed to learn about that market. Thus, RCM effectively carried Ayers, Blackford, and Baillie at a loss until they became fully productive. (Park Declaration)

Ayers, Blackford, and Baillie signed Agreements when they started working for RCM which provide in relevant part in paragraphs 3, 4, and 5 as follows:

3

3.    **Trade Secrets**

Due to the nature of the Company's business, maintaining confidentiality of information regarding the Company's operations, activities, and plans is especially important.  Employee has an affirmative obligation to protect the Company's information.  The parties acknowledge and agree that trade secret and confidential and proprietary information are valuable assets of the Company. Solely by virtue of specialized employment with the Company, Employee will acquire knowledge of and gain access to trade secrets and confidential and proprietary information of the Company.

*          *          *

Trade secrets and confidential and proprietary information includes, without limitation, customer lists, personnel lists, fee schedules, training manuals and materials…compilations of information, records and specifications, computer database, programs and software, financial data and plans, profit margins and pricing policies and practices, sales and marketing techniques, history, and data forecasts, and personnel training techniques, materials…

*          *          *

Employee agrees that he/she shall not disclose to any individual, corporation, firm, or other entity, any Confidential Information, directly or indirectly, or in any way use, or cause, facilitate or allow any third party to use, Confidential Information in any way, either during the term of his/her employment or for one year thereafter, except as required in the course of his/her employment with the Company.

All Confidential Information provided to Employee during his/her employment is the exclusive property of the Company and/or its clients….

4.    **Non-Solicitation**

Employee agrees that he/she will not, during the term of his/her employment or for one year thereafter, do or commit any of the following acts:

a.    Induce, entice, hire or attempt to hire or employ any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, either directly or on behalf of an individual or other entity who provides the same or similar services, processes, or products as the Company.

b.    Induce, or attempt to induce any person or entity, whether an employee of the Company or an independent contractor or a third party consultant

4

of any other person or entity of providing services to, for or on behalf of the Company, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with the Company.

c.    Induce, or attempt to induce, any customer, supplier, vendor or any other person to cease doing business with the Company.

d.    Induce, or attempt to induce any individual to violate the provisions or prohibitions contained in the Agreement.

**5.    Non-Competition.**

The services provided by Employee are of a special, unique and extraordinary nature. Employee shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during his/her employment with the Company or any subsidiary or affiliate, or during the one-year period following termination, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by the Company. The limitations and restrictions contained in this paragraph shall apply only to a) present and former clients of the Company, irrespective of where located, to or for whom the Employee, while employed by the Company, has directly or indirectly provided services or caused the Company to provide services within the twelve months prior to the date of his/her termination of employment, or b) prospective customer/clients of the Company, irrespective of where located, to whose potential business the Company has given specific development attention within the twelve months prior to the date of his/her termination of employment.

The Agreements specify that New Jersey law governs the interpretation and enforcement of those contracts. (Park Declaration, Exs. 3, 4, and 5)

When Ayers resigned from RCM on December 1, 2006, she told the company that she was resigning for unspecified "personal reasons." By December 2007, however, Ayers' profile in Linkedin stated that she had already begun to work for Beacon Hill as a Technical Recruiter responsible for recruiting IT and technical personnel to staff customers in the Washington

5

Metropolitan Area.  Insofar as RCM has been able to determine, Beacon Hill did not operate an office in that market before hiring Ayers.[2]  (Park Declaration, Ex. 6)

Just two weeks later, on December 14, 2006, both Blackford and Baillie resigned from their employment with RCM, but they gave RCM no reason for doing so.  According to information obtained by RCM, Ayers recruited and hired Blackford and Baillie to work for Beacon Hill.  When they resigned, Ayers, Blackford, and Baillie constituted the entire complement of Technical Recruiters at RCM's Rockville office.  As a consequence, their simultaneous departures stripped RCM of the ability to staff the current and prospective needs of Washington Metropolitan Area customers.  (Park Declaration)

### B. Beacon Hill Has Employed Ayers, Blackford, And Baillie In A Manner Which Breaches Their Agreements With RCM And Involves The Use Of RCM's Trade Secrets And Confidential Information.

RCM has learned that, since becoming employed by Beacon Hill, Ayers, Blackford, and Baillie have solicited: (1) RCM clients whom they serviced and/or solicited as RCM employees; and (2) individuals whom they knew RCM has used to staff its clients.  For example, Blackford and Baillie have solicited and/or solicited Manila Consulting and Thompson Financial on Beacon's Hill's behalf, two customers serviced by them while employed by RCM.

**Ayers, Blackford, and Baillie launched those solicitations immediately after their en masse resignation had left RCM especially vulnerable to competition.**  Thus, Ayers, Baillie, and Blackford timed those activities to take maximum advantage of a situation which they had knowingly and intentionally created.  (Park Declaration)

---

[2]    Web site postings for Beacon Hill did not list a Washington, D.C. office until 2007. Moreover, that website identifies Ayers as the Division Director responsible for leading and directing that office.  Copies of those postings are attached to this memorandum as Exhibits 1, 2, and 3.

600350.1
7/31/2007
30462/102329

In performing services for Beacon Hill, Ayers, Blackford, and Baillie have necessarily used and will continue to use RCM's trade secrets and Confidential Information, such as: (1) the names and qualifications of the personnel who are available to staff customers; (2) the identity and staffing preferences of the customer officials responsible for procuring temporary and contract employees; (3) future business opportunities; and (4) the company's profit margins and marketing and business strategies and plans. (Park Declaration)

On April 12, 2007, RCM filed the Complaint which alleged that: (1) Ayers had breached her Agreement by recruiting and hiring Blackford and Baillie to work for that company; and (2) Beacon Hill had tortiously interfered with her Agreement by employing her in that capacity. On April 20, 2007, RCM served the Complaint on Beacon Hill. (Declaration of Scott Kucik)

Ayers, however, was able to evade service at Beacon Hills' Washington office. In addition, Ayers became angry when RCM was finally able to serve her at her apartment on June 1, 2007 and she refused to accept the Summons and Complaint when the process server attempted to hand those documents to her. (Kucik Declaration)

Ayers, Blackford, and Baillie continued to recruit individuals used by RCM to staff customers and solicited the company's customers even after Beacon Hill was served with the Complaint and knew about their Agreements with RCM. In light of that fact, RCM moved to file a Verified Amended Complaint which seeks injunctive relief against Defendants. (Park Declaration)

## III.    Argument

### A.    Applicable Legal Principles

Courts will enforce a contract which limits an employee's ability to compete against a former employer by: (1) recruiting or hiring that employer's current employees to work for a

competitor; (2) engaging in business activities which compete with the employer; (3) soliciting the employer's existing and prospective customers, especially those whom the employee had serviced or solicited; and/or (4) using or disclosing the employer's trade secrets or confidential information.[3] *See Platinum Management, Inc. v. Dahms,* 666 A.2d 1028, 1033 and 1038 (N.J. Super. Ct. Law. Div. 1995).

In determining the enforceability of such contracts, the courts consider: (1) whether the restrictions are reasonably necessary to protect the employer's legitimate interest in protecting its customer relationships and confidential information; (2) the hardship imposed on the employee by those limitations; and (3) the public interest. *See Platinum Management, Inc.,* 666 A.2d at 1037; *Raven v. A. Klein & Co., Inc.,* 478 A.2d 1208, 1984 (N.J. Super. Ct. App. Div. 1984); *A.T. Hudson & Co., Inc. v. Donovan,* 524 A.2d 412, 415 (N.J. Super. Ct. App. Div. 1987); *Solari Indusries, Inc. v. Malady,* 264 A.2d 53, 59-61 (N.J. 1970).

---

[3] The courts in this jurisdiction will enforce contract provisions which specify that the law of another jurisdiction govern the interpretation and enforcement of the agreement. *See National Chemsearch Corp. v. Hanker,* 309 F. Supp. 1278, 1280 (D.D.C. 1970) (provision in non-competition contract specifying application of Texas law enforced); *Vaughan v. Nationwide Mutual Ins. Co.,* 702 A.2d 198, 201-202 (D.C. 1997). Thus, the Court should apply the law of New Jersey which bears a reasonable nexus to employment relationship of Ayers, Blackford, and Baillie to RCM whose headquarters are located in that state. *Id.* at 1279-1280 (choice of law provision enforced where specified application law of the state in which employer was incorporated).

In any event, however, the law in New Jersey, the District of Columbia, and Maryland where those individuals were located while they worked for RCM is essentially identical in all material respects. *See Morgan Stanley DW, Inc. v. Rothe,* 120 F. Supp. 2d 67, 74-76 (D.D.C. 2001) (under D.C. law, enforceability of restrictions on former employee's competition depends on whether limitations are reasonable in time, area, and protection provided to employer's legitimate interest in customer relationships and confidential information); *Platinum Management, Inc.,* 666 A.2d at 1037 (under New Jersey law, enforceability of restrictions on former employee's competition depends on whether limitations are reasonable in time, area, and protection provided to employer's legitimate interest in customer relationships and confidential information); *Intelus Corp. v. Barton,* 7 F. Supp. 2d 635, 641-642 (D. Md. 1998) (under Maryland law, enforceability of restrictions on former employee's competition depends on whether limitations are reasonable in time, area, and protection provided to employer's legitimate interest in customer relationships and confidential information). As a consequence, the governing legal principles would be the same regardless of which jurisdiction's law is chosen by the Court.

An employer who knowingly employs an individual in a capacity which violates a valid agreement is liable for tortious interference with that contract. *See Mercer Management Consulting, Inc. v. Wilde,* 920 F. Supp. 219, 239 (D.D.C. 1996); *Fowler v. Printers, II,* 598 A.2d 794, 797-798 and 802-804 (Md. Ct. Spec. App. 1991). An employee and employer misappropriate a former employer's trade secrets and confidential information by using or disclosing it, even in the absence of a contract which prohibits such unlawful conduct. *See Morgan Stanley DW, Inc.,* 150 F. Supp. 2d at 72; *Platinum Management, Inc.,* 666 A.2d at 1036-1-38 (identity of customers, sales strategy, and pricing policy are confidential information under New Jersey law even if does not constitute a trade secret).

In deciding if an injunction should issue, the courts consider whether: (1) there is a substantial likelihood that the former employer will prevail on its claims; (2) the employer will be irreparably injured unless the injunction is granted; (3) the injunction will not substantially injure the defendants; and (4) the public interest will be adversely affected by granting such relief. *See Morgan Stanley DW, Inc.,* 150 F. Supp. 2d at 72.

### B. RCM Is Entitled To A Temporary Restraining Order And Preliminary Injunction.

RCM is entitled to a temporary restraining order and preliminary injunction prohibiting: (1) Ayers, Blackford, and Baillie from breaching their Agreements with RCM by performing services for Beacon Hill and by recruiting or hiring RCM employees; (2) Beacon Hill from tortiously interfering with those Agreements; and (3) Defendants from using RCM's trade secrets and Confidential Information.

600350.1
7/31/2007
30462/102329

## 1.    RCM Is Very Likely To Prevail On Its Claims.

### a.    Breach Of Contract

RCM is very likely to prevail on its claims that Ayers, Blackford, and Baillie have breached their Agreements, which establish limitations reasonably necessary to protect RCM's customers, Confidential Information, and trade secrets.  For instance, as Technical Recruiters, Ayers, Blackford, and Baillie: (1) formed close relationships with RCM's customers, with the company's assistance and financial support; and (2) were entrusted with important trade secrets and Confidential Information, such as pricing and marketing strategies, profit margins, customers' future needs, other sales opportunities, and the identity of targeted prospective customers.  *See Platinum Management, Inc.,* 666 A.2d at 1038-1039 (non-competition contract enforced against employee who was given access to confidential information and who developed virtually all of his customer relationships while working for former employer).

Companies, such as Beacon Hill, can gain a substantial competitive advantage by using those relationships, trade secrets, and Confidential Information, which RCM developed over time and at significant expense.  Indeed, Beacon Hill hired Ayers and she subsequently recruited or hired Blackford and Baillie in order to jump-start its new District of Columbia office by taking advantage of the knowledge, expertise, and business relationships obtained by them while employed by RCM.   That strategy enabled Beacon Hill to avoid much of the time and expense associated with opening a new business from scratch in a highly competitive market.  *See Platinum Management, Inc.,* 666 A.2d at 1038 (new employer hired employee in order to take advantage of former employer's confidential information and customer goodwill).

Moreover, the Agreements restricted Ayers, Blackford, and Baillie from competing against RCM for just one year after they resigned so their replacements had sufficient time to be

trained, become familiar with the company, and form strong relationships with customers. In addition, the passage of one year should make obsolete most, if not all, trade secrets and Confidential Information which were learned as RCM's Technical Recruiters. Hence, the Agreements imposed restrictions which are reasonable and necessary to protect RCM's legitimate interest in its customer relationships, trade secrets, and Confidential Information. *See Platinum Management, Inc.,* 666 A.2d at 1033-1034 and 1040 (one year period set by non-compete contract enforced).

Ayers, Blackford, and Baillie have clearly breached their Agreements in various respects. For instance, the facts, including the sequence of events, indicate that Ayers recruited and hired Blackford and Baillie shortly after she had accepted employment with Beacon Hill.

After beginning their employment with Beacon Hill, Ayers, Blackford, and Baillie have performed services for Beacon Hill, including soliciting business from customers serviced by them as RCM employees, which directly compete with RCM. In performing those services, Ayers, Blackford, and Baillie have undoubtedly used trade secrets and Confidential Information obtained from RCM, such as the identity of its customers, their needs and preferences, the pool of individuals qualified to staff their requirements, how to contact the managers who are the key decision-makers on procuring temporary and contract employees, and RCM's pricing strategy and profit margins. *See Platinum Management, Inc.,* 666 A.2d at 1035-1036, 1038 (timing of employee's resignation and start of work for current employer occurred in manner which left former employer especially vulnerable to competition from employee's solicitation of customers).

The Agreements do not impose an undue hardship on Ayers, Blackford, and Baillie who can still work as recruiters in the Washington Metropolitan Area. (Park Declaration) For example, each of those individuals may obtain positions as in-house recruiters with companies

which recruit IT and technical employees. Ayers, Blackford, and Baillie may also work as recruiters for temporary and contract employee firms that service market segments in which RCM is not involved and, after only one year, can compete directly with RCM. *See Morgan Stanley DW,* 150 F. Supp. 2d at 74 (one-year restriction on employee's competitive activities enforced); *A.T. Hudson & Co., Inc.,* 426 A.2d at 413 (two-year restriction on employee soliciting and providing services to former employer's customers enforced); *Solari Industries, Inc.,* 264 A.2d at 54 (one-year restriction on employee soliciting former employer's customers and working for competing business enforced).

Finally, enforcement of the Agreements will not contravene or undermine any public interest. To the contrary, the public interest in the sanctity of contracts will be served by: (1) enforcing the Agreements which Ayers, Blackford, and Baillie freely and voluntarily entered when they accepted employment with RCM; and (2) preventing unfair competition through commercial piracy of RCM's confidential information and customer goodwill. *See Morgan Stanley DW, Inc.,* 150 F. Supp. 2d at 74 and 79; *Platinum Management, Inc.,* 666 A.2d at 103.

### b.      Tortious Interference With Contract

At least since the Complaint in this action was filed and served on Beacon Hill, that company has knowingly and intentionally employed Ayers, Blackford, and Baillie in capacities which violate their Agreements. By doing so, Beacon Hill has tortiously interfered with those contracts. *See Platinum Management, Inc.,* 666 A.2d at 1035 and 1041 (new employer's failure to ask whether employee was party to a non-compete contract with former employer manifested willful blindness to that fact where such agreements were used by new employer).

12

### c.    Misappropriation Of Trade Secrets And Confidential Information

In competing against RCM, Defendants have been able to rely upon information accumulated by RCM concerning IT and technical personnel in the Washington Metropolitan Area who are qualified and available to meet customers' requirements.  Defendants have been also been able to use information about the identity and preferences of the customer officials who procure temporary and contract employees and RCM's pricing strategies and profit margins. RCM attempted to protect the confidentiality of that information by requiring Ayers, Baillie, and Blackford to execute the Agreements. *See Morgan Stanley DW, Inc.,* 150 F. Supp. 2d at 76 (list of customers and information about business done with them by employer held to be confidential information and trade secrets protected by Uniform Trade Secrets Act); *A.T. Hudson & Co, Inc.,* 424 A.2d at 413 (identity of managers at customers who make procurement decisions is protected confidential information of former employer where competitors would incur time and effort to obtain same data).

### 2.    RCM Will Suffer Serious And Irreparable Harm Unless An Injunction Issues Immediately, Whereas Defendants Will Not Suffer Any Genuine Harm.

RCM's business reputation and relationships will suffer serious and irreparable harm if the requested temporary restraining order against Defendants does not issue immediately.  For example, the relationships and goodwill which RCM has carefully cultivated with customers will be adversely affected by solicitations by Ayers, Blackford, and Baillie.  Those customers have grown accustomed to dealing with them as representatives of **RCM** and will undoubtedly be confused as to which company is soliciting when they are contacted on Beacon Hill's behalf. The same is true regarding relationships with personnel who were recruited by Ayers, Blackford,

600350.1
7/31/2007
30462/102329

or Baillie to staff RCM's customers and may now be contacted by them as representatives of Beacon Hill. *See Morgan Stanley DW,* 150 F. Supp. 2d at 77-78.

In addition, the breach of the Agreements by Ayers, Blackford, and Baillie and Beacon Hill's employment of them will effectively deprive RCM of the value of those contracts. Moreover, Defendants' continued use of RCM's trade secrets and Confidential Information greatly diminishes the value of that data and confers a competitive advantage on Beacon Hill which will be relieved of the need to incur the time and expense associated with developing such assets. No award of damages will ever be able to fully compensate RCM for those past and continuing harms. *See Morgan Stanley DW,* 150 F. Supp. 2d at 77.

On the other hand, the injunction sought by RCM pending a final determination of the merits of its claims will not unduly burden or prejudice Defendants. Indeed, the injunction will merely require them to comply with their contractual, common law, and statutory obligations; will not preclude Ayers, Blackford, and Baillie from earning a living recruiting temporary or contract employees for market segments which RCM does not service; and will not impair Beacon Hill, which has successfully operated in other geographic areas, from competing against RCM using lawful means, such as hiring persons who are not parties to valid non-compete agreements.

Furthermore, Ayers, Baillie, and Blackford expressly agreed in paragraph 6 of the Agreements that RCM would have the right to an injunction if they breached those contracts. As a consequence, the balance of relative harms weighs heavily in RCM's favor. *See Morgan Stanley DW,* 150 F. Supp. 2d at 76 (in granting injunction, court considered contract provision stating that employer entitled to such relief if employee breached agreement).

600350.1
7/31/2007
30462/102329

**3.    The Balance Of The Equities Supports Issuing An Injunction.**

RCM seeks an injunction in order to protect its customer goodwill, trade secrets, Confidential Information, and rights under contract, statutory, and common law. As explained above, an injunction will not unduly burden Defendants and will merely require them to comply with their valid legal obligations and to compete fairly in the marketplace. Thus, the balance of equities clearly supports the issuance of the requested injunction. *See Morgan Stanley DW,* 150 F. Supp. 2d at 78-79.

**4.    The Issuance Of An Injunction Will Serve The Public Interest.**

Issuance of an injunction against Ayers, Blackford, and Baillie will serve the public's interest in the sanctity of contracts by compelling them to honor the obligations which they freely and knowingly assumed when they signed the Agreements. The public interest will also be served by enforcing the common law and statutory restrictions on the unauthorized use of RCM's trade secrets and Confidential Information. *See Morgan Stanley DW,* 150 F. Supp. 2d at 79-80; *Intelus Corp.,* 7 F. Supp. 2d at 642.

**IV.    Conclusion**

RCM has demonstrated that it is entitled to a temporary restraining order which prohibits:

1.    Ayers, Blackford, and Baillie from breaching their Agreements with RCM by (a) performing services for Beacon Hill; (b) soliciting RCM customers; (c) recruiting or hiring RCM employees to work for that Beacon Hill; and (d) recruiting or hiring personnel used by RCM to staff its customers and prospective customers;

2.    Beacon Hill from tortiously interfering with those Agreements; and

3.    Defendants from using RCM's trade secrets and Confidential Information.

600350.1
7/31/2007
30462/102329

RCM did not apply for immediate injunctive relief when this action was commenced against Beacon Hill and Ayers because they had already hired Blackford and Baillie, such a remedy would not undo that fact, and RCM was not aware of an effort to recruit any more of its employees. RCM delayed applying for temporary restraining order until the company had confirmed that Defendants had engaged and were likely to continue engaging in conduct which justified filing the Amended Verified Complaint and seeking such an injunction. As demonstrated above, RCM now has a solid basis for asking the Court to issue the temporary order requested.

Respectfully Submitted,

R. Michael Smith (D.C. Bar No. 372654)
Charles R. Bachrach (D.C. Bar No. 448842)
Gordon, Feinblatt, Rothman,
  Hoffberger & Hollander
233 E. Redwood Street
Baltimore, MD 21202
410-576-4174
Attorneys for RCM Technologies, Inc.

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on July 31, 2007, a copy of the foregoing Memorandum In Support Of Plaintiff's Application For Temporary Restraining Order was mailed, first-class, postage prepaid, to:

Edward J. Longosz, II
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Ave., NW
Suite 1200
Washington, D.C.  20006

Robert W. Levy
Eckert Seamans Cherin & Mellott, LLC
One International Place
18th Floor
Boston, MA 02110-2602

17

## U.S. DISTRICT COURT, DISTRICT OF COLUMBIA

**RCM TECHNOLOGIES**

**V.**                              **CASE NO. 1:07-CV-670**

**BEACON HILL STAFFING GROUP
LLC, ET AL.**

### AFFIDAVIT OF SCOTT KUCIK

I, Scott Kucik, hereby depose and say:

That on June 1, at 8:20 a.m., I served Kimberly Ayers at her residence at 1375 Kenyon Street, N.W., Washington, D.C., Apartment 414. On the occasion of service, I waited outside of Apartment 414 for Ms. Ayers to leave the apartment. At 8:20 a.m., she emerged from her apartment and I approached her and served her with a Summons, Complaint and other documents. Ms. Ayers did not take the papers in her hand. After a time speaking with her, I informed her that if she would not take the papers in her hand I would need to leave them at her feet. She did not take them in her hand and I left them at her feet.

Multiple attempts had been made to serve Ms. Ayers at her residence. My agent, Daniel Portnoy, attempted service on 4-22, 4-24, 4-25, 5-24 and 5-31. He did not receive an answer at the unit, however. Also, he did not see Ms. Ayers emerge from the unit.

Also, multiple attempts were made to serve Ms. Ayers at her office at 1325 G Street. Mr. Portnoy made attempts to serve Ms. Ayers at her office on 4-25 (two attempts), 4-26 and 4-27. On each occasion, Mr. Portnoy was told that Ms. Ayers was not in. On April 25, Mr. Portnoy left a message with Ms. Ayers assistant, April, asking Ms. Ayers to call him with respect to the above case. She did not call Mr. Portnoy.

I do solemnly declare and affirm under the penalty of perjury that the matters and facts set forth herein are true to the best of my knowledge, information and belief.

Scott Kucik

Subscribed and Sworn to before me this 31st day of July, 2007.

angela H. Croson
Notary Public

My commission expires:  03-31-09

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RCM Technologies, Inc., | * | Case No. 1:07-CV-00670-JDB |
| Plaintiff, | * | |
| v. | * | |
| Beacon Hill Staffing Group, LLC, *et al.,* | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DECLARATION OF CRAIG PARK

I, Craig Park, state as follows based on his personal knowledge and belief:

1.      At all times material to this case, I have served as the Vice President responsible managing the Bethesda, Maryland office of RCM Technologies, Inc. ("RCM").

2.      RCM provides temporary and contract employees who work as IT specialists and technical personnel for private and public sector customers in the Washington Metropolitan Area.

3.      RCM employed Kimerly Ayers ("Ayers") as a Senior Technical Recruiter at RCM's Rockville office where she was responsible for conferring with customers about their staffing needs and recruiting candidates to satisfy those requirements.  RCM also employed Scott Baillie ("Baillie") and William Blackford ("Blackford") as Technical Recruiters to perform similar duties at the Bethesda office.

4.      An Account Executive generally serves as the primary point of contact for RCM's customers, but at least one Technical Recruiter is also assigned to each customer as an additional point of contact.  While serving in that capacity, the Technical Recruiter develops a close

601233.1
7/31/2007
30462/102329

relationship with the customer and becomes familiar with its preferences, habits, business operations, decision-making process, and criteria for selecting temporary and contract employees. Moreover, RCM encourages the Technical Recruiter to enhance that relationship by taking out key consultants and managers for meals at the company's expense.

5.    Ayers, Blackford, and Baillie attended regular staff meetings at RCM at which Confidential Information as defined by their Agreements, including pricing and marketing strategies, profit margins, future needs of customers, and the identity of prospective customers who were being targeted, was discussed. Ayers, Blackford, and Baillie also learned about sales opportunities identified by RCM and the expiration dates of contracts with customers.

6.    The process of identifying and recruiting candidates to staff customers involves a substantial investment of time and expense. For example, RCM reimbursed Blackford and Baillie for expenses incurred in conjunction with those activities as shown by Exhibits 1 and 2 to this declaration. In the course of dealing with those individuals, RCM also compiles information regarding their dependability, skills, and job performance. That data and the list of qualified personnel candidates constitute a valuable asset and Confidential Information which can be used by RCM's direct competitors, such as Beacon Hill.

7.    When hired by RCM, Ayers, Blackford, and Baillie had little, if any, experience working as recruiters in the company's particular market niche. RCM paid them a salary, plus a guaranteed draw, during the time which they needed to learn about that market. Thus, RCM effectively carried Ayers, Blackford, and Baillie at a loss until they became fully productive.

8.    Ayers,    Blackford,    and    Baillie    signed    identical    Non-Disclosure/Non-Solicitation/Non-Competition Agreements ("Agreements") when they started working for RCM. Copies of the Agreements are Exhibits 3, 4, and 5 to this Declaration.

2

9.      When Ayers resigned from RCM on December 1, 2006, she told the company that she was resigning for unspecified "personal reasons."  By December 2007, however, Ayers' profile in Linkedin stated that she had already begun to work for Beacon Hill as a Technical Recruiter responsible for recruiting IT and technical personnel to staff customers in the Washington Metropolitan Area.  A copy of that profile is Exhibit 6 to this Declaration.  Insofar as RCM has been able to determine, Beacon Hill did not operate an office in that market before hiring Ayers.

10.      Just two weeks later, on December 14, 2006, both Blackford and Baillie resigned from their employment with RCM, but they gave RCM no reason for doing so.  According to information obtained by RCM, Ayers recruited and hired Blackford and Baillie to work for Beacon Hill.   When they resigned, Ayers, Blackford, and Baillie constituted the entire complement of Technical Recruiters at RCM's Rockville office.   As a consequence, their simultaneous departures stripped RCM of the ability to staff the current and prospective needs of Washington Metropolitan Area customers.  (Park Declaration)

11.      RCM has learned that, since becoming employed by Beacon Hill, Ayers, Blackford, and Baillie have solicited: (a) RCM clients whom they serviced and/or solicited as RCM employees; and (b) individuals whom they knew RCM has used to staff its clients.  For example, Blackford and Baillie have solicited and/or serviced Manila Consulting and Thompson Financial on Beacon's Hill's behalf, two customers serviced by them while employed by RCM.

12.      Ayers, Blackford, and Baillie launched those solicitations immediately after their en masse resignation had left RCM especially vulnerable to competition.  Thus, Ayers, Baillie, and Blackford timed those activities to take maximum advantage of a situation which they had knowingly and intentionally created.

3

13.     In performing services for Beacon Hill, Ayers, Blackford, and Baillie have necessarily used and will continue to use RCM's trade secrets and Confidential Information, such as: (a) the names and qualifications of the personnel who are available to staff customers; (b) the identity and staffing preferences of the customer officials responsible for procuring temporary and contract employees; (c) future business opportunities; and (d) the company's profit margins and marketing and business strategies and plans.

14.     On April 12, 2007, RCM filed the Complaint which alleged that: (1) Ayers had breached her Agreement by recruiting and hiring Blackford and Baillie to work for that company; and (2) Beacon Hill had tortiously interfered with her Agreement by employing her in that capacity.  On April 20, 2007, RCM served the Complaint on Beacon Hill.  A copy of the affidavit of service is Exhibit 7 to this Declaration.

15.     Ayers, Blackford, and Baillie continued to recruit individuals used by RCM to staff customers and solicited the company's customers even after Beacon Hill was served with the Complaint and knew about their Agreements with RCM.

16.     The Agreements do not impose an undue hardship on Ayers, Blackford, and Baillie who can still work as recruiters in the Washington Metropolitan Area.  For example, each of those individuals may obtain positions as in-house recruiters with companies which recruit IT and technical employees.  Ayers, Blackford, and Baillie may also work as recruiters for temporary and contract employee firms that service market segments in which RCM is not involved and, after only one year, can compete directly with RCM.

17.     I declare under the penalty of perjury that the foregoing paper is true and correct.

Executed on July 31, 2007.

_____
CRAIG PARK

**EXHIBIT 1**

**RCM** Technologies

2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CHECK DATE   12/05/2006 CHECK NUMBER 0074114
VENDOR NO   9003447

| Doc. No | Invoice Date | Invoice No | Description | Invoice Amount | Discount | Net Amount |
|---------|-------------|-----------|-------------|----------------|----------|------------|
| 19144105 | 11/30/2006 | 11/01-11/30 | Expns | 73.07 | 0.00 | 73.07 |
| Total | | | | 73.07 | 0.00 | 73.07 |

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**RCM** Technologies

2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CITIZENS BANK
Philadelphia, PA

3-7615
360

Check No.
0074114

| CHECK DATE | PAY THIS AMOUNT |
|------------|-----------------|
| 12/05/2006 | ********73.07* |

SEVENTY-THREE and 07/100  US Dollars

Pay to the order of

William Blackford
C/O RCM Technologies
4540 Montgomery Ave.  Suite 410 N
Bethesda MD  20814

*Stanton Remen*

Authorized Signature

⑈00⑈⑈⑈⑈⑈  ⑆03607615O⑆  6202⑈⑈346⑈

*Exhibit E*

Page 1 of 2

# RCM Technologies
*The Source of Smart Solutions*

## SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT

Name: **William Blackford**
Location: **Bethesda, Maryland**
Employee ID Number: **31632**
Cost Center Number: **O-1012-01**

Period Beginning: **11/1/2006**
Period Ending: **11/30/2006**

## TRAVEL EXPENSES PAID BY THE EMPLOYEE:

Corporate Mileage Rate: 44.5

| DATE | DESCRIPTION / BUSINESS PURPOSE | MILES | AUTO TRAVEL | PARKING & TOLLS | AIR & RAIL TRAVEL | HOTEL | MEAL AMOUNT (SEE PAGE 2) | CONFER-ENCE AMT. (SEE PAGE 2) | AMT | SAP ACCOUNT NUMBER | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **AUTO TRAVEL** | | | | | | | **OTHER:** | |
| 11/2/2006 | Lunch with Mourad Jazouli - contractor with TradeWeb | | | | | | $65.50 | | | | 65.50 |
| 11/2/2006 | Lunch with Mourad Jazouli - contractor with TradeWeb | 17 | 7.565 | | | | | | | | 7.57 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| **TOTALS** | | | 7.565 | 0 | 0 | 0 | 65.5 | 0 | 0 | | 73.07 |
| | SAP ACCOUNT NUMBER | | 530051 | 530051 | 530051 | 530051 | 530052 | 616000 | | | 0.00 |

*****NOTE THAT THE INFORMATION CONTAINED ON PAGE 2 OF THIS TRAVEL AND ENTERTAINMENT EXPENSE REPORT IS AN INTEGRAL PART OF THE REPORT*****

*****PLEASE ATTACH ALL DATED RECEIPTS TO ENSURE PAYMENT*****



RCM) Technologies
*The Source of Smart Solutions*

SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT

Page 2 of 2

| DATE | TRAVEL DESTINATION | AIR | HOTEL | RENTAL CAR | OTHER | TOTALS |
|------|--------------------|-----|-------|-----------|-------|--------|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| TOTALS |  | 0 | 0 | 0 | 0 | 0 |

MEALS AND CONFERENCE DETAIL. ENTER DETAILS OF MEALS AND CONFERENCES BELOW FOR EACH DATE ABOVE WITH SUCH CHARGES.

| DATE | DESCRIPTION/ATTENDEES |
|------|------------------------|
| 1/2/2006 | Lunch with Moured Jazouli |
|  |  |
|  |  |
|  |  |

TRAVEL EXPENSES PAID DIRECTLY BY RCM TECHNOLOGIES. THIS SECTION OF THE EXPENSE REPORT IS ONLY TO BE USED FOR EXPENSES THAT WERE PREPAID BY THE COMPANY. IT IS FOR INFORMATIONAL PURPOSES ONLY, BUT YOU ARE REQUIRED TO FILL IT OUT, WHERE APPLICABLE. NO REIMBURSEMENT WILL BE MADE FOR CHARGES REPORTED IN THIS SECTION.

SIGNATURES:

EMPLOYEE:

BRANCH GM:

SUMMARY:

TOTAL EXPENSES PAID BY EMPLOYEE.: 73.07

TRAVEL ADVANCES REC'D (A/C # 141001):

TOTAL DUE TO EMPLOYEE:

TOTAL DUE TO COMPANY: 73.07

*Enuch of*
*Noward Sunel*
*11/2/06*

```
*******************************
**************************    *
*           Customer Copy
*  *******************************
  *******************************


        Taste of Morocco
       8661 Colesville Rd
    Silver Spring, Maryland  20910
          (301) 588-4003


Date:              11/02/06
Time:              2:46 PM
Server:            5. SAID
Order:             14334
Description:       Table 31

Card Type:         Visa
Card No:           ***********3013
Expires:           0810
Appr Code:         482675
```

# Purchases: $  54.50

### Tip:          $ _11.00_

### Total:        $ _165.50_
                  BLACKFORD JR/ WILLIAM

*I agree to pay the above total amount*
*according to the card issuer agreement.*



RCM Technologies
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CHECK DATE  11/08/2006 CHECK NUMBER 0072744
VENDOR NO  9003447

| Doc. No | Invoice Date | Invoice No | Description | Invoice Amount | Discount | Net Amount |
|---------|-------------|------------|-------------|----------------|----------|------------|
| 19142960 | 11/08/2006 | 10/1/2006-10/31 | EXP RPT | 32.89 | 0.00 | 32.89 |
| **Total** | | | | **32.89** | **0.00** | **32.89** |

---

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

RCM Technologies
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CITIZENS BANK
Philadelphia, PA

3-7615
360

Check No.
0072744

| CHECK DATE | PAY THIS AMOUNT |
|------------|-----------------|
| 11/08/2006 | *******32.89* |

THIRTY-TWO and 89/100  US Dollars

Pay to the order of

William Blackford
C/O RCM Technologies
4540 Montgomery Ave.  Suite 410 N
Bethesda MD  20814

*Stanton Remer*

**Authorized Signature**

Details on back.

Security features included.

⑂"0072744"  ⑊:0360761 50:⑊  6⑊2 02 2⑊⑊346⑊"

*Exhibit E*

**RCMi Technologies**
*The Source of Smart Solutions*

Page 1 of 2

**SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT**

Name: **William Blackford**
Location: **Bethesda, Maryland**
Employee ID Number: **31632**
Cost Center Number: **0-1012-01**

Period Beginning: **10/1/2006**
Period Ending: **10/31/2006**

**TRAVEL EXPENSES PAID BY THE EMPLOYEE:**

Corporate Mileage Rate: **44.5**

| | | | AUTO TRAVEL | | | | | | OTHER: | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| DATE | DESCRIPTION / BUSINESS PURPOSE | MILES | AUTO TRAVEL | PARKING & TOLLS | AIR & RAIL TRAVEL | HOTEL | MEAL AMOUNT (SEE PAGE 2) | CONFER-ENCE AMT. (SEE PAGE 2) | AMT | SAP ACCOUNT NUMBER | TOTALS |
| 10/20/2006 | Lunch with our contractor Takuma Akiba | 21.6 | 9.612 | | | | $23.28 | | | | 23.28 |
| 10/20/2006 | Lunch with our contractor Takuma Akiba | | 9.612 | | | | | | | | 9.61 |
| 10/20/2006 | Lunch with contractor Takuma Akiba | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| **TOTALS** | | | 9.612 | 0 | 0 | 0 | 23.28 | | 0 | | 32.89 |
| **SAP ACCOUNT NUMBER** | | | 530051 | 530051 | 530051 | 530051 | 530052 | 616000 | 0 | | 0.00 |

*****PLEASE ATTACH ALL DATED RECEIPTS TO ENSURE PAYMENT******

******NOTE THAT THE INFORMATION CONTAINED ON PAGE 2 OF THIS TRAVEL AND ENTERTAINMENT EXPENSE REPORT IS AN INTEGRAL PART OF THE REPORT******



**RCM Technologies**
*The Source of Smart Solutions*

## SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT

TRAVEL EXPENSES PAID DIRECTLY BY RCM TECHNOLOGIES THIS SECTION OF THE EXPENSE REPORT IS ONLY TO BE USED FOR EXPENSES THAT WERE PREPAID BY THE COMPANY. IT IS FOR INFORMATIONAL PURPOSES ONLY, BUT YOU ARE REQUIRED TO FILL IT OUT, WHERE APPLICABLE. NO REIMBURSEMENT WILL BE MADE FOR CHARGES REPORTED IN THIS SECTION.

| DATE | TRAVEL DESTINATION | AIR | HOTEL | RENTAL CAR | OTHER | TOTALS |
|------|-------------------|-----|-------|-----------|-------|--------|
|      |                   |     |       |           |       |        |
|      |                   |     |       |           |       |        |
|      |                   |     |       |           |       |        |
|      |                   |     |       |           |       |        |
|      |                   |     |       |           |       |        |
| TOTALS |                 | 0   | 0     | 0         | 0     | 0      |

MEALS AND CONFERENCE DETAIL
ENTER DETAILS OF MEALS AND
CONFERENCES BELOW FOR EACH
DATE ABOVE WITH SUCH CHARGES.

| DATE | DESCRIPTION/ATTENDEES |
|------|----------------------|
| 10/20/2006 | Lunch with Takuma Akiba |
|      |                      |
|      |                      |
|      |                      |

SIGNATURES:

EMPLOYEE:

BRANCH GM:

SUMMARY:

| TOTAL EXPENSES PAID BY EMPLOYEE.: | 32.89 |
|-----------------------------------|-------|
| TRAVEL ADVANCES REC'D (A/C # 141001): | |
| TOTAL DUE TO EMPLOYEE: | 32.89 |
| TOTAL DUE TO COMPANY: | |

*- 10/20/06*

*Lunch w/*

*→ Takwana Abd*

*CSP Inc.*

```
        C O S I
    Restaurant #0019
    2050 Wilson Blvd.
    Arlington VA 22207
      703 522-0300
```

| | |
|---|---|
| Server: Jemar | 10/20/2006 |
| BLACKFORD  JR/1 | 12:30 PM |
| Guests: 1 | 20100 |

How are we doing?

| | |
|---|---|
| Sand, L-TBM | 5.99 |
| Sand, L-Grld Chicken TBM | 6.49 |
| Sand, L-Tusc/Pesto Chickn | 6.59 |
| Tea, Cosi Iced TeaGT | 2.29 |

Visit us at www.cosifeedback.com
and tell us what you think!
Complete a short survey,
and to thank you,
you'll get $2 off your next purchase!
To access the survey,
use the following code:

| 920 100 021 1|
6666666666666666666666666
Insert the redemption code
you receive here:

This code is good for $2 off
at any Cosi restauran
within 30 days following
this visit to Cosi

| | |
|---|---|
| Sub Total | 21.36 |
| Tax | 1.92 |
| Total | 23.28 |
| VISA #XXXXXXXXXXX3013 | 23.28 |
|   Auth:304291  Exp 0810 | |

+ Tip:        _____

= Total:      _____


X_____

**Balance Due        0.00**

```
   Looking for catering to your
        office or home
       call 703-522-0300
            XOXO

     --- Check Closed ---
```

**RCM** Technologies
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777   www.rcmt.com

CHECK DATE   10/04/2006  CHECK NUMBER 0071015
VENDOR NO    9003447

| Doc. No | Invoice Date | Invoice No | Description | Invoice Amount | Discount | Net Amount |
|---------|-------------|-----------|-------------|----------------|----------|------------|
| 19141328 | 09/30/2006 | 9/01-9/30 | Expns | 45.13 | 0.00 | 45.13 |
| **Total** | | | | **45.13** | **0.00** | **45.13** |

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**RCM** Technologies
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777   www.rcmt.com

CITIZENS BANK
Philadelphia, PA

3-7615
360

Check No.
0071015

| CHECK DATE | PAY THIS AMOUNT |
|------------|-----------------|
| 10/04/2006 | ********45.13* |

Details on back.

FORTY-FIVE and 13/100   US Dollars

Pay to the order of

William Blackford
C/O RCM Technologies
4540 Montgomery Ave.  Suite 410 N
Bethesda MD  20814

*Stanton Remer*

**Authorized Signature**

Security features included.

⌐006071015⌐  ⌐:036076150:  620211346⌐

*Exhibit E*

RCM) Technologies
*The Source of Smart Solutions*

**SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT**

Page 1 of 2

Name: **William Blackford**
Location: **Bethesda, Maryland**
Employee ID Number: **31632**
Cost Center Number: **O-1012-01**

Period Beginning: **9/1/2006**
Period Ending: **9/30/2006**

**TRAVEL EXPENSES PAID BY THE EMPLOYEE:**

Corporate Mileage Rate: 44.5

| DATE | DESCRIPTION / BUSINESS PURPOSE | MILES | AUTO TRAVEL | PARKING & TOLLS | AIR & RAIL TRAVEL | HOTEL | MEAL AMOUNT (SEE PAGE 2) | CONFER-ENCE AMT. (SEE PAGE 2) | AMT | SAP ACCOUNT NUMBER | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | AUTO TRAVEL | | | | | | OTHER: | | |
| 9/20/2006 | Lunch with Robert Wade | 36 | 16.02 | | | | $29.11 | | | | 16.02 |
| | *William & Connolly* | | | | | | | | | | 29.11 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| **TOTALS** | | | 16.02 | 0 | 0 | 0 | 29.11 | 0 | 0 | | 45.13 |
| **SAP ACCOUNT NUMBER** | | | 530051 | 530051 | 530051 | 530051 | 530052 | 616000 | | | 0.00 |

*****PLEASE ATTACH ALL DATED RECEIPTS TO ENSURE PAYMENT******

*****NOTE THAT THE INFORMATION CONTAINED ON PAGE 2 OF THIS TRAVEL AND ENTERTAINMENT EXPENSE REPORT IS AN INTEGRAL PART OF THE REPORT*****

# RCM Technologies
The Source of Smart Solutions

## SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT

Page 2 of 2

### TRAVEL EXPENSES PAID DIRECTLY BY RCM TECHNOLOGIES

THIS SECTION OF THE EXPENSE REPORT IS ONLY TO BE USED FOR EXPENSES THAT WERE PREPAID BY THE COMPANY. IT IS FOR INFORMATIONAL PURPOSES ONLY, BUT YOU ARE REQUIRED TO FILL IT OUT, WHERE APPLICABLE. NO REIMBURSEMENT WILL BE MADE FOR CHARGES REPORTED IN THIS SECTION.

| DATE | TRAVEL DESTINATION | AIR | HOTEL | RENTAL CAR | OTHER | TOTALS |
|------|-------------------|-----|-------|-----------|-------|--------|
| | | | | | | |
| | | | | | | 0 |
| | | | | | | 0 |
| | | | | | | 0 |
| | | | | | | 0 |
| | | | | | | 0 |
| TOTALS | | | | | | 0 |

### MEALS AND CONFERENCE DETAIL

ENTER DETAILS OF MEALS AND CONFERENCES BELOW FOR EACH DATE ABOVE WITH SUCH CHARGES.

| DATE | DESCRIPTION/ATTENDEES |
|------|----------------------|
| 9/20/2006 | nch with Robert Wade - placed him at Williams & Conno |
| | |
| | |
| | |

### SIGNATURES:

EMPLOYEE:

BRANCH GM:

### SUMMARY:

| | |
|---|---|
| TOTAL EXPENSES PAID BY EMPLOYEE.: | 45.13 |
| TRAVEL ADVANCES REC'D (A/C # 141001): | |
| TOTAL DUE TO EMPLOYEE: | 45.13 |
| TOTAL DUE TO COMPANY: | |

MAC - RESTON #71    071
MERCHANT ID
07/20/06    12:36:40 TO81
DEBRA    CHK #031
CHARGE 1

VISA
xxxxxxxxxxxxx3013
BLACKFORD JR/ WILLIAM

AUTH #    363759

CHARGE AMOUNT    24.11

TIP AMOUNT    5.00

TOTAL    529.11

CUSTOMER COPY
WE WELCOME YOUR COMMENTS!
PLEASE CALL US AT 1-800-983-4637
OR VISIT WWW.MACARONIGRILL.COM

**RCM** ) Technologies
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CHECK DATE  09/12/2006 CHECK NUMBER 0069934
VENDOR NO   9003447

| Doc. No | Invoice Date | Invoice No | Description | Invoice Amount | Discount | Net Amount |
|---------|-------------|-----------|-------------|---------------|----------|-----------|
| 19140237 | 09/12/2006 | 8/1/2006-8/31/20 EXP RPT | | 82.34 | 0.00 | 82.34 |
| **Total** | | | | **82.34** | **0.00** | **82.34** |

---

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**RCM** ) Technologies
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CITIZENS BANK
Philadelphia, PA

3-7615
360

Check No.
0069934

| CHECK DATE | PAY THIS AMOUNT |
|------------|-----------------|
| 09/12/2006 | *******82.34* |

EIGHTY-TWO and 34/100  US Dollars

*Pay to the order of*

William Blackford
C/O RCM Technologies
4540 Montgomery Ave.  Suite 410 N
Bethesda MD  20814

*Stanton Remer*

**Authorized Signature**

⑈0069934⑈ ⑆036076150⑆ 620221134⑈

**RCM) Technologies**
*The Source of Smart Solutions*

## SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT

Name: **William Blackford**
Location: **Bethesda, Maryland**
Employee ID Number: **31632**
Cost Center Number: **0-1012-01**

Period Beginning: **8/1/2006**
Period Ending: **8/31/2006**

**TRAVEL EXPENSES PAID BY THE EMPLOYEE:**

Corporate Mileage Rate: **44.5**

| DATE | DESCRIPTION / BUSINESS PURPOSE | MILES | AUTO TRAVEL | PARKING & TOLLS | AIR & RAIL TRAVEL | HOTEL | MEAL AMOUNT (SEE PAGE 2) | CONFER-ENCE AMT. (SEE PAGE 2) | OTHER: AMT | OTHER: SAP ACCOUNT NUMBER | TOTALS |
|------|-------------------------------|-------|-------------|-----------------|-------------------|-------|--------------------------|------------------------------|-----|----------------------|--------|
| 8/11/2006 | Business Lunch → CSR | | 0 | | | | $23.43 | | | | 23.43 |
| 8/30/2006 | Business Lunch | 20 | 8.9 | | | | | | | | 8.90 |
| 8/30/2006 | Business Lunch | | 0 | | | | $36.66 | | | | 36.66 |
| 8/2/2006 | Business Lunch | 30 | 13.35 | | | | | | | | 13.35 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| **TOTALS** | | | 22.25 | 0 | 0 | 0 | 60.09 | 0 | 0 | | 82.34 |
| **SAP ACCOUNT NUMBER** | | | 530051 | 530051 | 530051 | 530051 | 530052 | 616000 | | | 0.00 |

******NOTE THAT THE INFORMATION CONTAINED ON PAGE 2 OF THIS TRAVEL AND ENTERTAINMENT EXPENSE REPORT IS AN INTEGRAL PART OF THE REPORT******

******PLEASE ATTACH ALL DATED RECEIPTS TO ENSURE PAYMENT******



RCM Technologies
The Source of Smart Solutions

## SALES PERSONNEL, MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT

Page 2 of 2

TRAVEL EXPENSES PAID DIRECTLY BY RCM TECHNOLOGIES
THIS SECTION OF THE EXPENSE REPORT IS ONLY TO BE USED FOR
EXPENSES THAT WERE PREPAID BY THE COMPANY. IT IS FOR
INFORMATIONAL PURPOSES ONLY, BUT YOU ARE REQUIRED TO FILL
IT OUT, WHERE APPLICABLE. NO REIMBURSEMENT WILL BE MADE
FOR CHARGES REPORTED IN THIS SECTION.

| DATE | TRAVEL DESTINATION | AIR | HOTEL | RENTAL CAR | OTHER | TOTALS |
|------|--------------------|-----|-------|-----------|-------|--------|
|      |                    |     |       |           |       | 0      |
|      |                    |     |       |           |       | 0      |
|      |                    |     |       |           |       | 0      |
|      |                    |     |       |           |       | 0      |
|      |                    |     |       |           |       | 0      |
| TOTALS |                  |     |       |           |       | 0      |

MEALS AND CONFERENCE DETAIL
ENTER DETAILS OF MEALS AND
CONFERENCES BELOW FOR EACH
DATE ABOVE WITH SUCH CHARGES.

| DATE | DESCRIPTION/ATTENDEES |
|------|------------------------|
| 8/11/2006 | Lunch with Takuma Akiba |
| 8/30/2006 | Lunch with Paresh Gajjar |
|      |                        |
|      |                        |
|      |                        |
|      |                        |

SIGNATURES:

EMPLOYEE: _____

BRANCH GM: _____

SUMMARY:
TOTAL EXPENSES PAID BY EMPLOYEE.: 82.34
TRAVEL ADVANCES REC'D (A/C # 141001):
TOTAL DUE TO EMPLOYEE: 82.34
TOTAL DUE TO COMPANY:

*Lunch w/*
*Paush Cajing Fannie*
*8/31/2006* *phe*

0014
Server: ELLEN S                    Rec: ?
08/31/06 12:22, Swiped  T: 48 Term: 4

CAFE DELUXE
1800 W INTERNATIONAL DR
MCLEAN, VA 22102
(    ) -
MERCHANT #: 903210937996

CARD TYPE .     ACCOUNT NUMBER
VISA            XXXXXXXXXXXXX3013
Name: WILLIAM BLACKFORD JR
09 TRANSACTION APPROVED
AUTHORIZATION #: 225120
Reference: 0031010900014
TRANS TYPE: Credit Card SALE

CHECK=              30.66

TIP=                $6.00

TOTAL =             $36.66

X _____

PHONE: (    )
CARDHOLDER WILL PAY CARD ISSUER ABOVE
AMOUNT PURSUANT TO CARDHOLDER AGREEMENT
THANK YOU!
BOTTOM COPY --> CUSTOMER

---

*Lunch w/*
*Tolven*
*Aketa*
*8/11/06*

Tommy Joe's
4714 Montgomery Lane
Bethesda, MD 20814
(301) 654-3801

Date:       Aug11'06 02:47PM
Card Type:  Visa
Acct #:     XXXXXXXXXXXX3045
Exp Date:   07/08
Auth Code:  451710
Check:      2521
Check ID:   TBL22
Server:     209 Aurora G
        WILLIAM BLACKFORD  JR

Subtotal:       19.43

Gratuity:       $4.00

Total: _____    $23.43

_____
Signature
I agree to pay above total
according to my card issuer
agreement.

* * * * Customer Copy * * * *

**EXHIBIT 2**

**RCM** Technologies
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CHECK DATE  12/12/2006 CHECK NUMBER 0074490
VENDOR NO   9003339

| Doc. No | Invoice Date | Invoice No | Description | Invoice Amount | Discount | Net Amount |
|---------|--------------|------------|-------------|----------------|----------|------------|
| 19144418 | 12/05/2006 | 11/30-12/05 | Expns | 106.56 | 0.00 | 106.56 |
| **Total** | | | | **106.56** | **0.00** | **106.56** |

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**RCM** Technologies
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CITIZENS BANK
Philadelphia, PA

$\frac{3-7615}{360}$

Check No.
0074490

| CHECK DATE | PAY THIS AMOUNT |
|------------|-----------------|
| 12/12/2006 | *******106.56* |

ONE HUNDRED SIX and 56/100  US Dollars

Pay to the order of

Scott Baillie
C/O RCM Technologies
4550 Montgomery Ave.  Suite 410N
Bethesda MD  20814

*Stanton Remer*

_____
**Authorized Signature**

Details on back.

Security features included.

⑈⑈007 4490⑈⑈  ⑈⑈0360 76 150⑈⑈  6 20 2 11346⑈⑈

Exhibit E

**RCM** Technologies
*The Secret of Smart Solutions*

**SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT**

Page 1 of 1

Name: 
Location: Scott Baillie
Employee ID Number: Bethesda, Maryland
Cost Center Number: 31501
O-1012-01

Period Begins 11/30/2006
Period Ending 12/5/2006

**TRAVEL EXPENSES PAID BY THE EMPLOYEE:**

Corporate Mileage Rate: 44.5

| DATE | DESCRIPTION / BUSINESS PURPOSE | AUTO TRAVEL MILES | AUTO TRAVEL | PARKING & TOLLS | AIR & RAIL TRAVEL | HOTEL | MEAL AMOUNT (SEE PAGE 2) | CONFER-ENCE AMT. (SEE PAGE 2) | OTHER: AMT | OTHER: SAP ACCOUNT NUMBER | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/30/2006 | Took one of my consultants out to lunch (Jim Toia) | | 0 | | | | 72.89 | | | | 72.89 |
| 12/5/2006 | Took one of my consultants out to lunch (James Lamb) | | 0 | | | | 33.67 | | | | 33.67 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | **TOTALS** | | 0 | 0 | 0 | 0 | 106.56 | 0 | 0 | | 106.56 |
| | **SAP ACCOUNT NUMBER** | 530051 | 530051 | 530051 | 530051 | 530051 | 530052 | 616000 | 0 | | |

\*\*\*\*\*PLEASE ATTACH ALL DATED RECEIPTS TO ENSURE PAYMENT\*\*\*\*\*

\*\*\*\*\*NOTE THAT THE INFORMATION CONTAINED ON PAGE 2 OF THIS TRAVEL AND ENTERTAINMENT EXPENSE REPORT IS AN INTEGRAL PART OF THE REPORT\*\*\*\*\*

**RCM Technologies**
The Power of Smart Solutions

## SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT

Page 1 of 2

TRAVEL EXPENSES PAID DIRECTLY BY RCM TECHNOLOGIES
THIS SECTION OF THE EXPENSE REPORT IS ONLY TO BE USED FOR
EXPENSES THAT WERE PREPAID BY THE COMPANY. IT IS FOR
INFORMATIONAL PURPOSES ONLY, BUT YOU ARE REQUIRED TO FILL
IT OUT, WHERE APPLICABLE. NO REIMBURSEMENT WILL BE MADE
FOR CHARGES REPORTED IN THIS SECTION.

| DATE | TRAVEL DESTINATION | AIR | HOTEL | RENTAL CAR | OTHER | TOTALS |
|------|--------------------|-----|-------|------------|-------|--------|
|      |                    |     |       |            |       |        |
|      |                    |     |       |            |       |        |
|      |                    |     |       |            |       |        |
|      |                    |     |       |            |       |        |
| TOTALS |                  | 0   | 0     | 0          | 0     | 0      |

MEALS AND CONFERENCE DETAIL
ENTER DETAILS OF MEALS AND
CONFERENCES BELOW FOR EACH
DATE. ABOVE WITH SUCH CHARGES.

| DATE | DESCRIPTION/ATTENDEES |
|------|------------------------|
|      |                        |
|      |                        |
|      |                        |

**SIGNATURES:**

EMPLOYEE:

BRANCH GM:

**SUMMARY:**

| | |
|---|---|
| TOTAL EXPENSES PAID BY EMPLOYEE: | 106.56 |
| TRAVEL ADVANCES REC'D (A/C # 41003): | |
| TOTAL DUE TO EMPLOYEE: | |
| TOTAL DUE TO COMPANY: | 106.56 |

**********************************
DATE 12/05/06                TIME 12:36PM
MID 306726040444             306726040444

M & S DC Grill
600 Thirteenth Street NW
Washington, DC,
20005
202-347-1500
PLEASE SIGN AND LEAVE THE MERCHANT COPY
THE CUSTOMER COPY IS YOURS TO TAKE

VISA       XXXXXXXXXXXXX5158 S
AUTH 05211A   TBL 22   CHECK   189104
PRE-AUTH              COCKTAIL  S EMILY C

AMOUNT                          25.15
TAX                              2.52

SUBTOTAL  $      27.67

TIP  $.....6.00.

TOTAL  $....33.67.
===========

**********************************
CUSTOMER COPY
**********************************

**********************************
DATE 11/30/06                TIME 1:31PM
MID 306726040444             306726040444

M & S DC Grill
600 Thirteenth Street NW
Washington, DC,
20005
202-347-1500
PLEASE SIGN AND LEAVE THE MERCHANT COPY
THE CUSTOMER COPY IS YOURS TO TAKE

VISA       XXXXXXXXXXXXX5158 S
AUTH 03756A   TBL 28   CHECK   187657
PRE-AUTH              COCKTAIL  S LAVELLE

AMOUNT                          55.35
TAX                              5.54

SUBTOTAL  $      60.89

TIP  $.....10.00.

TOTAL  $....72.89.
===========

**********************************
CUSTOMER COPY
**********************************

**RCM ) Technologies**
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcml.com

CHECK DATE  10/04/2006  CHECK NUMBER 0071011
VENDOR NO   9003339

| Doc. No | Invoice Date | Invoice No | Description | Invoice Amount | Discount | Net Amount |
|---------|-------------|------------|-------------|----------------|----------|------------|
| 19141330 | 09/07/2006 | 9/07 | Expns | 30.36 | 0.00 | 30.36 |
| **Total** | | | | **30.36** | **0.00** | **30.36** |

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**RCM ) Technologies**
2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcml.com

CITIZENS BANK
Philadelphia, PA

3-7615
360

Check No.
0071011

| CHECK DATE | PAY THIS AMOUNT |
|------------|-----------------|
| 10/04/2006 | *******30.36* |

THIRTY and 36/100  US Dollars

Pay to the order of

Scott Baillie
C/O RCM Technologies
4550 Montgomery Ave.  Suite 410N
Bethesda MD  20814

Stanton Remer

_Authorized Signature_

⑆007⑆0⑆1⑆⑈ ⑆⑆036076150⑆⑈ 6 2 0 2 2 1 1 3 4 6⑆⑈

Security features included.  ☐D Details on back.

Exhibit E

**RCM** Technologies
*The Source of Smart Solutions*

**SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT**

Page 1 of 2

Name: **SCOTT BAILLIE**
Location: **Bethesda, Maryland**
Employee ID Number: **31861**
Cost Center Number: **D-1012-01**

Period Begins 9/7/2006
Period Ending 9/7/2006

**TRAVEL EXPENSES PAID BY THE EMPLOYEE:**

Corporate Mileage Rate: 44.5

| DATE | DESCRIPTION / BUSINESS PURPOSE | AUTO TRAVEL | | AIR & RAIL TRAVEL | HOTEL | MEAL AMOUNT (SEE PAGE 2) | CONFER-ENCE AMT. (SEE PAGE 2) | OTHER: | | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | MILES | AUTO TRAVEL | PARKING & TOLLS | | | | | AMT | SAP ACCOUNT NUMBER | |
| 9/7/2006 | Took a new contractor out to lunch | *[signature]* | 0 | | | | 30.36 | | | | 30.36 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| | | | 0 | | | | | | | | 0.00 |
| **TOTALS** | | | 0 | 0 | 0 | 0 | 30.36 | 0 | 0 | | 30.36 |
| **SAP ACCOUNT NUMBER** | | | 530051 | 530051 | 530051 | 530051 | 530052 | 616000 | | | 30.36 |

*******NOTE THAT THE INFORMATION CONTAINED ON PAGE 2 OF THIS TRAVEL AND ENTERTAINMENT EXPENSE REPORT IS AN INTEGRAL PART OF THE REPORT*******

******PLEASE ATTACH ALL DATED RECIEPTS TO ENSURE PAYMENT******

RCM) Technologies
*The Source of Smart Solutions*

**SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT**

Page 2 of 2

TRAVEL EXPENSES PAID DIRECTLY BY RCM TECHNOLOGIES. THIS SECTION OF THE EXPENSE REPORT IS ONLY TO BE USED FOR EXPENSES THAT WERE PREPAID BY THE COMPANY. IT IS FOR INFORMATIONAL PURPOSES ONLY, BUT YOU ARE REQUIRED TO FILL IT OUT, WHERE APPLICABLE. NO REIMBURSEMENT WILL BE MADE FOR CHARGES REPORTED IN THIS SECTION.

| DATE | TRAVEL DESTINATION | AIR | HOTEL | RENTAL CAR | OTHER | TOTALS |
|------|--------------------|-----|-------|-----------|-------|--------|
|      |                    |     |       |           |       |        |
|      |                    |     |       |           |       |        |
|      |                    |     |       |           |       |        |
| TOTALS |                  | 0   | 0     | 0         | 0     | 0      |

MEALS AND CONFERENCE DETAIL
ENTER DETAILS OF MEALS AND CONFERENCES BELOW FOR EACH DATE ABOVE WITH SUCH CHARGES.

| DATE | DESCRIPTION/ATTENDEES |
|------|------------------------|
| 9/7/2006 | Lunch with contractor ( James Lamb ) |
|      |                        |
|      |                        |
|      |                        |
|      |                        |
|      |                        |

SIGNATURES:

EMPLOYEE: *(signature)*

BRANCH GM: *(signature)*

SUMMARY:

| | |
|---|---|
| TOTAL EXPENSES PAID BY EMPLOYEE.: | 30.36 |
| TRAVEL ADVANCES REC'D (A/C # 14100l): | |
| TOTAL DUE TO EMPLOYEE.: | |
| TOTAL DUE TO COMPANY: | 30.36 |

" FREE DESSERT" !!!!!!!
DAILY GRILL
One Bethesda Metro Center

Server: Steph                    DOB: 09/07/2006
02:35 PM                              09/07/2006
Table 76/1                               7/7005G

VISA                                      7340078
Card #XXXX5004B5307057           Exp:0810
Magnetic card present: BAILLIE SCOTT M
Approval: 292511·

Amount:          24.36

+ Tip: _____

= Total: _30.36_

X_____
Approval: 292511

Guest Copy



CHECK DATE  06/09/2006 CHECK NUMBER 0065439
VENDOR NO   9003339

2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

| Doc. No | Invoice Date | Invoice No | Description | Invoice Amount | Discount | Net Amount |
|---|---|---|---|---|---|---|
| 19136029 | 06/09/2006 | 5/22/06-5/23/06 | EXP RPT | 220.75 | 0.00 | 220.75 |
| **Total** | | | | **220.75** | **0.00** | **220.75** |

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

**RCM Technologies**

2500, McClellan Avenue, Suite 350
Pennsauken, NJ 08109 - 4613
(856) 486-1777  www.rcmt.com

CITIZENS BANK
Philadelphia, PA

3-7615
360

Check No.
0065439

| CHECK DATE | PAY THIS AMOUNT |
|---|---|
| 06/09/2006 | *******220.75* |

*TWO HUNDRED TWENTY and 75/100  US Dollars*

*Pay to the order of*

Scott Baillie
C/O RCM Technologies
4550 Montgomery Ave.  Suite 410N
Bethesda MD  20814

*Stanton Remer*

**Authorized Signature**

⑈0065439⑈ ⑈036076150⑈ 620221134⑈

**Exhibit E**

**RCM) Technologies**
The Source of Smart Solutions

**SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT**

Page 1 of 2

Name: **Scott Baillie**
Location: **Bethesda, Maryland**
Employee ID Number:
Cost Center Number: **0-1012-01**

Period Beginning: **5/22/2006**
Period Ending: **5/23/2006**

**TRAVEL EXPENSES PAID BY THE EMPLOYEE:**

Corporate Mileage Rate: **44.5**

| DATE | DESCRIPTION / BUSINESS PURPOSE | MILES | AUTO TRAVEL | PARKING & TOLLS | AIR & RAIL TRAVEL | HOTEL | MEAL AMOUNT (SEE PAGE 2) | CONFER- ENCE AMT. (SEE PAGE 2) | OTHER: AMT | OTHER: SAP ACCOUNT NUMBER | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/22/2006 | Drove up to corporate in Parsippany | 225 | 100.125 | 10.25 | | | | | | | 110.375 |
| 5/23/2006 | Drove down to Bethesda from corporate | 225 | 100.125 | 10.25 | | | | | | | 110.375 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| | | | 0 | | | | | | | | 0 |
| **TOTALS** | | | 200.25 | 20.5 | 0 | 0 | 0 | 0 | 0 | | 220.75 |
| **SAP ACCOUNT NUMBER** | | | 530051 | 530051 | 530051 | 530051 | 530052 | 616000 | 0 | | |

**\*\*\*\*\*\*PLEASE ATTACH ALL DATED RECIEPTS TO ENSURE PAYMENT\*\*\*\*\*\***

**\*\*\*\*\*\*NOTE THAT THE INFORMATION CONTAINED ON PAGE 2 OF THIS TRAVEL AND ENTERTAINMENT EXPENSE REPORT IS AN INTEGRAL PART OF THE REPORT\*\*\*\*\*\***

RCM Technologies
*The Source of Smart Solutions*

SALES PERSONNEL MONTHLY TRAVEL AND ENTERTAINMENT EXPENSE REPORT

Page 2 of 2

TRAVEL EXPENSES PAID DIRECTLY BY RCM TECHNOLOGIES
THIS SECTION OF THE EXPENSE REPORT IS ONLY TO BE USED FOR
EXPENSES THAT WERE PREPAID BY THE COMPANY. IT IS FOR
INFORMATIONAL PURPOSES ONLY, BUT YOU ARE REQUIRED TO FILL
IT OUT, WHERE APPLICABLE. NO REIMBURSEMENT WILL BE MADE
FOR CHARGES REPORTED IN THIS SECTION.

| DATE | TRAVEL DESTINATION | AIR | HOTEL | RENTAL CAR | OTHER | TOTALS |
|------|-------------------|-----|-------|-----------|-------|--------|
| 5/22/2006 | Parsippany, NJ | | Prepaid | | | 0 |
| | | | | | | 0 |
| | | | | | | 0 |
| | | | | | | 0 |
| | | | | | | 0 |
| TOTALS | | | | | | 0 |

MEALS AND CONFERENCE DETAIL
ENTER DETAILS OF MEALS AND
CONFERENCES BELOW FOR EACH
DATE ABOVE WITH SUCH CHARGES.

| DATE | DESCRIPTION/ATTENDEES |
|------|----------------------|
| | |
| | |
| | |
| | |

SIGNATURES:

EMPLOYEE: _____

BRANCH GM: _____

SUMMARY:

TOTAL EXPENSES PAID BY EMPLOYEE.: 220.75

TRAVEL ADVANCES REC'D (A/C # 141001):

TOTAL DUE TO EMPLOYEE: 220.75

TOTAL DUE TO COMPANY:

**EXHIBIT 3**



EXHIBIT
1

**RCM Technologies**
*The Source of Smart Solutions*

## NON-DISCLOSURE / NON-SOLICITATION / NON-COMPETITION AGREEMENT

This Non-Disclosure / Non-Solicitation / Non-Competition Agreement ("Agreement") is entered into between Kimberly Ayers ("Employee") and RCM Technologies, Inc., ("Company") in light of the following background facts:

      A.     In the course of performing his/her job duties for the Company; the Company will provide Employee with certain confidential information, trade secrets, specialized training, and access to computer information, which are the exclusive proprietary information and property of the Company. The Company desires to protect such information from disclosure and prevent unfair competition by the Employee during employment and for a one-year period thereafter.

      B.     The Employee desires to be employed by the Company under the non-disclosure, non-solicitation, and non-competition restrictions contained in this Agreement, and acknowledges that, as a consequence of employment in a specialized position with the Company, he/she will be provided, or will be in a position to access, utilize, create, obtain, and/or receive confidential and proprietary information, trade secrets, training, and computer information which is the exclusive proprietary information and property of the Company.

      C.     In consideration of Employee's being given access to confidential and proprietary information, trade secrets, specialized training, benefits, access to various computer processes, designs, and programs, and/or for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that the following provisions will govern during the Employee's employment with the Company and for one year thereafter:

      1.    *Inventions.*

      Employee agrees that during employment he/she will promptly inform and disclose to the Company all copyrighted materials or programs, programs or materials subject to being copyrighted, inventions, designs, improvements and discoveries which he/she has or may have during his/her employment which pertain or relate to the business of the Company or to any research or experimental or developmental work carried on by the Company, or which results from or is suggested by any work performed by Employee on behalf of the Company or any of its customers. Such disclosure shall be made whether or not such programs, materials, inventions, designs, improvements and discoveries are conceived by the Employee alone or with others and whether or not conceived during regular working hours. All such copyrighted programs, materials, inventions, designs, improvements and discoveries shall be the exclusive property of the Company and Employee hereby assigns to the Company all of his right, title and interest therein. At the Company's sole expense, the Employee shall assist in obtaining patents or copyrights on all such inventions, programs, materials, designs, improvements and discoveries deemed patentable or subject to copyright by the Company and shall execute all documents and do all things necessary to obtain letters, patent, or vest the Company with full and exclusive title thereto, and protect the same against infringement by others. Employee will not be entitled to additional compensation for any inventions or designs made during the course of his/her employment.

      2.    *Government Compliance.*

      Employee will comply and will take all action necessary to enable the Company to comply with all state and federal government rules, regulations and terms and

conditions of contracts between agencies of the United States government or their contractors and the Company, which relate either to patent rights or to the safeguarding of information pertaining to the defense of the United States. Employee, at the time of signing this Agreement, has no right, title or interest in, or no right to assign (because it shall previously have been assigned) any copyrighted programs or materials, programs or materials subject to copyright, invention, design, improvement or discovery which pertains or relates to the Company's business

3.      *Trade Secrets.*

        Due to the nature of the Company's business, maintaining confidentiality of information regarding the Company's operations, activities and plans is especially important. Employee has an affirmative obligation to protect the Company's information. The parties acknowledge and agree that trade secret and confidential and proprietary information are valuable assets of the Company. Solely by virtue of specialized employment with the Company, Employee will acquire knowledge of and gain access to trade secrets and confidential and proprietary information of the Company. Such trade secrets and confidential and proprietary information is defined as all items, materials, and information (whether or not reduced to writing and whether or not patentable or copyrightable) which belong to the Company, relate to the present or future business of the Company, are kept confidential or secret by the Company, or are not generally known in the industry in which the Company is engaged.

        Trade secrets and confidential and proprietary information includes, without limitation, customer lists, personnel lists, fee schedules, training manuals and materials, devices, inventions, processes and compilations of information, records and specifications, computer database, programs and software, financial data and plans, profit margins and pricing policies and practices, sales and marketing techniques, history, and data forecasts, and personnel training techniques, materials and any Protected Health Information (PHI) that is covered by HIPAA (hereinafter collectively referred to as "Confidential Information"). The failure to designate particular information as confidential and/or proprietary and/or secret shall not preclude any later claim by the Company that such information is confidential and/or proprietary and/or secret. Employee agrees that he/she shall not disclose to any individual, corporation, firm or other entity, any Confidential Information, directly or indirectly, or in any way use, or cause, facilitate or allow any third party to use, Confidential Information in any way, either during the term of his/her employment or for one year thereafter, except as required in the course of his/her employment with the Company.

        All Confidential Information provided to Employee during his/her employment is the exclusive property of the Company and/or its clients. No Confidential Information or copies, summaries or compilations of any kind will be removed from the Company's premises or the premises of the Company's customers under any circumstances whatsoever without prior written consent of the Company. Employee will return all Confidential Information, including copies, summaries or compilations of such information to the Company upon termination of employment or at any other time at the request of the Company.

4.      *Non-Solicitation.*

        Employee agrees that he/she will not, during the term of his/her employment or for one year thereafter, do or commit any of the following acts:

                a.      Induce, entice, hire or attempt to hire or employ any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, either directly or on behalf of an individual or other entity

who provides the same or similar services, processes, or products as the Company.

        b.      Induce, or attempt to induce any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with the Company.

        c.      Induce, or attempt to induce, any customer, supplier, vendor or any other person to cease doing business with the Company.

        d.      Induce, or attempt to induce any individual to violate the provisions or prohibitions contained in the Agreement.

5.     *Non-Competition.*

The services provided by Employee are of a special, unique and extraordinary nature. Employee shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during his/her employment with the Company or any subsidiary or affiliate, or during the one-year period following termination, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by the Company. The limitations and restrictions contained in this paragraph shall apply only to a) present and former clients of the Company, irrespective of where located, to or for whom the Employee, while employed by the Company, has directly or indirectly provided services or caused the Company to provide services within the twelve months prior to the date of his/her termination of employment, or b) prospective customers/clients of the Company, irrespective of where located, to whose potential business the Company has given specific development attention within the twelve months prior to the date of his/her termination of employment.

        Employee further agrees and acknowledges that if he/she is on an assignment with a Company client, he/she will not continue to perform that same or similar assignment on behalf of another entity for a period of one year after the date that Employee ceases to perform that assignment for the Company.

6.     *Remedy for Breach.*

        Employee acknowledges that any violation of this Agreement may result in immediate termination and dismissal and may subject employee to a claim by the Company for money damages for any and all losses sustained as a result of the unauthorized release of any Confidential Information or the actions of Employee, which may have violated any provision of this Agreement.

        Employee acknowledges and agrees that the Company's remedies at law may be inadequate and that the Company shall have the right to seek injunctive relief in addition to any other remedy available to it. If Employee breaches this Agreement or any of the covenants contained herein, the Company has the right to, and will seek, appropriate injunctive relief as well as any and all other remedies and damages, to compel the enforcement of the terms stated herein.

        It is agreed by the parties that in the event of an actual or threatened breach by Employee of any of the provisions in this Agreement, in addition to any other remedy provided for herein or at law, the Company shall have the right to notify Employee's then present or prospective employer of the terms of this Agreement (including but not limited to providing a copy of this Agreement) without in any manner being liable for such action

7.    *Waiver.*

The failure of the Company to insist upon strict adherence to one or more of the covenants and restrictions contained herein, on one or more occasions, shall not be construed as a waiver, nor shall such course of action deprive the Company of the right thereafter to require strict compliance with the same.

8.    *Construction.*

Employee acknowledges that the restrictions upon his/her employment and the geographical restrictions hereby imposed are fair and reasonable and are reasonably required for the protection of the Company. If any part of this Agreement is held unenforceable or invalid, the remaining parts thereof shall continue to be enforceable. If the provisions imposing geographic or time restrictions are deemed unenforceable by a court of competent jurisdiction, then such provisions for the purposes of this Agreement shall include the maximum geographic area or time period which a court of competent jurisdiction determines to be reasonable, valid and enforceable. To the extent that the court permits "blue-penciling," the parties to this Agreement intend that the court will take all action necessary to revise this Agreement so as to ensure its enforceability against Employee to the greatest extent consistent with law.

9.    *Governing Law/Jurisdiction.*

This Agreement shall be subject to and governed by the internal laws of the State of New Jersey irrespective of the choice of law rules in the state of execution of this Agreement or performance of employment. Employee consents to the exercise of personal jurisdiction over him by the state and federal courts of New Jersey in the event of an actual or threatened breach of this Agreement by Employee.

10.    *Length of Employment/At Will Employment.*

Nothing contained in this Agreement shall be construed as guaranteeing Employee employment for any particular duration or length of time. Employee's employment relationship with the Company is exclusively that of an at will employee and his/her employment may be terminated at any time, with or without cause.

11.    *Assignment.*

This agreement may be assigned without the consent of Employee in connection with the sale, transfer or other assignment of all or substantially all of the capital stock or assets of, or the merger of, the Company, provided that the party acquiring such capital stock or assets or into which the Company merges assumes in writing the obligations of the Company hereunder and provided further that no such assignment shall release the Company from its obligations hereunder. Otherwise, any party may not assign the Agreement hereto without the prior written consent of all of the other parties.

12.    *No Violation of Existing Agreements/Restrictions*

Employee represents to the Company that other than the agreement which is Attachment D to Employee's employment offer letter of even date (the "Offer Letter"), he/she is not subject to any form of non-competition restrictions or agreements with any former employers or other organizations or entities, which would be violated by his/her contemplated employment with the Company under the arrangements set forth in the Offer Letter. Employee agrees that he/she will not use or disclose to any current or future employee of the Company any proprietary or confidential information or trade secrets of any former employers or other organizations or entities that Employee may possess. Employee acknowledges his understanding that the use or disclosure of proprietary or

confidential information or trade secrets of other persons or entities is a ground for termination of employment with the Company.

13.    *Understanding of Agreement*

Employee acknowledges that he/she has read and understands all of the provisions of this Agreement and the accompanying offer letter. Employee further acknowledges that he/she has had adequate time and opportunity to consult with his/her personal legal counsel or other advisors as Employee deemed necessary in order to come to a complete understanding of the provisions of this Agreement and enters into this Agreement voluntarily and on the basis of that understanding.

_____        9·18·06
Employee                                Dated: August____, 2006

_____        Dated: August 30, 2006
Human Resources

EXHIBIT

2



RCM ) Technologies
The Source of Smart Solutions

## NON-DISCLOSURE / NON-SOLICITATION / NON-COMPETITION AGREEMENT

This Non-Disclosure / Non-Solicitation / Non-Competition Agreement ("Agreement") is entered into between Scott Baillie ("Employee") and RCM Technologies, Inc., ("Company") in light of the following background facts:

A.      In the course of performing his/her job duties for the Company, the Company will provide Employee with certain confidential information, trade secrets, specialized training, and access to computer information, which are the exclusive proprietary information and property of the Company. The Company desires to protect such information from disclosure and prevent unfair competition by the Employee during employment and for a one-year period thereafter.

B.      The Employee desires to be employed by the Company under the non-disclosure, non-solicitation, and non-competition restrictions contained in this Agreement, and acknowledges that, as a consequence of employment in a specialized position with the Company, he/she will be provided, or will be in a position to access, utilize, create, obtain, and/or receive confidential and proprietary information, trade secrets, training, and computer information which is the exclusive proprietary information and property of the Company.

C.      In consideration of Employee's being given access to confidential and proprietary information, trade secrets, specialized training, benefits, access to various computer processes, designs, and programs, and/or for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that the following provisions will govern during the Employee's employment with the Company and for one year thereafter.

1.      *Inventions.*

Employee agrees that during employment he/she will promptly inform and disclose to the Company all copyrighted materials or programs, programs or materials subject to being copyrighted, inventions, designs, improvements and discoveries which he/she has or may have during his/her employment which pertain or relate to the business of the Company or to any research or experimental or developmental work carried on by the Company, or which results from or is suggested by any work performed by Employee on behalf of the Company or any of its customers. Such disclosure shall be made whether or not such programs, materials, inventions, designs, improvements and discoveries are conceived by the Employee alone or with others and whether or not conceived during regular working hours. All such copyrighted programs, materials, inventions, designs, improvements and discoveries shall be the exclusive property of the Company and Employee hereby assigns to the Company all of his right, title and interest therein. At the Company's sole expense, the Employee shall assist in obtaining patents or copyrights on all such inventions, programs, materials, designs, improvements and discoveries deemed patentable or subject to copyright by the Company and shall execute all documents and do all things necessary to obtain letters, patent, or vest the Company with full and exclusive title thereto, and protect the same against infringement by others. Employee will not be entitled to additional compensation for any inventions or designs made during the course of his/her employment.

2.      *Government Compliance.*

Employee will comply and will take all action necessary to enable the Company to comply with all state and federal government rules, regulations and terms and

**EXHIBIT 4**



RCM Technologies, Inc.
20 Waterview Boulevard
Parsippany, NJ 07054

Tel: 973.658.3000
Fax: 973.658.3054
operations@rcmt.com
www.rcmt.com

May 5, 2006

Scott M. Baillie
14906 McKisson Ct. Apt. A
Silver Spring, MD  20906

Dear Scott,

I am extremely pleased to offer you the position of Technical Recruiter for RCM Technologies, Inc. working out of the company's Bethesda office. We are extending this offer conditioned on the satisfactory completion of our reference checks. The following enumerates the terms of employment that were discussed with Craig Park.

## *Position:*

The position of Technical Recruiter is based in our Bethesda office and reports to Craig Park, Vice President of the Bethesda office.  As the Technical Recruiter you will be responsible for recruiting all levels of candidates for a variety of RCM's ever-growing technical staffing and IT development needs.  Some responsibilities of this position include:

- Utilizing a variety of sourcing techniques to screen, identify and select qualified candidates.
- Source candidates via database, Internet, cold calling, networking and other creative sourcing activity techniques to generate additional candidates.
- Write and post job descriptions to company web site and Internet job boards.
- Develop and maintain a solid pipeline of qualified candidates resulting in a steady flow of perspective hires.
- Engage in "face-to face" interviews to evaluate perspective candidates.
- Conduct candidate skill evaluation testing
- Verify candidates references
- Evaluate, negotiate and extend offers to candidates.
- Interface with the Account Executive, Practice Manager and support personnel to maintain:
     *Minimum targeted gross margins
     *Minimum targeted headcount

## *Compensation:*

Your base compensation will consist of an annual salary of $40,000, paid bi-weekly.  In addition, you will receive a non-recoverable draw of $12,000 per year ($461.14 paid bi-weekly) your performance will be reviewed on a quarterly basis for the first 12 months and then on an annual basis. Any salary increases will be based on merit.



*Commission Schedule*
Your commissions will be paid according to the commission schedule that is included with this letter.

*Benefits:*
You will be eligible to participate in the Company's health insurance and retirement plans based on the plan's normal enrollment periods. You are entitled to participate in the Company's vacation and personal/sick time plans. This time accrues with each payroll. The accrual rate for your vacation time is 3.08 hours per payroll and 1.54 hours for personal/sick time.

*Non-Competition / Non-Solicitation Agreement:*
A condition of employment is to execute the RCM Technologies, Inc. Non-Competition/Non-Solicitation Agreement. We require that the performance of your duties in the role of Technical Recruiter of RCM Technologies, Inc. will not violate any standing agreements with any other Companies which might be in effect.

*At Will Employment*
Employment at RCM is "at will" and may be terminated by you or the Company at any time and for any reason. You are free to resign from RCM at any time and RCM has the right to terminate your employment at any time, either with or without cause, and with or without notice, provided it is not for an unlawful purpose.

*Start Date:*
We anticipate your start date with RCM to be on or around May 22, 2006.

If you concur that this letter accurately defines the agreement that was reached, please confirm your acceptance by signing both copies in the space indicated below and returning one to us at your earliest convenience.

We truly look forward to your joining the RCM team. Together, we can successfully accomplish many great and rewarding achievements.

Sincerely,

Deana Chesleigh
Director of Human Resources

Accepted:

_____          05/22/06
Signature   Date



## NON-DISCLOSURE / NON-SOLICITATION / NON-COMPETITION AGREEMENT

This Non-Disclosure / Non-Solicitation / Non-Competition Agreement ("Agreement") is entered into between Scott Baillie ("Employee") and RCM Technologies, Inc., ("Company") in light of the following background facts:

      A.      In the course of performing his/her job duties for the Company, the Company will provide Employee with certain confidential information, trade secrets, specialized training, and access to computer information, which are the exclusive proprietary information and property of the Company. The Company desires to protect such information from disclosure and prevent unfair competition by the Employee during employment and for a one-year period thereafter.

      B.      The Employee desires to be employed by the Company under the non-disclosure, non-solicitation, and non-competition restrictions contained in this Agreement, and acknowledges that, as a consequence of employment in a specialized position with the Company, he/she will be provided, or will be in a position to access, utilize, create, obtain, and/or receive confidential and proprietary information, trade secrets, training, and computer information which is the exclusive proprietary information and property of the Company.

      C.      In consideration of Employee's being given access to confidential and proprietary information, trade secrets, specialized training, benefits, access to various computer processes, designs, and programs, and/or for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that the following provisions will govern during the Employee's employment with the Company and for one year thereafter:

      1.      *Inventions.*

      Employee agrees that during employment he/she will promptly inform and disclose to the Company all copyrighted materials or programs, programs or materials subject to being copyrighted, inventions, designs, improvements and discoveries which he/she has or may have during his/her employment which pertain or relate to the business of the Company or to any research or experimental or developmental work carried on by the Company, or which results from or is suggested by any work performed by Employee on behalf of the Company or any of its customers. Such disclosure shall be made whether or not such programs, materials, inventions, designs, improvements and discoveries are conceived by the Employee alone or with others and whether or not conceived during regular working hours. All such copyrighted programs, materials, inventions, designs, improvements and discoveries shall be the exclusive property of the Company and Employee hereby assigns to the Company all of his right, title and interest therein. At the Company's sole expense, the Employee shall assist in obtaining patents or copyrights on all such inventions, programs, materials, designs, improvements and discoveries deemed patentable or subject to copyright by the Company and shall execute all documents and do all things necessary to obtain letters, patent, or vest the Company with full and exclusive title thereto, and protect the same against infringement by others. Employee will not be entitled to additional compensation for any inventions or designs made during the course of his/her employment.

      2.      *Government Compliance.*

      Employee will comply and will take all action necessary to enable the Company to comply with all state and federal government rules, regulations and terms and

conditions of contracts between agencies of the United States government or their contractors and the Company, which relate either to patent rights or to the safeguarding of information pertaining to the defense of the United States. Employee, at the time of signing this Agreement, has no right, title or interest in, or no right to assign (because it shall previously have been assigned) any copyrighted programs or materials, programs or materials subject to copyright, invention, design, improvement or discovery which pertains or relates to the Company's business

3.    *Trade Secrets.*

Due to the nature of the Company's business, maintaining confidentiality of information regarding the Company's operations, activities and plans is especially important. Employee has an affirmative obligation to protect the Company's information. The parties acknowledge and agree that trade secret and confidential and proprietary information are valuable assets of the Company. Solely by virtue of specialized employment with the Company, Employee will acquire knowledge of and gain access to trade secrets and confidential and proprietary information of the Company. Such trade secrets and confidential and proprietary information is defined as all items, materials, and information (whether or not reduced to writing and whether or not patentable or copyrightable) which belong to the Company, relate to the present or future business of the Company, are kept confidential or secret by the Company, or are not generally known in the industry in which the Company is engaged.

Trade secrets and confidential and proprietary information includes, without limitation, customer lists, personnel lists, fee schedules, training manuals and materials, devices, inventions, processes and compilations of information, records and specifications, computer database, programs and software, financial data and plans, profit margins and pricing policies and practices, sales and marketing techniques, history, and data forecasts, and personnel training techniques, materials and any Protected Health Information (PHI) that is covered by HIPAA (hereinafter collectively referred to as "Confidential Information"). The failure to designate particular information as confidential and/or proprietary and/or secret shall not preclude any later claim by the Company that such information is confidential and/or proprietary and/or secret. Employee agrees that he/she shall not disclose to any individual, corporation, firm or other entity, any Confidential Information, directly or indirectly, or in any way use, or cause, facilitate or allow any third party to use, Confidential Information in any way, either during the term of his/her employment or for one year thereafter, except as required in the course of his/her employment with the Company.

All Confidential Information provided to Employee during his/her employment is the exclusive property of the Company and/or its clients. No Confidential Information or copies, summaries or compilations of any kind will be removed from the Company's premises or the premises of the Company's customers under any circumstances whatsoever without prior written consent of the Company. Employee will return all Confidential Information, including copies, summaries or compilations of such information to the Company upon termination of employment or at any other time at the request of the Company.

4.    *Non-Solicitation.*

Employee agrees that he/she will not, during the term of his/her employment or for one year thereafter, do or commit any of the following acts:

a.    Induce, entice, hire or attempt to hire or employ any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, either directly or on behalf of an individual or other entity

who provides the same or similar services, processes, or products as the Company.

b.    Induce, or attempt to induce any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with the Company.

c.    Induce, or attempt to induce, any customer, supplier, vendor or any other person to cease doing business with the Company.

d.    Induce, or attempt to induce any individual to violate the provisions or prohibitions contained in the Agreement.

5.    *Non-Competition.*

The services provided by Employee are of a special, unique and extraordinary nature. Employee shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during his/her employment with the Company or any subsidiary or affiliate, or during the one-year period following termination, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by the Company. The limitations and restrictions contained in this paragraph shall apply only to a) present and former clients of the Company, irrespective of where located, to or for whom the Employee, while employed by the Company, has directly or indirectly provided services or caused the Company to provide services within the twelve months prior to the date of his/her termination of employment, or b) prospective customers/clients of the Company, irrespective of where located, to whose potential business the Company has given specific development attention within the twelve months prior to the date of his/her termination of employment.

Employee further agrees and acknowledges that if he/she is on an assignment with a Company client, he/she will not continue to perform that same or similar assignment on behalf of another entity for a period of one year after the date that Employee ceases to perform that assignment for the Company.

6.    *Remedy for Breach.*

Employee acknowledges that any violation of this Agreement may result in immediate termination and dismissal and may subject employee to a claim by the Company for money damages for any and all losses sustained as a result of the unauthorized release of any Confidential Information or the actions of Employee, which may have violated any provision of this Agreement.

Employee acknowledges and agrees that the Company's remedies at law may be inadequate and that the Company shall have the right to seek injunctive relief in addition to any other remedy available to it. If Employee breaches this Agreement or any of the covenants contained herein, the Company has the right to, and will seek, appropriate injunctive relief as well as any and all other remedies and damages, to compel the enforcement of the terms stated herein.

It is agreed by the parties that in the event of an actual or threatened breach by Employee of any of the provisions in this Agreement, in addition to any other remedy provided for herein or at law, the Company shall have the right to notify Employee's then present or prospective employer of the terms of this Agreement (including but not limited to providing a copy of this Agreement) without in any manner being liable for such action

7.    *Waiver.*

The failure of the Company to insist upon strict adherence to one or more of the covenants and restrictions contained herein, on one or more occasions, shall not be construed as a waiver, nor shall such course of action deprive the Company of the right thereafter to require strict compliance with the same.

8.    *Construction.*

Employee acknowledges that the restrictions upon his/her employment and the geographical restrictions hereby imposed are fair and reasonable and are reasonably required for the protection of the Company. If any part of this Agreement is held unenforceable or invalid, the remaining parts thereof shall continue to be enforceable. If the provisions imposing geographic or time restrictions are deemed unenforceable by a court of competent jurisdiction, then such provisions for the purposes of this Agreement shall include the maximum geographic area or time period which a court of competent jurisdiction determines to be reasonable, valid and enforceable. To the extent that the court permits "blue-penciling," the parties to this Agreement intend that the court will take all action necessary to revise this Agreement so as to ensure its enforceability against Employee to the greatest extent consistent with law.

9.    *Governing Law/Jurisdiction.*

This Agreement shall be subject to and governed by the internal laws of the State of New Jersey irrespective of the choice of law rules in the state of execution of this Agreement or performance of employment. Employee consents to the exercise of personal jurisdiction over him by the state and federal courts of New Jersey in the event of an actual or threatened breach of this Agreement by Employee.

10.    *Length of Employment/At Will Employment.*

Nothing contained in this Agreement shall be construed as guaranteeing Employee employment for any particular duration or length of time. Employee's employment relationship with the Company is exclusively that of an at will employee and his/her employment may be terminated at any time, with or without cause.

11.    *Assignment.*

This agreement may be assigned without the consent of Employee in connection with the sale, transfer or other assignment of all or substantially all of the capital stock or assets of, or the merger of, the Company, provided that the party acquiring such capital stock or assets or into which the Company merges assumes in writing the obligations of the Company hereunder and provided further that no such assignment shall release the Company from its obligations hereunder. Otherwise, any party may not assign the Agreement hereto without the prior written consent of all of the other parties.

12.    *No Violation of Existing Agreements/Restrictions*

Employee represents to the Company that other than the agreement which is Attachment D to Employee's employment offer letter of even date (the "Offer Letter"), he/she is not subject to any form of non-competition restrictions or agreements with any former employers or other organizations or entities, which would be violated by his/her contemplated employment with the Company under the arrangements set forth in the Offer Letter. Employee agrees that he/she will not use or disclose to any current or future employee of the Company any proprietary or confidential information or trade secrets of any former employers or other organizations or entities that Employee may possess. Employee acknowledges his understanding that the use or disclosure of proprietary or

confidential information or trade secrets of other persons or entities is a ground for termination of employment with the Company.

13.    *Understanding of Agreement*

Employee acknowledges that he/she has read and understands all of the provisions of this Agreement and the accompanying offer letter. Employee further acknowledges that he/she has had adequate time and opportunity to consult with his/her personal legal counsel or other advisors as Employee deemed necessary in order to come to a complete understanding of the provisions of this Agreement and enters into this Agreement voluntarily and on the basis of that understanding.

_____                    Dated: May 22 , 2006
Employee

_____                    Dated: May 12 , 2006
Human Resources

# EXHIBIT 5



**RCM Technologies, Inc.**
20 Waterview Boulevard
Parsippany, NJ 07054

Tel: 973.658.3000
Fax: 973.658.3054
operations@rcmt.com
www.rcmt.com

May 5, 2006

William Blackford

Dear William,

I am extremely pleased to offer you the position of Technical Recruiter for RCM Technologies, Inc. working out of the company's Bethesda office. We are extending this offer conditioned on the satisfactory completion of our reference checks. The following enumerates the terms of employment that were discussed with Craig Park.

**Position:**
The position of Technical Recruiter is based in our Bethesda office and reports to Craig Park, Vice President of the Bethesda office. As the Technical Recruiter you will be responsible for recruiting all levels of candidates for a variety of RCM's ever-growing technical staffing and IT development needs. Some responsibilities of this position include:

- Utilizing a variety of sourcing techniques to screen, identify and select qualified candidates.
- Source candidates via database, Internet, cold calling, networking and other creative sourcing activity techniques to generate additional candidates.
- Write and post job descriptions to company web site and Internet job boards.
- Develop and maintain a solid pipeline of qualified candidates resulting in a steady flow of perspective hires.
- Engage in "face-to face" interviews to evaluate perspective candidates.
- Conduct candidate skill evaluation testing
- Verify candidates references
- Evaluate, negotiate and extend offers to candidates.
- Interface with the Account Executive, Practice Manager and support personnel to maintain:
  - *Minimum targeted gross margins
  - *Minimum targeted headcount

**Compensation:**
Your base compensation will consist of an annual salary of $40,000, paid bi-weekly. In addition, you will receive a non-recoverable draw of $15,000 per year ($576.92 paid bi-weekly) your performance will be reviewed on a quarterly basis for the first 12 months and then on an annual basis. Any salary increases will be based on merit.



*Commission Schedule*
Your commissions will be paid according to the commission schedule that is included with this letter.

*Benefits:*
You will be eligible to participate in the Company's health insurance and retirement plans based on the plan's normal enrollment periods. You are entitled to participate in the Company's vacation and personal/sick time plans. This time accrues with each payroll. The accrual rate for your vacation time is 3.08 hours per payroll and 1.54 hours for personal/sick time.

*Non-Competition / Non-Solicitation Agreement:*
A condition of employment is to execute the RCM Technologies, Inc. Non-Competition/ Non-Solicitation Agreement. We require that the performance of your duties in the role of Technical Recruiter of RCM Technologies, Inc. will not violate any standing agreements with any other Companies which might be in effect.

*At Will Employment*
Employment at RCM is "at will" and may be terminated by you or the Company at any time and for any reason. You are free to resign from RCM at any time and RCM has the right to terminate your employment at any time, either with or without cause, and with or without notice, provided it is not for an unlawful purpose.

*Start Date:*
We anticipate your start date with RCM to be on or around May 15, 2006.

If you concur that this letter accurately defines the agreement that was reached, please confirm your acceptance by signing both copies in the space indicated below and returning one to us at your earliest convenience.

We truly look forward to your joining the RCM team. Together, we can successfully accomplish many great and rewarding achievements.

Sincerely,

Deana Chesleigh
Director of Human Resources

Accepted:

_____          _____
Signature   Date



## NON-DISCLOSURE / NON-SOLICITATION / NON-COMPETITION AGREEMENT

This Non-Disclosure / Non-Solicitation / Non-Competition Agreement ("Agreement") is entered into between **William Blackford** ("Employee") and RCM Technologies, Inc., ("Company") in light of the following background facts:

A.    In the course of performing his/her job duties for the Company; the Company will provide Employee with certain confidential information, trade secrets, specialized training, and access to computer information, which are the exclusive proprietary information and property of the Company. The Company desires to protect such information from disclosure and prevent unfair competition by the Employee during employment and for a one-year period thereafter.

B.    The Employee desires to be employed by the Company under the non-disclosure, non-solicitation, and non-competition restrictions contained in this Agreement, and acknowledges that, as a consequence of employment in a specialized position with the Company, he/she will be provided, or will be in a position to access, utilize, create, obtain, and/or receive confidential and proprietary information, trade secrets, training, and computer information which is the exclusive proprietary information and property of the Company.

C.    In consideration of Employee's being given access to confidential and proprietary information, trade secrets, specialized training, benefits, access to various computer processes, designs, and programs, and/or for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree that the following provisions will govern during the Employee's employment with the Company and for one year thereafter:

1.    *Inventions.*

Employee agrees that during employment he/she will promptly inform and disclose to the Company all copyrighted materials or programs, programs or materials subject to being copyrighted, inventions, designs, improvements and discoveries which he/she has or may have during his/her employment which pertain or relate to the business of the Company or to any research or experimental or developmental work carried on by the Company, or which results from or is suggested by any work performed by Employee on behalf of the Company or any of its customers. Such disclosure shall be made whether or not such programs, materials, inventions, designs, improvements and discoveries are conceived by the Employee alone or with others and whether or not conceived during regular working hours. All such copyrighted programs, materials, inventions, designs, improvements and discoveries shall be the exclusive property of the Company and Employee hereby assigns to the Company all of his right, title and interest therein. At the Company's sole expense, the Employee shall assist in obtaining patents or copyrights on all such inventions, programs, materials, designs, improvements and discoveries deemed patentable or subject to copyright by the Company and shall execute all documents and do all things necessary to obtain letters, patent, or vest the Company with full and exclusive title thereto, and protect the same against infringement by others. Employee will not be entitled to additional compensation for any inventions or designs made during the course of his/her employment.

2.    *Government Compliance.*

Employee will comply and will take all action necessary to enable the Company to comply with all state and federal government rules, regulations and terms and

conditions of contracts between agencies of the United States government or their contractors and the Company, which relate either to patent rights or to the safeguarding of information pertaining to the defense of the United States. Employee, at the time of signing this Agreement, has no right, title or interest in, or no right to assign (because it shall previously have been assigned) any copyrighted programs or materials, programs or materials subject to copyright, invention, design, improvement or discovery which pertains or relates to the Company's business

3.    *Trade Secrets.*

Due to the nature of the Company's business, maintaining confidentiality of information regarding the Company's operations, activities and plans is especially important. Employee has an affirmative obligation to protect the Company's information. The parties acknowledge and agree that trade secret and confidential and proprietary information are valuable assets of the Company. Solely by virtue of specialized employment with the Company, Employee will acquire knowledge of and gain access to trade secrets and confidential and proprietary information of the Company. Such trade secrets and confidential and proprietary information is defined as all items, materials, and information (whether or not reduced to writing and whether or not patentable or copyrightable) which belong to the Company, relate to the present or future business of the Company, are kept confidential or secret by the Company, or are not generally known in the industry in which the Company is engaged.

Trade secrets and confidential and proprietary information includes, without limitation, customer lists, personnel lists, fee schedules, training manuals and materials, devices, inventions, processes and compilations of information, records and specifications, computer database, programs and software, financial data and plans, profit margins and pricing policies and practices, sales and marketing techniques, history, and data forecasts, and personnel training techniques, materials and any Protected Health Information (PHI) that is covered by HIPAA (hereinafter collectively referred to as "Confidential Information"). The failure to designate particular information as confidential and/or proprietary and/or secret shall not preclude any later claim by the Company that such information is confidential and/or proprietary and/or secret. Employee agrees that he/she shall not disclose to any individual, corporation, firm or other entity, any Confidential Information, directly or indirectly, or in any way use, or cause, facilitate or allow any third party to use, Confidential Information in any way, either during the term of his/her employment or for one year thereafter, except as required in the course of his/her employment with the Company.

All Confidential Information provided to Employee during his/her employment is the exclusive property of the Company and/or its clients. No Confidential Information or copies, summaries or compilations of any kind will be removed from the Company's premises or the premises of the Company's customers under any circumstances whatsoever without prior written consent of the Company. Employee will return all Confidential Information, including copies, summaries or compilations of such information to the Company upon termination of employment or at any other time at the request of the Company.

4.    *Non-Solicitation.*

Employee agrees that he/she will not, during the term of his/her employment or for one year thereafter, do or commit any of the following acts:

a.    Induce, entice, hire or attempt to hire or employ any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, either directly or on behalf of an individual or other entity

who provides the same or similar services, processes, or products as the Company.

     b.      Induce, or attempt to induce any person or entity, whether an employee of the Company or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of the Company, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with the Company.

     c.      Induce, or attempt to induce, any customer, supplier, vendor or any other person to cease doing business with the Company.

     d.      Induce, or attempt to induce any individual to violate the provisions or prohibitions contained in the Agreement.

5.     *Non-Competition.*

     The services provided by Employee are of a special, unique and extraordinary nature. Employee shall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during his/her employment with the Company or any subsidiary or affiliate, or during the one-year period following termination, engage in or contribute his/her knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by the Company. The limitations and restrictions contained in this paragraph shall apply only to a) present and former clients of the Company, irrespective of where located, to or for whom the Employee, while employed by the Company, has directly or indirectly provided services or caused the Company to provide services within the twelve months prior to the date of his/her termination of employment, or b) prospective customers/clients of the Company, irrespective of where located, to whose potential business the Company has given specific development attention within the twelve months prior to the date of his/her termination of employment.

     Employee further agrees and acknowledges that if he/she is on an assignment with a Company client, he/she will not continue to perform that same or similar assignment on behalf of another entity for a period of one year after the date that Employee ceases to perform that assignment for the Company.

6.     *Remedy for Breach.*

     Employee acknowledges that any violation of this Agreement may result in immediate termination and dismissal and may subject employee to a claim by the Company for money damages for any and all losses sustained as a result of the unauthorized release of any Confidential Information or the actions of Employee, which may have violated any provision of this Agreement.

     Employee acknowledges and agrees that the Company's remedies at law may be inadequate and that the Company shall have the right to seek injunctive relief in addition to any other remedy available to it. If Employee breaches this Agreement or any of the covenants contained herein, the Company has the right to, and will seek, appropriate injunctive relief as well as any and all other remedies and damages, to compel the enforcement of the terms stated herein.

     It is agreed by the parties that in the event of an actual or threatened breach by Employee of any of the provisions in this Agreement, in addition to any other remedy provided for herein or at law, the Company shall have the right to notify Employee's then present or prospective employer of the terms of this Agreement (including but not limited to providing a copy of this Agreement) without in any manner being liable for such action

7. *Waiver.*

The failure of the Company to insist upon strict adherence to one or more of the covenants and restrictions contained herein, on one or more occasions, shall not be construed as a waiver, nor shall such course of action deprive the Company of the right thereafter to require strict compliance with the same.

8. *Construction.*

Employee acknowledges that the restrictions upon his/her employment and the geographical restrictions hereby imposed are fair and reasonable and are reasonably required for the protection of the Company. If any part of this Agreement is held unenforceable or invalid, the remaining parts thereof shall continue to be enforceable. If the provisions imposing geographic or time restrictions are deemed unenforceable by a court of competent jurisdiction, then such provisions for the purposes of this Agreement shall include the maximum geographic area or time period which a court of competent jurisdiction determines to be reasonable, valid and enforceable. To the extent that the court permits "blue-penciling," the parties to this Agreement intend that the court will take all action necessary to revise this Agreement so as to ensure its enforceability against Employee to the greatest extent consistent with law.

9. *Governing Law/Jurisdiction.*

This Agreement shall be subject to and governed by the internal laws of the State of New Jersey irrespective of the choice of law rules in the state of execution of this Agreement or performance of employment. Employee consents to the exercise of personal jurisdiction over him by the state and federal courts of New Jersey in the event of an actual or threatened breach of this Agreement by Employee.

10. *Length of Employment/At Will Employment.*

Nothing contained in this Agreement shall be construed as guaranteeing Employee employment for any particular duration or length of time. Employee's employment relationship with the Company is exclusively that of an at will employee and his/her employment may be terminated at any time, with or without cause.

11. *Assignment.*

This agreement may be assigned without the consent of Employee in connection with the sale, transfer or other assignment of all or substantially all of the capital stock or assets of, or the merger of, the Company, provided that the party acquiring such capital stock or assets or into which the Company merges assumes in writing the obligations of the Company hereunder and provided further that no such assignment shall release the Company from its obligations hereunder. Otherwise, any party may not assign the Agreement hereto without the prior written consent of all of the other parties.

12. *No Violation of Existing Agreements/Restrictions*

Employee represents to the Company that other than the agreement which is Attachment D to Employee's employment offer letter of even date (the "Offer Letter"), he/she is not subject to any form of non-competition restrictions or agreements with any former employers or other organizations or entities, which would be violated by his/her contemplated employment with the Company under the arrangements set forth in the Offer Letter. Employee agrees that he/she will not use or disclose to any current or future employee of the Company any proprietary or confidential information or trade secrets of any former employers or other organizations or entities that Employee may possess. Employee acknowledges his understanding that the use or disclosure of proprietary or

confidential information or trade secrets of other persons or entities is a ground for termination of employment with the Company.

13.    *Understanding of Agreement*

Employee acknowledges that he/she has read and understands all of the provisions of this Agreement and the accompanying offer letter.  Employee further acknowledges that he/she has had adequate time and opportunity to consult with his/her personal legal counsel or other advisors as Employee deemed necessary in order to come to a complete understanding of the provisions of this Agreement and enters into this Agreement voluntarily and on the basis of that understanding.

_____

Employee                                                    Dated: May 8  , 2006

_____

Human Resources                                       Dated: May 15  , 2006

**EXHIBIT 6**



# Kim Ayers (3ʳᵈ)

Division Director at Beacon Hill Technologies
Washington D.C. Metro Area

| | |
|---|---|
| **Current** | • **Division Director** at **Beacon Hill Technologies** |
| **Past** | • Recruiting Services at Booz Allen |
| **Education** | • Radford University |
| **Connections** | 😊 **8 connections** |
| **Industry** | Human Resources |
| **Public Profile** | http://www.linkedin.com/pub/2/45a/b64 |

> **How you're connected to Kim**
>
> **You**
> ⇓
> Pete Radloff, CIR
> ⇓
> Kim's connections
> ⇓
> (3ʳᵈ) **Kim Ayers**

## Experience

**Division Director**
**Beacon Hill Technologies**
(Privately Held; 51-200 employees; Staffing and Recruiting industry)
December 2006 – Present ( 8 months)

**Recruiting Services**
**Booz Allen**
(Human Resources industry)
May 2006 – September 2006 ( 5 months)

## Education

**Radford University**

## Contact Settings

**Interested In:**
• expertise requests
• reference requests
• getting back in touch
**Location:**
Projects taking place in Washington D.C. Metro Area, as well as via phone/email.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RCM Technologies, Inc., | * | |
| Plaintiff, | * | |
| v. | * | |
| Beacon Hill Staffing Group, LLC, *et al.,* | * | Case No. 1:07-cv-00670-JDB |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**TEMPORARY RESTRAINING ORDER**

The Court, having fully considered Plaintiff's Application For A Temporary Restrainging Order and the other papers on file in this action and having found that RCM will sustain immediate, irreparable, and substantial injury for which no adequate legal remedy exists unless a Temporary Restraing Order is issued, enters the following Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65:

1.      Defendants, Kimberly A. Ayers ("Ayers"), William Blackford ("Blackford"), and Scott Baillie ("Baillie"), are enjoined from breaching their Non-Disclosure/Non-Solicitation/Non-Competition Agreements ("Agreements") with RCM by:

    a.      Inducing, enticing, hiring, attempting to hire, or employing any person or entity, whether an employee of RCM or an independent contractor or a third party consultant or any other person or entity providing services to, for or on behalf of RCM, either directly or on behalf of an individual or other entity who provides the same or similar services, processes, or products as RCM;

b.       Inducing or attempting to induce any person or entity, whether an employee of RCM or an independent contractor or a third party consultant of any other person or entity of providing services to, for or on behalf of RCM, to leave the employ of or cease doing business with or cease providing services to or cease being otherwise affiliated with RCM;

c.       Inducing or attempting to induce any individual to violate the provisions or prohibitions contained in the Agreements executed by RCM, Ayers, Blackford, and Baillie; and

d.       Engaging in or contributing their knowledge to any work or activity that involves a product, process, apparatus, or service which is then competitive with, or similar to, a product, process, apparatus or service provided directly or indirectly by RCM.  That limitation and restriction shall apply only to: (1) present and former customers of RCM, irrespective of where located, to or for whom Ayers, Blackford, or Baillie, while employed by RCM, have directly or indirectly provided services or caused RCM to provide services within the twelve months prior to the date of his/her termination of employment: or (2) prospective customer/customers of RCM, irrespective of where located, to whose potential business RCM has given specific development attention within the twelve months prior to the date of his/her termination of employment.

2.       Defendant, Beacon Hill Staffing Group, Inc. ("Beacon Hill"), are enjoined from: (a) employing Ayers, Blackford, and Baillie in a manner which breaches their Agreements with RCM; and (b) interfering with RCM's contractual relations and prospective business advantage

2

601326.1
7/31/2007
30462/102329

with RCM's customers and prospective customers and individuals used to staff RCM's customers; and

      3.     Beacon Hill, Ayers, Blackford, and Baillie are enjoined from using and disclosing RCM's Trade Secrets and Confidential Information.

      Within 24 hours of the date of this order, RCM shall post a surety bond or cash deposit with the Clerk in the amount of $_____ pursuant to Federal Rule of Civil Procedure 65.1.

      The Temporary Restraining Order shall expire within 10 days of the date of this order unless the Court grants an extension of that period.

Date: _____, 2007         _____

                                         JUDGE

601326.1
7/31/2007
30462/102329