IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RCM Technologies, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  1:07-CV-00670 (JDB) |
| v. | ) | |
| | ) | |
| Beacon Hill Staffing Group, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Defendants, Beacon Hill Staffing Group, LLC ("Beacon Hill") and Kimberly A. Ayers

("Ayers")[1], by undersigned counsel, and pursuant Rule 65 of the Federal Rules of Civil

Procedure and Local Civil Rule 65.1, hereby submit the following in opposition to Plaintiff's

Application for Temporary Restraining Order and state as follows:

**I.     INTRODUCTION**

Plaintiff RCM Technologies, Inc.'s ("RCM") Application for Temporary Restraining

Order should be denied.  RCM filed its Application on July 31, 2007, *approximately eight (8)*

*months after Ms. Ayers resigned her position* and *more than three (3) months after filing its*

*original Complaint* against Beacon Hill and Ayers, as well as Baillie and Blackford.  This was

after Ms. Ayers was employed for just 73 days at RCM, and after taking a different position at

Beacon Hill.  Ms. Ayers did not receive any training or specialized training during her short

---

[1] Plaintiff's Application also seeks a temporary restraining order against William Blackford ("Blackford") and Scott Baillie ("Baillie").  However, Blackford and Baillie were not parties to this matter at the time of plaintiff's filing its Application, the Court did not grant plaintiff leave to amend its Complaint until August 2, 2007, and there is no evidence that Blackford or Baillie have been served to date.  Therefore, plaintiff's Application with respect to Blackford and Baillie must be considered an *ex parte* application.  Local Civil Rule 65.1 states in relevant part: "Except in an emergency, the Court will not consider an *ex parte* application for restraining order."  Plaintiff's Application is devoid of any facts which would establish an emergency necessitating a temporary restraining order against Blackford and Baillie, and should accordingly be denied.

tenure with RCM, and she did not take any materials or information with her to Beacon Hill when she resigned her position at RCM.  RCM did not seek any injunctive relief in its original Complaint, and has had nearly eight (8) months to prepare its Application for a Temporary Restraining Order and to come forward with compelling evidence showing irreparable injury or harm.  Notwithstanding, RCM's Application is completely devoid of any facts which would warrant injunctive relief in this case and should be denied.[2]

RCM unlawfully seeks to restrain business in direct violation of the strong public policy favoring open competition and marketplace mobility.  Enforcement of restrictive covenants against former employees is highly disfavored, and an exception to the general rule of law.  The following often-stated quotation establishes the bedrock legal principles that govern this case:

> The public have an interest in every person's carrying on his trade freely: so has the individual.  All interference with individual liberty of action in trading, and all restraints of trade themselves, if there is nothing more, are contrary to public policy, and therefore void.  That is the general rule.  But there are exceptions: restraints of trade and interference with individual liberty of action may be justified by the special circumstances of a particular case.  It is a sufficient justification, and indeed it is the only justification, if the restriction is reasonable; reasonable that is, in reference to the interests of the parties concerned and reasonable in reference to the interests of the public, so framed and so guarded as to afford adequate protection to the party whose favour it is imposed, while at the same time it is in no way injurious to the public.  That is, I think, the fair result of all of the authorities.

Nordenfeldt v. Maxim Nordenfeldt Guns & Ammunition Co., [1894] A.C. 535,565 (Lord Macnaughton).  RCM ignores and violates these fundamental tenets.

---

[2] Defendants herein respond only to plaintiff's request for a temporary restraining order and reserve the right to supplement their arguments and evidence at a later date should plaintiff move for a preliminary injunction.  In conjunction with the TRO filing, plaintiff does not seek any emergency relief from this Court.

2

With this backdrop, defendants Beacon Hill and Ayers oppose the motion of RCM for a temporary restraining order ("TRO"). RCM does not establish the elements necessary for granting preliminary injunctive relief under D.C. law.

Ms. Ayers left RCM on December 1, 2006, after just 73 days of employment with RCM. Despite the fact that Ms. Ayers has not worked at RCM for approximately eight (8) months, RCM now seeks to restrain Ms. Ayers and Beacon Hill Staffing from performing services to its customers and clients as they have for the past seven (7) months. RCM gives no good reason for its delay in seeking a TRO, establishes no new facts or circumstances during the last eight (8) months giving rise to the dilatory request and fails to meet every articulated standard for issuance of a TRO. RCM cannot use this Court to achieve an illegal restraint of trade. Ms. Ayers left RCM because she wanted to bring her skills and experience to a new employer, as the law permits and encourages. Contrary to the less than accurate allegations levied by RCM, Ms. Ayers took nothing with her when she left in December 2006, other than her desire, work ethic, and skill set, which was developed over nine (9) years of experience in the IT staffing industry. RCM is prohibited from restraining Ms. Ayers and Beacon Hill Staffing, which has no relationship with RCM, under the guise of protecting its business. RCM's requested relief should be denied.

## II.    PROCEDURAL HISTORY

Plaintiff filed the instant matter on April 12, 2007. The original Complaint asserts claims for breach of contract and tortious interference with contract against Beacon Hill and Ayers arising out of Ayers leaving her position with RCM *on December 1, 2006* and accepting employment with Beacon Hill. The Complaint alleges that Ayers began working for Beacon Hill in January, 2007. RCM alleges that Ayers entered into a Non-Disclosure/Non-Solicitation/Non-

3

Competition Agreement ("Agreement") which she breached when she resigned her position with RCM and accepted a position with Beacon Hill.

On July 26, 2007, more than three months after filing its original Complaint, RCM filed a Motion for Leave to File Amended Complaint seeking to add two additional former RCM employees, Scott Baillie ("Baillie") and William Blackford ("Blackford"), as defendants in this matter. Plaintiff claimed that it had obtained new information since filing its Complaint concerning Blackford and Baillie. However, the "new information" cited by RCM was known to RCM at the time of filing its original Complaint, and in fact, was included in its Complaint. RCM's April 12, 2007 Complaint alleged that Baillie and Blackford had signed contracts with identical terms as the Agreement signed by Ayers, that Baillie and Blackford were induced by Ayers and Beacon Hill to leave RCM, and that Baillie and Ayers are currently employed by Beacon Hill. See Complaint, ¶¶ 14-19. The April 12, 2007 Complaint further alleged that Beacon Hill and Ayers tortiously interfered with the Agreements between RCM and Baillie/Blackford by intentionally inducing and enticing Baillie and Blackford to breach the terms of their Agreements with RCM. See Complaint, ¶¶ 30-33. Nonetheless, RCM's original Complaint did not seek injunctive relief against Beacon Hill and Ayers.

RCM filed the instant Application for Temporary Restraining Order on July 31, 2007, approximately eight (8) months after Ayers resigned her position and more than three (3) months after filing its original Complaint against Beacon Hill and Ayers. RCM's Application for Temporary Restraining Order is clearly untimely at this late juncture. RCM states that it did not seek injunctive relief when filing its April 12, 2007 Complaint against Beacon Hill and Ayers because they had already hired Blackford and Baillie and nothing would "undo that fact". Pl.'s Mem., p. 16. Plaintiff claims it took more than three months to investigate the conduct which it

4

had alleged and set forth in great detail in its April 12, 2007 Complaint before moving for

injunctive relief. One would have thought that the allegations in the Complaint would have been

investigated prior to filing in April, 2007. RCM does not provide the new facts or developments

in the months, let alone days, immediately prior to filing its Application for Temporary

Restraining Order, nor does it provide any emergency which necessitates this Court granting

plaintiff injunctive relief more than approximately eight (8) months after Ayers resigned her

position and more than three (3) months after RCM filed its original Compliant  RCM's claim

that it will be irreparably harmed absent injunctive relief is completely undermined by its own

actions in this litigation. The Court should therefore deny plaintiff's Application.

**III.    STATEMENT OF FACTS**

    **A.    The Staffing Industry**

    There are two primary job functions within a staffing company involved in the IT

placement process. The first primary job function is the sales function, which is performed by an

individual typically called an account representative or sales executive. On the sales side of the

business, an account representative is responsible for contacting company customers or

prospective customers who are generally known in the industry to determine staffing needs and

to solicit business. A sales executive would obtain information identifying potential customers

from public sources, including but not limited to the following: (a) Company websites; (b)

Industry websites; (c) Trade journals; and (d) cold calls. Many companies post their job

openings on their websites in the hope of getting the broadest exposure to the hiring needs. The

account representative contacts the person within the company customer responsible for hiring in

reference to or to inquire about potential placement opportunities. The identity of the person

responsible for hiring is not confidential and is easily obtainable. If you call into a company and

ask to speak to someone regarding IT staffing, you get forwarded to the person responsible for the hiring. Company customers typically have more than one person responsible for hiring. If successful, the account representative receives from the company customer an order to fill a job opening, and a description of the required job qualifications. A company customer will typically request multiple staffing companies to assist in filling the same job opening. Exhibit 1, Ayers Aff., ¶ 12.

The second primary function is the recruiting function, which is performed by a recruiter. A recruiter is responsible for identifying an available candidate (also called a contractor or consultant) with the requisite skills to meet the job specifications of a specific job opening. A recruiter rarely, if ever, has contact with the company customer. A recruiter's primary job is to contact qualified candidates who may be available to fill an open position. Candidates post their resumes on internet job boards, such as Monster.com or Dice.com, in an attempt to get the broadest exposure to potential job opportunities. Once a recruiter identifies a qualified available candidate, the recruiter provides the information about the candidate to the account representative for transmittal to the hiring manager at the company customer. If the company customer informs the account representative that there is interest in conducting an interview of the candidate offered for the position, then the recruiter will notify the candidate. Exhibit 1, Ayers Aff., ¶ 13.

Essentially, the extent of involvement by a staffing agency in the placement process consists of matching a candidate with a job opening, before the opening is filled by another staffing company. Information about job openings quickly becomes stale and outdated. Openings typically fill quickly, and do not remain open for an extensive period of time. Exhibit 1, Ayers Aff., ¶ 14.

There was nothing special, unique or extraordinary about the services of RCM. The business of RCM, as well as Sapphire and other companies engaged in recruiting and placement of IT employees are similar. It is common for companies with relevant job openings to freely provide information about their job openings and the job requirements to any placement agency that requests the information. There are numerous IT staffing firms in the greater Washington, D.C. area which are all competing for the same job openings. Candidates as well as client companies have no loyalty to any one placement agency. The candidates are interested only in finding the most suitable job opening, and the client companies are interested only in identifying the best candidate. In fact, candidates and customers typically register with numerous agencies in order to get the best exposure. Exhibit 1, Ayers Aff., ¶ 15.

Furthermore, a primary source of potential job opportunities is through the websites of potential customers. Jared Hayes lists in his Declaration filed by RCM several companies that he has responsibility for servicing. A review of several of those companies' websites discloses the following:

(a)     Advanced Technology Systems lists 59 IT job opportunities. See Exhibit B to Ayers Aff.;

(b)     SRA list 312 IT job opportunities. See Exhibit C to Ayers Aff.;

(c)     Comptroller of the Currency lists 12 job opportunities in Washington, DC. See Exhibit D to Ayers Aff.;

(d)     Stanley Associates lists 11 IT job opportunities. See Exhibit E to Ayers Aff.;

The foregoing are only examples of what is available on the World Wide Web. Exhibit 1, Ayers Aff., ¶ 20.

**B.    Kimberly A. Ayers**

Ms. Ayers is a 32 year-old graduate of Radford College in Radford, Virginia where she received her bachelor's degree in psychology.  Affidavit of Kimberly A. Ayers, ¶ 2, attached hereto as Exhibit 1.  She has been working in the staffing industry since 1997 and it is the only career she has had since graduating from college.  Her first job in 1997 was at a company named Volt Services Group where she was employed as a recruiter.   In 1998, she went to work for a company now known as Sapphire Technologies ("Sapphire") as a recruiter for information technology ("IT") contractors to be placed with companies on a contract or temporary basis..  Exhibit 1, Ayers Aff., ¶ 3.

Sapphire is the IT staffing division of Vedior, N.A., a multinational staffing company.  For her first three years at Sapphire, Ms. Ayers worked at their Vienna, Virginia office as an IT recruiter.  In 2001, she switched from being a recruiter to sales, as an account manager.  As an account manager she was responsible for handling client companies.  In 2005, she was relocated to Sapphire's Parsippany, New Jersey office and was promoted to Sales Manager.  In July 2005, she relocated back to Sapphire's Vienna, Virginia office as a Sales Manager, a role Ms. Ayers had through May 2006 when she resigned.  From May 2006 through September 2006, Ms. Ayers worked as a contract corporate recruiter for Booz Allen Hamilton located in McLean, Virginia.  Exhibit 1, Ayers Aff., ¶ 3.

While she was employed by Sapphire, Mr. Craig Park, the Vice President responsible for managing the Bethesda, Maryland office of the Plaintiff, RCM Technologies, Inc. ("RCM") actively solicited Ms. Ayers accept a position with RCM.  RCM is a public corporation with offices throughout the world.   According to their most recent filing with the Securities and Exchange Commission ("SEC") they have over $100 Million in assets.  Ms. Ayers knew Mr.

Park from her employment at Sapphire where he was a branch manager to whom Ms. Ayers reported during a portion of her years at Sapphire. In furtherance of his attempt to hire Ms. Ayers away from Sapphire, Mr. Park requested that Ms. Ayers speak with Michael Smith, attorney for the plaintiff in the case before this Court, with regard to her non-compete agreement with Sapphire. Mr. Park told Ms. Ayers that Mr. Smith represented him in a dispute Mr. Park had with Sapphire. Exhibit 1, Ayers Aff., ¶ 4.

When Mr. Park left Sapphire to go to work at RCM he did so seemingly in potential violation of his employment agreement with Sapphire which contained post employment restrictions similar to those which RCM seeks to enforce against me. Mr. Park and RCM were sued by Sapphire for breaches of his agreement, Mr. Park was sued for breach of his fiduciary obligations, and RCM was sued for tortious interference in a case which was removed to the United States District Court for the District of Maryland (Southern Division) entitled Sapphire Technologies, LLC v. Craig Park and RCM Technologies, Inc., Civil Action No. DKC 04-CV-3099. Exhibit 1, Ayers Aff., ¶ 5.

While Ms. Ayers was working at Booz Allen, Mr. Park approached her again about joining RCM. The primary reason Ms. Ayers was solicited by Mr. Park and RCM was her many years, nine (9) years at the time, of experience in the IT staffing business. Exhibit 1, Ayers Aff., ¶ 6.

Ms. Ayers began work at RCM's Bethesda's office in mid-September, 2006.[3] Exhibit 1, Ayers Aff., ¶ 6. Although her last job function at Sapphire was in sales, Mr. Park suggested that Ms. Ayers switch to a recruiting position as, according to Mr. Park, Sapphire would have no case against Ms. Ayers pursuant to her employment agreement if she switched roles from sales to

---

[3] Ms. Ayers never worked in Rockville, MD as alleged in the Verified Complaint. Exhibit 1, Ayers Aff., ¶ 6.

recruiting. Mr. Park told Ms. Ayers not to worry about any agreement she had with Sapphire. Exhibit 1, Ayers Aff., ¶ 7.

Ms. Ayers' pay at RCM was a base of $50,000 plus commissions for successful placements. When she was hired by Mr. Park, Ms. Ayers was told that RCM had two senior level sales people that would bring in job orders for her to attempt to fill as a recruiter. In fact, the sales staff was junior and not experienced. Without a proficient sales staff bringing in job orders, it was difficult for Ms. Ayers to place candidates whom she had recruited. This had a substantial effect on her ability to earn a decent income. Exhibit 1, Ayers Aff., ¶ 8.

As there did not appear to be a future at RCM for her, Ms. Ayers resigned on December 1, 2006, 73 days after she commenced her employment with RCM. She was employed by RCM for approximately two percent (2%) of the time she has been employed in the staffing business. Exhibit 1, Ayers Aff., ¶ 9. Moreover, Ms. Ayers received no training while employed at RCM, nor was any training generally available. By contrast, Ms. Ayers came to work for RCM with approximately nine (9) years of prior experience in the staffing industry. In fact, Ms. Ayers had more experience in the staffing business than almost all of the employees in RCM's Bethesda office.[4] Exhibit 1, Ayers Aff., ¶ 10.

Ms. Ayers' responsibilities at RCM were solely as a recruiter, to locate available candidates for employment. Her written job description with RCM did not include any interactions with customers. By contrast, Ms. Ayers' employment at Beacon Hill is, and always has been, as a sales executive, which entails no recruiting of candidates. Exhibit 1, Ayers Aff., ¶ 16. Ms. Ayers had very few dealings with any company clients of RCM during her mere 73 days

---

[4] To the extent relevant to plaintiff's Application against Beacon Hill, both Scott Baillie and William Blackford also had prior staffing experience before their employment with RCM, both of them having been employed by Manpower Professional Services as technical recruiters for their technology division. Exhibit 1, Ayers Aff., ¶ 11.

of employment with RCM.  She did have contact with Fannie Mae; however, that contact was with her brother who was employed with them.  Exhibit 1, Ayers Aff., ¶ 19.  Contrary to the Affidavit of Craig Park, Ms. Ayers did not develop a close relationship with any customer (other than her brother).  Exhibit 1, Ayers Aff., ¶ 21.

When Ms. Ayers left her employment at RCM, she took only her personal belongings. She did not take any information or other property belonging to RCM when she left.  Ms. Ayers did not take, nor does she have in her possession, custody or control, any customer lists, candidate lists, personnel lists, fee schedules, training manuals or materials, compilations of information, or other documents that belong to RCM, with the exception of the documents that RCM has provided to her attorneys in this case or has filed with the Court in this action and consequently have made available to Ms. Ayers as well as to the general public.  Exhibit 1, Ayers Aff., ¶ 17.  Furthermore, in her position with Beacon Hill, Ms. Ayers has had no contact with any candidate whom she placed or had any dealings with while employed at RCM.  She has not solicited any companies which she made placements at while employed by RCM.  All the companies Ms. Ayers has dealt with are generally known in the industry or available through public sources.  Exhibit 1, Ayers Aff., ¶ 18.  Accordingly, Ms. Ayers is not aware of any trade secrets or confidential information which belong to RCM, nor does any such information exist.[5] Exhibit 1, Ayers Aff., ¶ 23.

Ms. Ayers will unquestionably suffer substantial harm if she is not permitted to continue her current employment with Beacon Hill.  Her employment with Beacon Hill is her only source of income, and would prevent her from earning a livelihood.  Further, outside of her retirement

---

[5] RCM claims that the identities of its customers are confidential, yet not only have they disclosed their identity in the public record of this case, in addition they publish on their website the identity of many of their purported customers.  See Exhibit 1, Ayers Aff., ¶ 19 and Exhibit A attached thereto.

11

funds, Ms. Ayers has little in the way of savings upon which she could rely if unable to work in her current job. Exhibit 1, Ayers Aff., ¶ 24.

## IV.    ARGUMENT

### A.    Legal Standard for Obtaining a Temporary Restraining Order

Under D.C. law, courts consider the same factors in ruling on a motion for a temporary restraining order and a motion for a preliminary injunction. Morgan Stanley DW Inc. v. Rothe, 150 F. Supp. 2d 67, 72 (D.D.C. 2001) (citing Vencor Nursing Ctrs., L.P. v. Shalala, 63 F. Supp. 2d 1, 7 n.5 (D.D.C. 1999); National Football League Properties, Inc. v. Coniglio, 554 F. Supp. 1224, 1226 (D.D.C. 1983)). Temporary restraining orders are extraordinary forms of judicial relief which courts should grant sparingly. See e.g., Morgan Stanley DW, 150 F. Supp. 2d at 73 (citing Mylan Pharms., Inc. v. Thompson, 139 F. Supp. 2d 1, 17 (D.D.C. 2001); Moore v. Summers, 113 F. Supp. 2d 5, 17 (D.D.C. 2000)). Although the court has discretion to issue or deny preliminary injunctive relief, it is not a form of relief granted lightly. Morgan Stanley DW, 150 F. Supp. 2d at 73 (citing Ambach v. Bell, 686 F.2d 974, 979 (D.C. Cir. 1982)). In making an application for a temporary restraining order, the movant bears the heavy burden of establishing that it is entitled to injunctive relief. The Supreme Court has said, "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995).

A court may issue a temporary restraining order only when the movant demonstrates that:

> (1) there is a substantial likelihood plaintiff will succeed on the
> merits; (2) plaintiff will be irreparably injured if an injunction is

not granted; (3) an injunction will not substantially injure the other party; and (4) the public interest will be furthered by an injunction.

Morgan Stanley DW, 150 F. Supp. 2d at 73 (citing Davenport v. International Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir. 1999); World Duty Free Americas, Inc. v. Summers, 94 F. Supp. 2d 61, 64 (D.D.C. 2000). No one factor is necessarily dispositive in determining whether preliminary injunctive relief is warranted, nor are the four elements considered in isolation from one another. See CityFed Fin. Corp. v. Office of Thrift Supervision, 313 U.S. App. D.C. 178, 58 F.3d 738, 746 (D.C. Cir. 1995). Rather, the factors "interrelate on a sliding scale and must be balanced against each other." Davenport, 166 F.3d at 361 (citations omitted); see also WMATA v. Holiday Tours, Inc., 559 F.2d 841, 842-43 (D.C. Cir. 1977) (the court "examines each requirement in light of the others to determine whether an injunction would be proper").

If the plaintiff makes a particularly weak showing on one factor, satisfaction of the remaining factors may not be enough to warrant injunctive relief. See e.g, Morgan Stanley DW, 150 F. Supp. 2d at 73 (citing Taylor v. RTC, 56 F.3d 1497, 1506 (D.C. Cir.)). It is particularly important for the plaintiff to demonstrate a substantial likelihood of success on the merits. Cf. Benten v. Kessler, 505 U.S. 1084, 1085 (1992) (per curiam); University of Texas v. Camenisch, 451 U.S. 390, 394 (1981); Doran v. Salem Inn, Inc., 422 U.S. 922, 934 (1975). If the plaintiff fails to make this showing, "it would take a very strong showing with respect to the other preliminary injunction factors to turn the tide in plaintiff's favor." Davenport, 166 F.3d at 367; see also, National Pharm. Alliance v. Henney, 47 F. Supp. 2d 37, 41 (D.D.C. 1999) ("Here, because the likelihood of success is slim, plaintiffs would have to make a very substantial showing of severe irreparable injury in order to prevail on their motion."). Without a "substantial indication" of likely success on the merits, "there would be no justification for the

court's intrusion into the ordinary processes of administration and judicial review." American Bankers Ass'n v. National Credit Union Admin., 38 F. Supp. 2d 114, 141 (D.D.C. 1999) (quoting Holiday Tours, 559 F.2d at 843).

Any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. See National Treasury Employees Union v. Yeutter, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

Plaintiff's Application is devoid of any facts which support the granting of a TRO in this matter. Plaintiff has failed to establish a substantial likelihood plaintiff will succeed on the merits of its claim. Plaintiff has failed to show that Ayers breached her Agreement with RCM, that Beacon Hill and Ayers tortiously interfered with any RCM Agreement, and that RCM's customer lists and contact information are trade secrets or confidential information which require judicial protection.

More importantly, plaintiff has failed to show that it will be irreparably injured if a TRO is not granted. RCM has sat idly for nearly eight (8) months since Ayers resigned her position, and more than three (3) months since filing its Application for Temporary Restraining Order. Any argument asserted by RCM at this late juncture that it will be irreparably harmed if a TRO is not granted is disingenuous and completely undermined by RCM's failure to assert any such argument in a timely manner.[6] Moreover, RCM points to no developments or change in circumstance in the days immediately prior to filing its Application which would necessitate injunctive relief months after the fact. A TRO is tantamount to emergency relief, yet RCM

---

[6] RCM suggests that its delay in filing its Application is somehow due to its inability to serve Ms. Ayers due to her evasion of service. See Pl.'s App. at p. 7; Declaration of Scott Kucik attached thereto. Plaintiff's argument is completely without merit. Ms. Ayers did not do anything improper to avoid service in this case. Moreover, plaintiff bears the burden of effecting proper service, and RCM's statement that Ms. Ayers was "became angry" at the time of service are completely irrelevant to plaintiff's Application. More importantly, plaintiff never sought injunctive relief in the Complaint which is a document that is completely independent of service. Accordingly, the Court should completely disregard the Affidavit of Scott Kucik and any argument related thereto.

nowhere in its Application states that emergency relief is necessary in this case. Therefore, RCM simply cannot show that it will be irreparably injured if a TRO is not granted.

RCM also fails to show that an injunction will not substantially injure Beacon Hill or Ayers. Plaintiff's Application seeks to enjoin Ayers from earning a livelihood. Ms. Ayers' only source of income is her work for Beacon Hill and RCM seeks to preclude her from performing her job by requesting injunctive relief which is overly broad and unreasonable. In addition, Beacon Hill will be substantially harmed if it is precluded from conducting business with clients that it has known prior to hiring Ayers, as well as developing additional sources of business which are known throughout the industry.

Finally, the public interest will not be furthered by the granting of a TRO in this matter. Instead, the granting of a TRO in this case would be contrary to the public interest which disfavors unreasonable restraints on trade.

**B.    Application of the Legal Standard for Obtaining a Temporary Restraining Order**

**1.    Plaintiff has failed to Establish a Likelihood of Success on the Merits.**

RCM has failed to establish a substantial likelihood it will succeed on the merits of its claim. The terms of the Agreement between Ayers and RCM are unreasonable as a matter of law. Plaintiff has also failed to show that Ayers breached her Agreement with RCM, that Beacon Hill and Ayers tortiously interfered with any RCM Agreement, and that RCM's customer lists and contact information are trade secrets or confidential information which require judicial protection. The Court should therefore deny RCM's Application.

a.    **The Restrictive Covenants in the Agreement between Ayers and RCM are Unreasonable**

The Agreement between RCM and Ayers includes a choice of law provision which states in relevant part: "This Agreement shall be subject to and governed by the internal laws of the State of New Jersey irrespective of the choice of law rules in the state of execution of this Agreement or performance of employment." See Exhibit 3 to Pl.'s Mtn. For purposes of responding to plaintiff's Application only, defendants maintain that plaintiff's claims must fail pursuant to New Jersey law. Defendants reserve the right to argue that the Agreement is subject to an alternative source of law, if appropriate, at a later point in this litigation.

New Jersey courts generally disfavor post-employment restrictive covenants. As the New Jersey Supreme Court has stated:

> [N]o principle of law is more generally recognized than that a contract which precludes a person from the right to employ his talents, his industry or his capital in any useful undertaking, is void. Whether the restraint be general or partial * * * the law starts out with the presumption that a contract in restraint of trade is void, and it is only by showing that the contract is good that this presumption will be rebutted.

Karlin v. Weinberg, 390 A.2d 1161, 1165 (N. J. 1978) (quoting Mandeville v. Harman, 42 N.J. Eq. 185, 189-190, 1886 N.J. Ch. LEXIS 30 (N.J. Ch. Ct. 1889). Accordingly, New Jersey courts will only find post-employment restrictive covenants enforceable in a narrow set of circumstances. A post-employment restrictive covenant will be found to be reasonable only when it (1) protects the "legitimate" interests of the employer, (2) imposes no undue hardship on the employee, and (3) is not injurious to the public. Karlin, 390 A.2d at 1166; Solari Indus. v. Malady, 264 A.2d 53, 56 (N.J. 1970). Courts will consider whether a post-employment restrictive covenant not to compete is "reasonable under the circumstances" in determining

16

whether the restrictive covenant is enforceable.  Platinum Management v. Dahms, 666 A.2d

1028, (N.J. Super. Ct. Law Div. 1995) (citing Karlin, 390 A.2d 1161; Solari, 264 A.2d 53).  It is

the employer's burden to establish that the restrictive covenant is reasonable under the

circumstances.  See e.g., Ingersoll-Rand Co. v. Ciavatta, 542 A.2d 879 (N.J. 1988).

  "[I]n cases where the employer's interests do not rise to the level of a proprietary interest

deserving of judicial protection, a court will conclude that a restrictive agreement merely stifles

competition and therefore is unenforceable." Ingersoll-Rand, 542 A.2d at 892 (citations

omitted).  It is well settled that, "matters of general knowledge within the industry may not be

classified as trade secrets or confidential information entitled to protection nor will routine or

trivial differences in practices and methods suffice to support restraint of the employee's

competition." Whitmyer Bros., Inc. v. Doyle, 274 A.2d 577, 581 (N.J. 1971) (citations omitted).

Moreover, an employer may not prevent an employee from using the general skills in an industry

which have been built up over the employee's tenure with the employer.  Coskey's Television &

Radio Sales & Service, Inc. v. Foti, 602 A.2d 789, 794 (N. J. App.Div. 1992) (citing Whitmyer

Bros., Inc. v. Doyle, supra 58 N.J. at 33-34, 37, 274 A.2d at 581.  Nor does an employer have an

absolute protectable interest in preventing a former employee, who brought her relationship

within the industry to her employment, from using those industry contacts.  See e.g., Coskey's,

602 A.2d 796 (employer may have protectable interest in preventing former employee from

using industry contacts only if such contacts interfere with 1) contracts former employee

negotiated on behalf of former employer, 2) current outstanding bids of the former employer in

which the former employee participated, and 3) the former employer's relationship with

individuals was instrumental in providing the contact for the former employee.).

The restrictive covenants in the Agreement between Ayers and RCM, as well as the injunctive relief sought by RCM, are unreasonable given the circumstances of this case. Plaintiff argues that Ayers and Beacon Hill have, and will continue to unjustly benefit from the experience and training that Ayers received while employed at RCM. However, Ms. Ayers has been working in the staffing industry since 1997 and it is the only career she has had since graduating from college. Prior to working for RCM, she worked for the IT staffing division of Sapphire, a multinational staffing company, for nearly nine (9) years where she gained substantial industry experience, particularly in area of sales. Ms. Ayers brought substantial experience and knowledge of the IT staffing industry in general, and the Metro-D.C. market specifically, to her position at RCM. In fact, at the time she accepted a position with RCM, Ms. Ayers had more experience in the staffing business than almost all of the employees in RCM's Bethesda office. Clearly, Ms. Ayers was a veteran of the IT staffing industry with a wealth of experience at the time she accepted a position with RCM.

By contrast, Ms. Ayers resigned on December 1, 2006, *only 73 days after she commenced her employment with RCM.* She was employed by RCM for approximately two percent (2%) of the time she has been employed in the IT staffing business. Ms. Ayers received no training while employed at RCM, nor was any training generally available. RCM's contention that Ayers and Beacon Hill benefited, and will continue to benefit from Ayers' training and experience at RCM is wholly without merit. And RCM simply cannot preclude Ayers from using her experience and contacts she has developed in more than nine years of working in the IT staffing industry. See Coskey's, 602 A.2d 794, 796. Clearly, RCM's attempt to limit Ayers from using the knowledge and contacts she developed prior to joining RCM is unreasonable, and the Court should therefore deny plaintiff's request for injunctive relief.

18

### c. Ayers did not Violate the Terms of her Agreement with RCM.

Although her prior position at Sapphire was in sales, RCM placed Ayers in a recruiting position. Ms. Ayers' responsibilities at RCM were solely as a recruiter, to locate available candidates for employment. By contrast, Ms. Ayers' employment at Beacon Hill is, and always has been, as a sales executive, which entails no recruiting of candidates. Simply stated, Ms. Ayers holds a different position with Beacon Hill than she did with RCM which is significant when considering plaintiff's Application. Ms. Ayers' current sales position with Beacon Hill requires a different set of skills and industry knowledge that used by Ms. Ayers as a recruiter for RCM. As a recruiter, she was primarily responsible for dealing with candidates for job placements. In her sales position with Beacon Hill, Ms. Ayers deals almost exclusively with clients in need of staffing. In her current position with Beacon Hill, she primarily draws upon her sales experience and training which *she received prior to joining RCM*. Therefore, Ms. Ayers has not violated the terms of her Agreement with RCM in performing her duties as a sales executive with Beacon Hill because she is not performing the same duties.

Furthermore, when Ms. Ayers left Sapphire to accept her position with RCM, Mr. Park and counsel for RCM advised Ms. Ayers that by moving her from a sales position, which she previously held with Sapphire, to a position in RCM's recruiting department, Sapphire would have no legal cause of action against Ms. Ayers for violation of her non-compete Agreement with Sapphire. RCM and its attorney now argue that Ms. Ayers is in violation of her Agreement with RCM, notwithstanding that she no longer holds a position in recruiting, but is now a sales executive with Beacon Hill. RCM and its attorney cannot have it both ways. If Ayers was not in violation of her non-compete agreement with Sapphire when she moved from a sales position

19

with Sapphire to a recruiting position with RCM, she cannot be in violation of her Agreement

with RCM now that she is working once again in sales for Beacon Hill.

RCM also claims that Ayers breached the terms of her Agreement by soliciting RCM

clients who she serviced and/or solicited as RCM employees, and individuals who she knew

RCM has used to staff its clients.  RCM further contends that Ayers, in conjunction with

Blackford and Baillie, made these solicitations immediately after their "en masse resignation"

left RCM vulnerable.  Pl.'s App. at 6.  Plaintiff's contentions are untrue.  Ms. Ayers had very

few dealings with any company clients of RCM during her mere 73 days of employment with

RCM.  One of the lone contacts she had with a client during her short tenure with RCM was with

Fannie Mae, and her point of contact was her brother who was employed by Fannie Mae at the

time.  Moreover, in her position with Beacon Hill, Ms. Ayers not had any contact with any

candidate whom she placed while employed at RCM.  All the companies Ms. Ayers has dealt

with are generally known in the industry or available through public sources and, therefore, such

information does not rise to a level of proprietary interest deserving judicial protection.  See

Whitmyer, 274 A.2d at 581.

Finally, Ms. Ayers did not breach her Agreement with RCM by taking any confidential

documents or information with her when she left RCM; she took only her personal belongings.

In fact, Ms. Ayers did not take any information or other property belonging to RCM when she

left.  She did not take, nor does she have in her possession, custody or control, any customer

lists, candidate lists, personnel lists, fee schedules, training manuals or materials, compilations of

information, or other documents that belong to RCM, with the exception of the documents that

RCM has provided to her attorneys in this case or has filed with the Court in this action and

consequently have made available to her as well as the general public.

20

**d.    Beacon Hill did not Tortiously Interfere with RCM's Agreement with Ayers.**

Under D.C. law, the elements of the tort of tortious interference with contractual relations are: "(1) the existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach." Sorrells v. Garfinckel's et al., 565 A.2d 285, 289 (D.C. App. 1989) (quoting Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan, 374 A.2d 284, 288 (D.C. App. 1977)).

As shown above, Ayers did not breach her Agreement with RCM.  Assuming, *arguendo*, that Ayers did breach her Agreement with RCM, plaintiff's Application fails to provide any facts which would support its claim that the breach was intentionally procured by Beacon Hill. Rather, plaintiff merely argues in its Application that Beacon Hill tortiously interfered with RCM's contract with Ayers (as well as Blackford and Baillie) by continuing to employ Ayers after it learned of the instant litigation.  RCM's conclusory statement does not serve as a fact which would support a finding of tortious interference against Beacon Hill.

RCM relies upon the decision in Platinum Management, Inc. v. Dahms, 666 A.2d 1028, 1035 and 1041 (N.J. Law Div. 1995) as support for its contention that Beacon Hill has tortiously interfered with its Agreement with Ayers.  However, the facts of Platinum Management are easily distinguishable from those in the case at bar.  In Platinum Management, there was evidence of actual animosity between the former and subsequent employers of key personnel involved in that case arising from prior litigation between the two companies.  The defendant employer in that case met with the key personnel of the plaintiff employer prior to their resignations to discuss how the employees might bring accounts from their former employer with them to the defendant employer.  Id. at 1034-1035.  Moreover, the defendant employer

21

intentionally sought to hire its competitor's employees at a time which would injure the plaintiff. Id. at 1044. Although the court considered the new employer's failure to inquire as to whether the employees had non-compete agreements with their former employer willful blindness, the court found the defendant employer's actions to constitute actual malice. Id.

The facts in the case before this Court bear little resemblance to the facts in Platinum Management. There is no evidence that Beacon Hill met with Ayers prior to her resignation to discuss stealing RCM's customers or accounts; Ayers did not accept employment with Beacon Hill until more than a month after resigning her position with RCM; there is no evidence of any longstanding animosity between Beacon Hill and RCM; and there are no facts which would suggest that Beacon Hill hired Ayers to intentionally injure RCM. Most importantly, RCM has made no showing of any actual damages arising out of Ayers departure from RCM and subsequent hire by Beacon Hill. Cf. Platinum Management, 666 A.2d at 1044 ("The actions of defendants were clearly tortious. They proximately caused [plaintiff] damage and loss. As a direct result thereof, [plaintiff] lost business from its existing customers that was diverted to [defendant employer].").

Finally, assuming for purposes of the instant Application only that RCM has provided evidence of tortious interference by Beacon Hill and Ayers, plaintiff has not made a satisfactory showing warranting the grant of injunctive relief. There lies an adequate remedy at law for plaintiff's claim of tortious interference, a fact recognized by RCM when it filed its original complaint which sought monetary damages only, not injunctive relief.

Beacon Hill did not tortiously interfere with the Agreement between RCM and Ayers. First, Ayers did not breach her Agreement with RCM. Secondly, there is no evidence that Beacon Hill induced Ayers to breach her Agreement. Thirdly, there lies an adequate remedy at

law for any claim of tortious interference alleged by plaintiff in this matter. Finally, RCM has

not made any showing of damages arising from the alleged breach. Plaintiff's request for

injunctive relief should be denied.

> **e.    RCM's Customer Lists and Contact Information are not Trade Secrets or Confidential Information which Require Judicial Protection.**

RCM claims that its customer lists, business plans and other internal "confidential

information" are trade secrets as defined by the District of Columbia Trade Secrets Act (D.C.

Code § 36-401(4)). See Amended Complaint, ¶ 54. The District of Columbia Trade Secrets Act

states in relevant part:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (A) Derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and
> >
> > (B) Is the subject of reasonable efforts to maintain its secrecy.

D.C. Code § 36-401.

RCM's alleged "confidential information" is not a trade secret within the definition of the

District of Columbia Trade Secrets Act. The information which RCM claims is confidential is

readily obtainable from its customer's websites. In addition, RCM has made public filings with

the Court in this case which contain much of the information which it considers to be

confidential and proprietary. This information is readily ascertainable by proper means and

cannot be said to be the subject of reasonable efforts to maintain its secrecy. RCM, itself, by

filing much of what it considers to be confidential or proprietary information, has placed such

information in the public domain. For these reasons, the information which RCM seeks to protect does not qualify as trade secrets under D.C. law.

RCM further relies upon the decision in <u>Platinum Management</u> to argue that its confidential information does not need to rise to the level of trade secrets in order to warrant judicial protection. <u>See Platinum Management,</u> 666 A.2d at 1036-1038. However, the plaintiff in <u>Platinum Management</u> presented evidence that defendant employee, as vice president of sales, had access to highly sensitive information such as pricing policy and sales strategy, and assisted in new product development. <u>Id</u>. at 1038 ("The key to determining the misuse of the information is the relationship of the parties at the time of disclosure, and its intended use.") (citations omitted). Ms. Ayers was not privy to such information at RCM and did not take any such information with her when she left. Indeed, RCM has not come forward with any evidence or belief to the contrary. Moreover, one of the defendants in <u>Platinum Management</u> admitted to using plaintiff's confidential information in discussing accounts with his new employer. Beacon Hill and Ayers have not engaged in any such improper activity in this case.

RCM has failed to establish that its "confidential information" constitutes trade secrets under D.C. law, that the information is actually confidential, and that plaintiff is entitled to judicial protection of information which is widely available in the public domain. RCM's request for injunctive relief should therefore be denied.

### 2. Plaintiff cannot show Irreparable Harm if the TRO is not Granted.

The D.C. Circuit Court has set a high standard for irreparable injury. <u>See Fanning v. High Mt. Inspection Servs.,</u> 2007 U.S. Dist. LEXIS 53463, *5 (D.D.C. 2007) (citing <u>Chaplaincy of Full Gospel Churches v. England</u>, 454 F.3d 290, 297 (D.C. Cir. 2006)). The "injury 'must be both certain and great; it must be actual and not theoretical.' The moving party must show '[t]he

24

injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" <u>Chaplaincy of Full Gospel Churches</u>, 454 F.3d at 297. (quoting <u>Wisc. Gas Co. v. FERC</u>, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). In addition, the injury must be beyond remediation. <u>Fanning</u>, 2007 U.S. Dist. LEXIS 53463 at *6. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of an injunction are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." <u>Id</u>. (quoting <u>Chaplaincy of Full Gospel Churches</u>, 454 F.3d at 297-98 (internal quotations and citations omitted)).

RCM's own inaction in this case is evidence that it will not suffer irreparable harm if a temporary restraining order is not granted. RCM filed its Application on July 31, 2007, *approximately eight (8) months after Ms. Ayers resigned her position* and *more than three (3) months after filing its original Complaint*. Plaintiff has failed to offer a reasonable explanation for its failure to seek injunctive relief in a timely manner. Moreover, RCM provides no recent factual developments in the days immediately prior to filing its Application which would suddenly require a change from the status quo. Nor does RCM state that any impending actions by Beacon Hill or Ayers will cause it irreparable harm. Instead, RCM merely concludes that Ayers' employment with Beacon Hill, a relationship which has been in place for more than seven (7) months, will now cause plaintiff irreparable harm. RCM's argument is without merit.

RCM primarily relies upon the decision in <u>Morgan Stanley DW Inc. v. Rothe</u>, 150 F. Supp. 2d 67 (D.D.C. 2001) in arguing that it will be irreparably harmed. Once again, the facts in <u>Morgan Stanley</u> are clearly distinguishable from the facts in the case before this Court. In

Morgan Stanley, the defendant resigned his position on May 11, 2001. The plaintiff promptly filed a verified complaint and motion for temporary restraining order and preliminary injunction five days later on May 16, 2001. Id. at 68-69. The defendant in that case began working for the plaintiff as an intern at the age of 26, was promoted to the position of sales assistant, obtained his security licenses and registrations while employed by plaintiff, and participated in plaintiff's financial advisor training program. Id. at 69. After nearly four (4) years of employment by plaintiff, defendant resigned his position. Plaintiff alleged that defendant removed confidential financial account information from plaintiff's investors upon his resignation, that he disclosed this information to his subsequent employer, and that he used this information to solicit plaintiff's customers. Id. at 69.

RCM moved for injunctive relief nearly eight (8) months after Ms. Ayers left RCM, and more than three (3) months after filing its original Complaint. Based upon these facts alone, RCM has a difficult argument and substantial burden to overcome in convincing the Court that it will suffer irreparable harm in a similar manner as did the plaintiff in Morgan Stanley. Similarly, Ms. Ayers worked for RCM for a *mere 73 days* and received no training during that time, compared to the plaintiff in Morgan Stanley who worked for the defendant for *more than four (4) years* and participated in plaintiff's financial advisor training program. RCM suggests that its customers may be confused if they receive a call from Ayers acting upon Beacon Hill's behalf. Notwithstanding the fact that Ms. Ayers has not solicited any customer whom she had contact with while at RCM, if there would be any confusion regarding whom Ms. Ayers worked for, it would likely be Sapphire, a company she worked for in sales as an account manager and sales manager for the majority of the time. RCM cannot credibly claim that customers with whom

Ms. Ayers did not have contact would associate her with a company whom she worked for only 73 days after over nine years in the industry.

In addition, Ms. Ayers took only her personal belongings when she left RCM unlike the defendant in <u>Morgan Stanley</u>.  There is no supportable allegation otherwise.  She did not take any information belonging to RCM such as customer lists, candidate lists, personnel lists, fee schedules, training manuals or materials, compilations of information, special data, computer programs, or other documents.  RCM argues that the information available to Ayers and Beacon Hill is similar to the information improperly taken by the defendant in <u>Morgan Stanley</u>.  However, the alleged confidential information in the two cases is of a completely different nature.  In the case before this Court, RCM claims that its information is confidential despite the fact that the very same information is readily obtainable from the internet and its customer's websites.  In addition, RCM has filed publicly with the Court in this case much of the information which it considers to be confidential and proprietary without first requesting a protective order or filing its exhibits under seal.  In essence, RCM is seeking to protect information which is widely available in the public domain.

The confidential information in Morgan Stanley was of a completely different nature.  As the court in that case observed:

> The plaintiff and other financial-services firms do not make cars or sell food.  Their business involves collecting extremely private and sensitive data about their clients and then providing them with the best possible financial advice and services based on that information.  Although a major reason that firms have employees sign non-compete agreements is to protect their business interests, another objective is surely to protect their clients' privacy. Specifically, the Agreement seeks to keep the names, personal contact information, and perhaps most importantly, the personal financial information of the plaintiff's clients confidential by ensuring that if an employee goes from Morgan Stanley to another

27

> company, the other company will not suddenly have access to the
> clients' personal financial data without the clients' permission.  If
> clients begin to feel that their personal information is not safe with
> the plaintiff, this development might well lead to a loss of trust and
> goodwill.

Morgan Stanley, 150 F. Supp. 2d 67 at 77-78.  RCM cannot contend that its clients' are of the

same confidential, personal nature as was the information in Morgan Stanly.  As shown above,

the information at issue in the present case is made available by clients on their very own

websites.

    For the foregoing reasons, RCM has failed to show that it will be irreparably injured if a

TRO is not granted.  Therefore, the Court should deny plaintiff's request for a temporary

restraining order or any other injunctive relief in this case.

        **3.**        **A TRO or Injunctive Relief would Substantially Injure Defendants.**

    The balance of the equities favors the denial of RCM's Application for a Temporary

Restraining Order.  RCM is a public corporation with offices throughout the world and over

$100 million in assets.  Plaintiff's obvious agenda is to attempt to use its massive resources, as

well as the judicial process, to stifle a competitor.   However, Ms. Ayers will suffer substantial

harm if she is not permitted to continue her current employment with Beacon Hill.  Her

employment with Beacon Hill is her only source of income, and would prevent her from earning

a livelihood.  Further, outside of her retirement funds, Ms. Ayers has little in the way of savings

upon which she could rely if unable to work in her current job.  For these reasons, the balance of

equities tips in favor of the defendants and plaintiff's request for a TRO should be denied.

### 4.    The Public Interest will not be Furthered by a TRO or Injunctive Relief.

Having failed to establish legitimate grounds for injunctive relief in this matter, RCM cannot claim that the public interest would by furthered by the issuance of a temporary restraining order in this matter. The public has a strong interest in allowing a person to employ her talents in a useful manner in the field of her choosing. Impermissible restraints on trade are disfavored and contrary to the public interest. See Karlin, 390 A.2d at 1165. RCM seeks to restrict Ms. Ayers from earning a livelihood by imparting an improper restraint on her and Beacon Hill.

Beacon Hill also performs a service which is of great interest to the general public. Through its work in the staffing industry, Beacon Hill matches prospective candidates with employers in need of employees. Companies rely upon the services provided by Beacon Hill to ensure that their staffing needs are met. RCM seeks to stifle competition by precluding it from performing its services in the open marketplace. Such a restraint would be improper and contrary to the public interest.

## V.    CONCLUSION

For the foregoing reasons, Defendants, Beacon Hill Staffing Group, LLC ("Beacon Hill") and Kimberly A. Ayers request that the Court deny Plaintiff's Application for Temporary Restraining Order and any other preliminary injunctive relief sought at this time in this matter.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

By:    *Edward J. Longosz, II*
Edward J. Longosz, II, (#368932)
Mark A. Johnston, (#455764)
1747 Pennsylvania Ave., N.W.,
Twelfth Floor
Washington, D.C. 20006
(202) 659-6600

Counsel for Defendants, Beacon Hill Staffing
  Group, LLC and Kimberly A. Ayers

Of Counsel:

Robert W. Levy, Esquire
Eckert Seamans Cherin & Mellott, LLC
One International Place, 18th Floor
Boston, MA 02110-2602
TEL:  (617) 342-6800
FAX:  (617) 342-6899

30

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Opposition to Plaintiff's Application for Temporary Restraining Order** was electronically filed and served, this 6th day of August, 2007, to:

R. Michael Smith, Esquire
Gordon Feinblatt Rothman Hoffberger
 & Hollander, LLC
23 East Redwood Street
Baltimore, MD 21202


*Edward J. Longosz, II*
Edward J. Longosz, II

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RCM Technologies, Inc.   )
          )
  Plaintiff,     )
          )  Case No.:  1:07-CV-00670 (JDB)
  v.       )
          )
Beacon Hill Staffing Group, LLC, et al. )
          )
  Defendants.    )

## <u>AFFIDAVIT OF KIMBERLY AYERS</u>

I, Kimberly Ayers, upon my own personal knowledge, under oath hereby depose and state as follows:

1. I am one of the Defendants in the above matter.  I have personal knowledge of the fact set forth herein, and make this Affidavit in support of Defendants' Opposition to Plaintiff's Application for Temporary Restraining Order.

2. I am 32 years old, single and self supporting.  I am a graduate of Radford College in Radford, Virginia where I received my bachelor's degree in psychology.

3. I have been working in the staffing industry since 1997.  It is the only career I have had since graduating from college.  My first job in 1997 was at a company named Volt Services Group where I was employed as a recruiter.  In 1998 I went to work for a company now known as Sapphire Technologies ("Sapphire") as a recruiter for information technology ("IT") contractors to be placed with companies on a contract or temporary basis.  Sapphire is the IT staffing division of Vedior, N.A., a multinational staffing company.  For my first three years at Sapphire I worked at their Vienna, Virginia office as an IT recruiter.  In 2001 I switched from being a recruiter to sales, as an account manager.  As an account manager I was responsible for



DEFENDANT'S
EXHIBIT

1

handling client companies.  In 2005 I was relocated to Sapphire's Parsippany, New Jersey office and was promoted to Sales Manager.  In July 2005 I relocated back to Sapphire's Vienna, Virginia office as a Sales Manager, a role I had through May 2006 when I resigned.  From May 2006 through September 15, 2006 I worked as a contract corporate recruiter for Booz Allen Hamilton located in McLean, Virginia.

4.     While I was employed by Sapphire, Craig Park, the Vice President responsible for managing the Bethesda, Maryland office of the Plaintiff, RCM Technologies, Inc. ("RCM") actively solicited me to come work for RCM.  RCM is a public corporation with offices throughout the world.  According to their most recent filing with the Securities and Exchange Commission ("SEC") they have over $100 Million in assets.  I knew Craig from my employment at Sapphire, he was a branch manager to whom I reported during a portion of my years at Sapphire.   In furtherance of his attempt to hire me out of Sapphire he requested that I speak with Michael Smith, attorney for the Plaintiff in this action, with regard to my non-compete with Sapphire.  Craig told me that Mr. Smith represented him in his dispute with Sapphire.

5.     I understand that in 2004 when Craig left Sapphire to go to work at RCM he did so seemingly in potential violation of his employment agreement with Sapphire which contained post employment restrictions similar to those which RCM seeks to enforce against me.  Craig and RCM were sued by Sapphire for breaches of his agreement, Craig was sued for breach of his fiduciary obligations, and RCM was sued for tortious interference in a case which was removed to the United States District Court for the District of Maryland (Southern Division) entitled *Sapphire Technologies, LLC v. Craig Park and RCM Technologies, Inc.* Civil Action No. DKC 04CV3099.  I find it ironic that Craig is seeking to enforce RCM's purported agreement with me when Craig and RCM disregarded Craig's contract with Sapphire.

6. While I was working at Booz Allen, Craig approached me again about joining RCM. I believe the main reason I was solicited by Craig and RCM was based upon my many years, nine (9) years at the time, of experience in the IT staffing business. I started work at RCM's Bethesda's office (I never worked in Rockville as stated in the Verified Complaint) in mid-September, 2006.

7. Although my last job function at Sapphire was in sales, Craig suggested that I switch over to recruiting as, according to Craig, Sapphire would have no case against me under my employment agreement with it if I switched roles from sales to recruiting. Craig told me not to worry about any agreement I had with Sapphire.

8. My pay at RCM was a base of $50,000 plus commissions for successful placements. When I was hired by Craig I was told that RCM had two senior level sales people that would bring in job orders for me to attempt to fill as a recruiter. In fact, the sales staff was junior and not experienced. Without a proficient sales staff bringing in job orders it was difficult for me to place the candidates whom I had recruited. This had a substantial effect on my ability to earn a decent income.

9. As there did not appear to be a future at RCM I resigned on December 1, 2006, *73 days* after I commenced my employment with them. I was employed by RCM for approximately two percent (2%) of the time I have been employed in the staffing business.

10. I received no training, nor was any generally available, while employed at RCM and came to work for them bringing my approximately nine years of prior experience in the staffing industry. In fact, I knew more about and had more experience in the staffing business than almost all of the employees in RCM's Bethesda office.

11.    In addition, both Scott Baillie and William Blackford also had prior staffing experience prior to their employment with RCM, both of them having been employed previously by Manpower Professional Services as technical recruiters for their IT division.

12.    There are two primary job functions within a staffing company involved in the IT placement process.  The first primary job function is the sales function, which is performed by an individual typically called an account representative or sales executive.  On the sales side of the business, an account representative is responsible for contacting company customers or prospective customers who are generally known in the industry to determine staffing needs and to solicit business.  A sales executive would obtain information identifying potential customers from public sources, including but not limited to the following: (a) Company websites; (b) Industry websites; (c) Trade journals; and (d) cold calls.  Many companies post their job openings on their websites in the hope of getting the broadest exposure to the hiring needs.  The account representative contacts the person within the company customer responsible for hiring in reference to or to inquire about potential placement opportunities.  The identity of the person responsible for hiring is not confidential and is easily obtainable.  If you call into a company and ask to speak to someone regarding IT staffing, you get forwarded to the person responsible for the hiring.  Company customers typically have more than one person responsible for hiring.  If successful, the account representative receives from the company customer an order to fill a job opening, and a description of the required job qualifications.  A company customer will typically request multiple staffing companies to assist in filling the same job opening.

13.    The second primary function is the recruiting function, which is performed by a recruiter.  A recruiter is responsible for identifying an available candidate (also called a contractor or consultant) with the requisite skills to meet the job specifications of a specific job

4

opening.  A recruiter rarely, if ever, has contact with the company customer.  A recruiter's

primary job is to contact qualified candidates who may be available to fill an open position.

Candidates post their resumes on internet job boards, such as Monster.com or Dice.com, in an

attempt to get the broadest exposure to potential job opportunities.  Once a recruiter identifies a

qualified available candidate, the recruiter provides the information about the candidate to the

account representative for transmittal to the hiring manager at the company customer.  If the

company customer informs the account representative that there is interest in conducting an

interview of the candidate offered for the position, then the recruiter will notify the candidate.

14.     Essentially, the extent of involvement by a staffing agency in the placement

process consists of matching a candidate with a job opening, before the opening is filled by

another staffing company.  Information about job openings quickly becomes stale and outdated.

Openings typically fill quickly, and do not remain open for an extensive period of time.

15.     There was nothing special, unique or extraordinary about the services of RCM.

The business of RCM, as well Sapphire and other companies engaged in recruiting and

placement of IT employees are similar.  It is common for companies with relevant job openings

to freely provide information about their job openings and the job requirements to any placement

agency that requests the information.  There are numerous IT staffing firms in the greater

Washington, D.C. area which are all competing for the same job openings.  Candidates as well as

client companies have no loyalty to any one placement agency.  The candidates are interested

only in finding the most suitable job opening, and the client companies are interested only in

identifying the best candidate.  In fact, candidates and customers typically register with

numerous agencies in order to get the best exposure.

16.    My responsibilities at RCM were solely as a recruiter, to locate available candidates for employment. My written job description did not include any interactions with customers. My employment at Beacon Hill is, and always has been, as a sales executive, which entails no recruiting of candidates.

17.    When I left my employment at RCM I took only my personal belongings. I did not take any information or other property belonging to RCM. I did not take, nor do I have in my possession, custody or control, any customer lists, candidate lists, personnel lists, fee schedules, training manuals or materials, compilations of information, or other documents that belong to RCM, with the exception of the documents that RCM has provided to my attorneys in this case or has filed with the Court in this action and consequently have made available to me as well as the general public.

18.    As previously stated when I started work at Beacon Hill I switched from recruiting to sales and my function is in the role as an Account Manager. I have had no contact with any candidate whom I placed, or to the best of my memory, had any dealings with while employed at RCM. I have not solicited any companies which I made placements at while employed by RCM. All the companies I have dealt with are generally known in the industry or, as stated, available through public sources.

19.    I had very few dealings with any company clients of RCM during my 73 days of employment there. I did have contact with Fannie Mae; however, that contact was with my brother who was employed with them. It is interesting to note that RCM claims that the identities of its customers are confidential yet not only have they disclosed their identity in the public record of this case, in addition in their website they publish the identity of many of their purported customers. See Exhibit A attached hereto.

6

20.     Furthermore, a primary source of potential job opportunities is through the websites of potential customers. Jared Hayes lists in his Declaration filed by RCM several companies that he has responsibility for servicing. A review of several of those companies' websites discloses the following:

(a)     Advanced Technology Systems lists 59 IT job opportunities. See Exhibit B;

(b)     SRA list 312 IT job opportunities. See Exhibit C;

(c)     Comptroller of the Currency lists 12 job opportunities in Washington, DC. See Exhibit D;

(d)     Stanley Associates lists 11 IT job opportunities (my brother also worked there as a Director of Recruiting). See Exhibit E;

The foregoing are only examples of what is available on the World Wide Web.

21.     I have reviewed the Declaration of Craig Park, his statement that at least one technical recruiter is also assigned to each customer as an additional point of contact is false. Also, I did not develop a close relationship with any customer (other than my brother) as stated by Mr. Park.

22.     Substantially all of the expense reports attached to Mr. Park's Declaration, none of which were applicable to me, confirm that Mr. Blackford and Mr. Baillie only entertained candidates, not customers, in their position as recruiters.

23.     I am not aware of any trade secrets or confidential information which belong to RCM, nor do I believe any exist.

24.     I will suffer substantial harm if I am not permitted to continue my current employment, which is my only source of income, and would prevent me from earning a livelihood. Further, outside of my retirement funds, I have little in the way of savings upon which I could rely if unable to work in my current job.

7

25.     There are many allegations contained in the papers filed by RCM, my failure to object to any of them should not be construed to mean that I agree with the allegations.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _____ DAY OF AUGUST, 2007.

Kimberly Ayers

Clients :::





‣ **About RCM**                    Home > About RCM >  **Clients**

Corporate Overview
Mission Statement
Philosophy and Methodologies
**Clients**
Investor Relations
News

‣ Contact Us

*"The MFG/PRO implementation exceeded our expectations and we were*
*budget. RCM's implementation methodology was key to our success, it*

*quickly and ensured that our processes were clearly documented and t*
*properly configured to support our business."*

   *-Anne Holmes, ERP Coordinator, Morrison Products, Inc., an HVAC i*

RCM is proud to have been chosen as a provider of IT Business Solutions
Engineering Services to more than 1,000 Fortune 1000, Mid-market, and
Our client-centric approach, combining in depth knowledge of clients' bus
with our deep technology and industry expertise, empowers our clients to
competitive global environment.

The following is a partial client list:

3M                              Rohm & Haas
IBM                             RR Donnelley Financial
Lockheed Martin                 Schering Plough
Lucent                          Sikorsky
Medtronic                       Societe Generale
Merck                           State of Wisconsin
MSC Industrial Supply           Super Value
NASA                            Target
National Library of Canada      Tenneco
Nielsen Media Research          US Department of Treasu
Ontario Power Generation        US West
Pfizer                          Vermont Yankee
Reed Elsevier

© 2003 RCM Technologies, Inc. All Rights Reserved. Privacy Policy | Site Map



 

Ingenuity at Work

about us | solutions | markets | customers | careers |

Corporate Profile | Corporate Philosophy | Management | Awards | Locations | Subsidiaries | Contract

# Careers

**Current Openings**

**Administrative/Clerical**
Administrative Assistant (961)
McLean, VA, US.

**Corporate Management**
Director, Capture Management (960)
McLean, VA, US.
Director, Capture Management and Business Development, Intel Community (1017)

McLean, VA, US.

**Financial/Accounting**
Senior Financial Analyst with Pricing and Credit Risk expertise (1020)
Washington, DC, US.

**Human Resources**
Technical Recruiter (1026)
McLean, VA, US.

**Information Technology**
08628 - Ab Initio Backend Database Tester (997)
Herndon, VA, US.
10515 - Infrastructure Support (985)
Reston, VA, US.
10738 - Junior Release Manager (991)
Herndon, VA, To Be Determined
Ab Initio Developer (979)
Reston, VA, US.
Analyst (953)
Washington, DC, US.
Analyst (954)
Washington, DC, US.
Business Analyst with MS SQL Server Experience (981)
Reston, VA, US.
Business Objects Designer/Developer (990)
Reston, VA, US.
Business Objects/Crystal Reports / SQL / Oracle Developer (1022)
Herndon, VA, US.
C++ Developer (965)
McLean, VA, US.
Call Center Support with Underwriter / Mortgage Lending experience (956)
Reston, VA, US.
Configuration Manager (1012)
Herndon, VA, US.
Data Analyst (1000)
Washington, DC, US.
Database Administrator (1023)
Herndon, VA, US.
Database Developer/Business Objects (829)



DEFENDANT'S
EXHIBIT

B

ALL-STATE LEGAL®

Washington, DC, US.

Financial Analyst (1004)
Washington, DC, To Be Determined

Infrastructure (J2EE/UNIX/Shell/Oracle/Sybase/Weblogic) Developer (975)
Herndon, VA, US.

Infrastructure Architect (996)
Washington, DC, US.

J2EE/Java/ORACLE/PeopleSoft Financial/Remedy/SharePoint Developer (970)
Washington, DC, US.

Java Front-End Web GUI Developer (1024)
Herndon, VA, US.

Java/Crystal reports/Ms SQL Server Developer (976)
Herndon, VA, US.

Jr. Business Analyst (1021)
Herndon, VA, US.

Lotus Domino Administrator (984)
Reston, VA, US.

Marketing Manager (744)
Mclean / Richmond, VA, US.

Netcool / Infovista Engineer (535)
Reston, VA, US.

Network Operations Manager (1016)
McLean, VA, US.

Oracle/Sybase DBA with Erwin & MS Project (988)
Herndon, VA, US.

Performance Tester (995)
Herndon, VA, US.

Production Support Engineer - AbInitio, Oracle, Sbase, Shell, PERL (989)
Herndon, VA, US.

Programmer (952)
Washington, DC, US.

Programmer Analyst (968)
Bethesda, MD, US.

Recruiter (Mid-Level) (929)
Mclean, VA, US.

Release Manager (1005)
Herndon, VA, US.

Security Operations Engineer (901)
Washington, DC, US.

Senior Database Administrator (1011)
Reston, VA, US.

Senior Information Systems Security Engineer (817)
McLean, VA, US.

Senior MS Engineer (943)
Washington, DC, US.

Senior Programmer Analyst (945)
Arlington, VA, US.

Senior Programmer Analyst (946)
Arlington, VA, US.

Senior Project Manager with Java / VB (1007)
Herndon, VA, US.

Senior Recruiter (928)
Mclean, VA, US.

Senior Security Specialist (INFOSEC) (902)
Washington, DC, US.

Senior Systems Engineer (994)
Washington, DC, US.

Sr. Financial Engineer (998)
Washington, DC, US.

Sr. Systems Engineer (816)
McLean, VA, US.

Sybase/Oracle/Hyperion/ESSBASE Developer (987)
Herndon, VA, US.

System Legacy Tester (1025)
Herndon, VA, US.

Technical Support Specialist (963)
Washington, DC, US.

Technical/Finance Recruiter (506)
McLean, VA, US.

Marketing/Business Development

Director, Business Development (819)
McLean, VA, US.

Technical Training, Documentation, and Graphics

Technical Writer (1019)
Arlington, VA, US.

Return to Job Listings

Powered by OpenHire © 1999 - 2007

home  |  about us  |  solutions  |  markets  |  customers  |  careers  |  contact us
Copyright © 2007 Advanced Technology Systems, Inc. All rights reserved


DEFENDANT'S
EXHIBIT

C

From Science to Solutions ™



Customers | Alumni | Employees | Contact Us

| Services & Products | About SAIC | Investor Relations | Careers |
| News & Publications | | | |

# Career Opportunities

**Home**      **My Workbench**      **My Profile**      **My Searches**      **My Job Cart**      **Login**

Your search returned 59 results

Save this Se

Page  **1** 2 ▶

| Job Title | Location | Posted Da |
|---|---|---|
| Senior Configuration Managment Specialist | Alexandria, VA, United States | 8/3/2007 |
| Program Analyst | Dumfries, VA, United States | 8/3/2007 |
| Configuration Management Specialist | Falls Church, VA, United States | 8/3/2007 |
| GIS Technician | Cheyenne, WY, United States | 8/3/2007 |
| General Clerk | Panama City Beach, FL, United States | 8/1/2007 |
| System Administrator | Greenwood Village, CO, United States | 7/31/2007 |
| System Administrator | Greenwood Village, CO, United States | 7/31/2007 |
| System Administrator | Greenwood Village, CO, United States | 7/31/2007 |
| System Administrator | Greenwood Village, CO, United States | 7/31/2007 |
| Site Support Analyst | Frederick, MD, United States | 7/27/2007 |
| Help Desk Support Associate | Oak Ridge, TN, United States | 7/25/2007 |
| Help Desk Support Associate | Oak Ridge, TN, United States | 7/25/2007 |
| Jr. .Net Developer | Cordova, TN, United States | 7/25/2007 |
| Electronics Assembler (Temporary Contract) | Columbia, MD, United States | 7/24/2007 |
| Electronics Assembler (Temporary Contract) | Columbia, MD, United States | 7/24/2007 |
| Deskside Support Technician | Findlay, OH, United States | 7/20/2007 |
| Quality Assurance Lead | Norcross, GA, United States | 7/19/2007 |
| Unix Systems Administrator | Norcross, GA, United States | 7/19/2007 |
| Payroll Accounting Supervisor - Temporary | San Diego, CA, United States | 7/18/2007 |
| Senior Network Administrator | Ft Stewart, GA, United States | 7/17/2007 |
| Senior Network/Hardware Support Technician | Ft Stewart, GA, United States | 7/17/2007 |
| General Clerk/Technician | Ft. Benning, GA, United States | 7/17/2007 |
| Network/Hardware Support Technician | Ft Stewart, GA, United States | 7/17/2007 |
| Accounts Receivable Analyst - Closeout | Mclean, VA, United States | 7/17/2007 |
| Site Support Analyst | Rockville, MD, United States | 7/16/2007 |
| Network Specialist | Albany, NY, United States | 7/16/2007 |
| Sr. Infrastructure Security Professional | Washington, DC, United States | 7/14/2007 |
| Software Engineer | San Diego, CA, United States | 7/11/2007 |
| Help Desk Support Associate | Oak Ridge, TN, United States | 7/11/2007 |
| Help Desk Support Associate | Oak Ridge, TN, United States | 7/11/2007 |
| Network Engineer | Houston, TX, United States | 7/11/2007 |
| Network Engineer | Houston, TX, United States | 7/11/2007 |
| Material Control Analyst II (FMA-1K016) | Virginia Beach, VA, United States | 7/6/2007 |

| | | |
|---|---|---|
| Network Warfare Exercise/Test Integrator II | San Antonio, TX, United States | 7/2/2007 |
| Aerospace Engineer/Sr. Cost Analyst | Mclean, VA, United States | 6/29/2007 |
| Web Applications Developer | Midwest City, OK, United States | 6/25/2007 |
| Referral Management Clerk - Keesler AFB, MS | Keesler Afb, MS, United States | 6/22/2007 |
| PC Support Specialist | Pittsburgh, PA, United States | 6/12/2007 |
| Business Analyst | Pittsburgh, PA, United States | 6/12/2007 |
| DBA Developer | Pittsburgh, PA, United States | 6/12/2007 |
| Copyeditor | Mclean, VA, United States | 6/11/2007 |
| Digital Media & Graphic Artist | Mclean, VA, United States | 6/11/2007 |
| Senior Systems Engineer | Dumfries, VA, United States | 6/11/2007 |
| Freelance Senior Web/Flash Designer | Mclean, VA, United States | 6/8/2007 |
| Policy Analyst Command and Control | Colorado Springs, CO, United States | 6/6/2007 |
| Sr Program Manager - IV & V | Huntington Beach, CA, United States | 5/31/2007 |
| Adolescent Substance Abuse Counselor - Fairbanks | Ft. Wainwright, AK, United States | 5/23/2007 |
| Help Desk Specialist | Bethesda, MD, United States | 5/22/2007 |
| Help Desk Specialist | Fort Gordon, GA, United States | 5/21/2007 |
| Network Warfare Systems Analyst/Integrator II | San Antonio, TX, United States | 5/15/2007 |

© SAIC

Copyright   Web Pi

**SAIC**

From Science to Solutions ™

Customers | Alumni | Employees | Contact Us

| Services & Products | About SAIC | Investor Relations | Careers |

News & Publications

# Career Opportunities

| Home | My Workbench | My Profile | My Searches | My Job Cart | Login |

Your search returned 59 results                                    Save this Se

Page ◀ 1 2

| Job Title | Location | Posted Da |
|-----------|----------|-----------|
| Sr. Security Engineer | Columbus, OH, United States | 5/7/2007 |
| Business Analyst | Salt Lake City, UT, United States | 4/27/2007 |
| Business Analyst | Salt Lake City, UT, United States | 4/27/2007 |
| Business Analyst | Salt Lake City, UT, United States | 4/27/2007 |
| Business Analyst | Salt Lake City, UT, United States | 4/27/2007 |
| Requirements / QA Analyst. | Falls Church, VA, United States | 4/17/2007 |
| TEMP Call Center Generalist | Rockville, MD, United States | 4/4/2007 |
| Business Analyst | Salt Lake City, UT, United States | 3/13/2007 |
| On-call Relief Receptionist - TEMPORARY | San Diego, CA, United States | 7/20/2006 |

© SAIC                                                    Copyright   Web Pr



# CAREER CENTER

☑ Home     ☑ Search openings     ☑ Search results

**ABOUT SRA**
**SERVICES & SOLUTIONS**
**INVESTOR RELATIONS**
**NEWS & EVENTS**
**FEDERAL CONTRACTS**
● **CAREER CENTER**







**FORTUNE**
**100 BEST**
**COMPANIES**
**TO WORK FOR 2007**

## Search results Your search criteria: (Computing/MIS - Database Administration ... m

**Results 1-29 of 29**
**Page 1**

| View job(s) | Submit to job(s) | Send to friend | Create sea |
|---|---|---|---|

Clear checked

| ☐ **Position Title** | **Location** | **Requisi** |
|---|---|---|
| ☐ Oracle Database Administrator | District of Columbia - Washington (DC99) | 13241I |
| ☐ Software Engineer | New York - New York (NY01) | 13644I |
| ☐ Database Administrator | Virginia - Fairfax (Fair Lakes) (VA02) | 13536I |
| ☐ Database Architect | Virginia - Rosslyn US-VISIT (VA33) | 13412I |
| ☐ Systems Analyst/Modeling and Simulation | Virginia - Rosslyn US-VISIT (VA33) | 13226I |
| ☐ Software Engineer | Maryland - New Carrollton (MD03) | 13217I |
| ☐ Software Engineer | Maryland - Rockville (MD01) | 12927I |
| ☐ LMS Administrator and Database Analyst/Programmer | Texas- San Angelo (TX99) | 13620I |
| ☐ DBA | California - Monterey (CA01) | 12358I |
| ☐ Database Administrator | Virginia - Off-site (VA99) | 13355I |
| ☐ Programmer Analyst | Maryland - New Carrollton (MD03) | 13562I |
| ☐ Database Administrator | Maryland - Bethesda NIH (MD04) | 13533I |
| ☐ Database Administrator | District of Columbia - Washington (GAO) (DC02) | 13193I |
| ☐ Analyst | Virginia - Arlington (Navy Annex) (VA54) | 13192I |
| ☐ Application Programmer | Vermont - Burlington (VT99) | 13415I |
| ☐ Database Administrator | Illinois - Chicago (IL03) | 13338I |
| ☐ Oracle DBA | Virginia - Willow Oaks (8280) (VA55) | 13064I |

| | | |
|---|---|---|
| ☐ Technical Project Manager | Virginia - Skyline (VA07) | 13427l |
| ☐ Database Administrator | Virginia - Off-site (VA99) | 12999l |
| ☐ Systems Architect | Virginia - Arlington Center (VA38) | 12185l |
| ☐ Database Architect | Virginia - Rosslyn US-VISIT (VA33) | 13413l |
| ☐ Systems Analyst/Modeling and Simulation | Virginia - Rosslyn US-VISIT (VA33) | 12801l |
| ☐ Senior Communications Analyst | Virginia - Hampton (Langley AFB)(VA99) | 12870l |
| ☐ Communications Analyst | Virginia - Quantico (VA99) | 11186l |
| ☐ Configuration Management Specialist | District of Columbia - PBGC 1275 K Street (DC15) | 12470l |
| ☐ Computer Operations Manager | District of Columbia - PBGC 1275 K Street (DC15) | 12811l |
| ☐ Systems Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12815l |
| ☐ Database Administrator | Maryland - Bethesda Stone Street (MD14) | 12465l |
| ☐ Technical Lead/ Technical Director | North Carolina - Durham (NC01) | 10755l |

[ View job(s) ]    [ Submit to job(s) ]    [ Send to friend ]    [ Create sea







ABOUT SRA
SERVICES & SOLUTIONS
INVESTOR RELATIONS
NEWS & EVENTS
FEDERAL CONTRACTS
• CAREER CENTER



☑——————☑——————☐
Home      Search         Search
          openings       results

## Search results Your search criteria: (Computing/MIS - Hardware)  | **Refine search**

**Results 1-17 of 17**
**Page  1**



[ View job(s) ]   [ Submit to job(s) ]   [ Send to friend ]   [ Create sear



Clear checked

| | Position Title | Location | Requisi |
|---|---|---|---|
| ☐ | Electrical Engineer | New Jersey - Egg Harbor (Galaxy) (NJ02) | 10556I |
| ☐ | Application Programmer | Vermont - Burlington (VT99) | 13415I |
| ☐ | Senior Communications Analyst | Virginia - Hampton (Langley AFB) (VA99) | 12870I |
| ☐ | Communications Analyst | Virginia - Quantico (VA99) | 11186I |
| ☐ | Configuration Management Specialist | Virginia - Skyline (VA07) | 13167I |
| ☐ | Systems Engineer | Virginia - Crystal City (VA19) | 13315I |
| ☐ | Software Engineer | Arizona - Ft. Huachuca (AZ02) | 13309I |
| ☐ | Systems Engineer | Virginia - Crystal City (VA19) | 13305I |
| ☐ | Systems Engineer | Arizona - Ft. Huachuca (AZ02) | 13304I |
| ☐ | Systems Administrator | Arizona - Ft. Huachuca (AZ02) | 13303I |
| ☐ | Service Manager | District of Columbia - PBGC 1275 K Street (DC15) | 12441I |
| ☐ | Network Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12444I |
| ☐ | Chief Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12451I |
| ☐ | Configuration Management Specialist | District of Columbia - PBGC 1275 K Street (DC15) | 12470I |
| ☐ | Computer Operations Manager | District of Columbia - PBGC 1275 K Street (DC15) | 12811I |
| ☐ | Subject Matter Expert | Virginia - Virginia Beach (VA12) | 12608I |
| ☐ | Technical Lead/ Technical Director | North Carolina - Durham (NC01) | 10755I |



# CAREER CENTER

ABOUT SRA
SERVICES & SOLUTIONS
INVESTOR RELATIONS
NEWS & EVENTS
FEDERAL CONTRACTS
• CAREER CENTER

☑ Home    ☑ Search openings    ☐ Search results

## Search results Your search criteria: (Computing/MIS - Internet Development) | Refi

Results 1-7 of 7
Page   1

[ View job(s) ]    [ Submit to job(s) ]    [ Send to friend ]    [ Create sear

Clear checked

| | Position Title | Location | Requisi |
|---|---|---|---|
| ☐ | Software Engineer | New York - New York (NY01) | 13644I |
| ☐ | Software Engineer | Maryland - Rockville (MD01) | 12927I |
| ☐ | Software Engineer | Virginia - Skyline (VA07) | 13623I |
| ☐ | Senior Software Engineer/Developer | Virginia - Rosslyn (USAID) (VA34) | 12810I |
| ☐ | SR Process Engineer | Virginia - Herndon (VA27) | 11779I |
| ☐ | Systems Architect | Virginia - Arlington Center (VA38) | 12185I |
| ☐ | Technical Lead/ Technical Director | North Carolina - Durham (NC01) | 10755I |

[ View job(s) ]    [ Submit to job(s) ]    [ Send to friend ]    [ Create sear



BrassRing™

About SRA | Services & Solutions | Investor Relations | News & Events | Federal Contracts | **Career Center**

SRA Home | Site Map | Search | Contact Us | Privacy Policy



ABOUT SRA
SERVICES & SOLUTIONS
INVESTOR RELATIONS
NEWS & EVENTS
FEDERAL CONTRACTS
● CAREER CENTER



# CAREER CENTER

☑ ———— ☑ ———— ☐
Home      Search      Search
          openings    results



## Search results Your search criteria: (Computing/MIS - Network/System Administ ...

Results 1-50 of 51
Page   1   2   >

[ View job(s) ]   [ Submit to job(s) ]   [ Send to friend ]   [ Create sear ]





Clear checked

| | Position Title | Location | Requisi |
|---|---|---|---|
| ☐ | Senior Network Engineer | Virginia - FDIC (VA31) | 12047I |
| ☐ | Network Engineer | Virginia - Pentagon (VA99) | 13672I |
| ☐ | Senior Microsoft Active Directory Engineer | Maryland - Bethesda NIH (MD04) | 12974I |
| ☐ | Senior Systems Administrator - DTP Environment | District of Columbia - Washington (OPM) (DC11) | 13376I |
| ☐ | Mid Level Systems Administrator - DTP Environment | District of Columbia - Washington (OPM) (DC11) | 13375I |
| ☐ | Systems Administrator | Ohio - Dayton (OH01) | 13399I |
| ☐ | Systems Administrator/CM | District of Columbia - DOJ USTP (DC12) | 12931I |
| ☐ | Systems Administrator | District of Columbia - Washington (DC99) | 12955I |
| ☐ | Network Security Analyst | Maryland - Bethesda NIH (MD04) | 13544I |
| ☐ | OPIS Administrator | Pennsylvania - Boyers (PA02) | 13621I |
| ☐ | Wireless Network Engineer | Maryland - Bethesda NIH (MD04) | 13017I |
| ☐ | Business Intelligence Engineer | District of Columbia - Washington(US Courts)(DC03) | 9633BI |
| ☐ | Unix Systems Administrator | Virginia - Rosslyn (USAID) (VA34) | 13607I |
| ☐ | Systems Administrator | Maryland - Bethesda NIH (MD04) | 13225I |
| ☐ | Project Manager USDA FAST (Kansas City) | Kansas - Ft. Leavenworth (KS99) | 12817I |
| ☐ | Systems Administrator | Maryland - Columbia (RABA) (MD16) | 13529I |
| ☐ | Wireless Network Engineer | Maryland - Bethesda NIH (MD04) | 13549I |

| | | |
|---|---|---|
| ☐ Systems Administrator | District of Columbia - Washington (DC99) | 12819I |
| ☐ Network Engineer | Maryland - Bethesda NIH (MD04) | 13221I |
| ☐ Business Objects Developer | District of Columbia - Washington(US Courts)(DC03) | 12858I |
| ☐ Network Engineer | Virginia - FDIC (VA31) | 13168I |
| ☐ EQIP and FTS Unix Administrator | Pennsylvania - Boyers (PA02) | 13290I |
| ☐ Application Programmer | Vermont - Burlington (VT99) | 13415I |
| ☐ EQIP Unix Administrator | District of Columbia - Washington (OPM) (DC11) | 13289I |
| ☐ Technical Lead/Technical Director | Virginia - FDIC (VA31) | 11741I |
| ☐ Network Engineer | Virginia - Springfield Newington (VA16) | 13191I |
| ☐ Database Administrator | Illinois - Chicago (IL03) | 13338I |
| ☐ Senior Communications Analyst | Virginia - Hampton (Langley AFB)(VA99) | 12870I |
| ☐ Systems Engineer | Virginia - Crystal City (VA19) | 13315I |
| ☐ Test Engineer | Arizona - Ft. Huachuca (AZ02) | 13311I |
| ☐ Software Engineer | Arizona - Ft. Huachuca (AZ02) | 13309I |
| ☐ Software Engineer | Arizona - Ft. Huachuca (AZ02) | 13306I |
| ☐ Systems Engineer | Virginia - Crystal City (VA19) | 13305I |
| ☐ Systems Engineer | Arizona - Ft. Huachuca (AZ02) | 13304I |
| ☐ Systems Administrator | Arizona - Ft. Huachuca (AZ02) | 13303I |
| ☐ HP Openview Network Engineer | District of Columbia - Washington (DC99) | 12191I |
| ☐ Service Manager | District of Columbia - PBGC 1275 K Street (DC15) | 12441I |
| ☐ Network Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12444I |
| ☐ Chief Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12451I |
| ☐ Configuration Management Specialist | District of Columbia - PBGC 1275 K Street (DC15) | 12470I |
| ☐ Computer Operations Manager | District of Columbia - PBGC 1275 K Street (DC15) | 12811I |
| ☐ Systems Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12815I |
| ☐ Deputy Project Manager | Maryland - Rockville (MD01) | 12535I |
| ☐ Systems Engineer | Virginia - Skyline (VA07) | 12744I |
| ☐ DOI/BLM Network Engineer | Colorado - Denver (CO99) | 12221I |
| Systems Administrator | District of Columbia - Off-site | 11897I |

|   |   |   |
|---|---|---|
| ☐ | | (DC99) |
| ☐ | Network Engineer | Maryland - Bethesda NIH (MD04) | 11674I |
| ☐ | COTS Software Integrator | Maryland - Bethesda NIH (MD04) | 9433BI |
| ☐ | Technical Lead/ Technical Director | North Carolina - Durham (NC01) | 10755I |
| ☐ | Systems Administrator | District of Columbia - Off-site (DC99) | 12212I |

[ View job(s) ]  [ Submit to job(s) ]  [ Send to friend ]  [ Create sea



About SRA | Services & Solutions | Investor Relations | News & Events | Federal Contracts | **Career Center**

SRA Home | Site Map | Search | Contact Us | Privacy Policy





ABOUT SRA
SERVICES & SOLUTIONS
INVESTOR RELATIONS
NEWS & EVENTS
FEDERAL CONTRACTS
• CAREER CENTER

☑ Home    ☑ Search openings    ☐ Search results

## Search results Your search criteria: (Computing/MIS - Other) | **Refine search**



**Results 1-50** of 66

Page 1  2  >

| View job(s) | Submit to job(s) | Send to friend | Create sear |

Clear checked





| | Position Title | Location | Requisi |
|---|---|---|---|
| ☐ | Analyst | Virginia - Fairfax (Fair Lakes)(VA02) | 13512I |
| ☐ | Curriculum Developer/Technical Writer | Virginia - Newington (VA99) | 13115I |
| ☐ | Project Manager | Virginia - Fairfax (Fair Lakes)(VA02) | 13144I |
| ☐ | Business Solution Architect | Virginia - Fairfax (Fair Lakes)(VA02) | 13324I |
| ☐ | High-Alt ISR Support | California - Beale AFB (CA99) | 11771I |
| ☐ | Financial Management Support / Resource Advisor Assistants | California - Beale AFB (CA99) | 11586I |
| ☐ | Command Post Deputy and Management Support | California - Beale AFB (CA99) | 12459I |
| ☐ | Airfield Operations and Air Traffic Controller Support | California - Beale AFB (CA99) | 11578I |
| ☐ | AFMSS Mission Support / Mission Planner SME | California - Beale AFB (CA99) | 11659I |
| ☐ | Senior Information Assurance Technical Lead | Virginia - Willow Oaks (8260) (VA24) | 13673I |
| ☐ | IPv6 Technical Lead | Virginia - Rosslyn (USAID Tech Hub) (VA29) | 13419I |
| ☐ | Training Specialist | Maryland - Bethesda NIH (MD04) | 13614I |
| ☐ | Analyst | California - Monterey (CA01) | 12984I |
| ☐ | Analyst | Illinois - Fairview Heights (IL01) | 13661I |
| ☐ | Subject Matter Expert | Virginia - Arlington (Navy Annex) (VA54) | 12122I |
| | | California - Monterey | |

| | | |
|---|---|---|
| ☐ Information Engineer | (CA01) | 12361I |
| ☐ Wing Plans & Programs Support | California - Beale AFB (CA99) | 12455I |
| ☐ Analyst | Maryland - New Carrollton (MD03) | 13214I |
| ☐ SERE Instructor | California - Beale AFB (CA99) | 11656I |
| ☐ Security Administrator | California - Beale AFB (CA99) | 12454I |
| ☐ Quality Assurance | California - Beale AFB (CA99) | 12466I |
| ☐ Operational Test & Evaluation / Analyst | California - Beale AFB (CA99) | 11587I |
| ☐ Operational Airborne Sensor Management Support (Logistician / Configur | California - Beale AFB (CA99) | 11615I |
| ☐ Deployment Management Support | California - Beale AFB (CA99) | 12457I |
| ☐ Financial Management Support / Resource Advisor Assistants | California - Beale AFB (CA99) | 11658I |
| ☐ Airfield Operations and Air Traffic Controller Support | California - Beale AFB (CA99) | 13046I |
| ☐ Airfield Operations and Air Traffic Controller Support | California - Beale AFB (CA99) | 11588I |
| ☐ Airfield Operations and Air Traffic Controller Support | California - Beale AFB (CA99) | 11590I |
| ☐ Software Engineer | Maryland - New Carrollton (MD03) | 13217I |
| ☐ Programmer Analyst | District of Columbia - Off-site (DC99) | 13414I |
| ☐ UAS Division Tech Lead | Virginia - Arlington Center (VA38) | 12464I |
| ☐ Information Assurance Analyst | Washington - Bremerton (Pacific Ave) (WA02) | 13449I |
| ☐ Information Assurance Analyst | Washington - Bremerton (Pacific Ave) (WA02) | 13329I |
| ☐ Systems Engineer | Virginia - Skyline (VA07) | 10967I |
| ☐ Systems Engineer | Virginia - Skyline (VA07) | 10965I |
| ☐ Configuration Management Specialist | Virginia - Fairfax (Fair Lakes)(VA02) | 13004I |
| ☐ Project Manager USDA FAST(Kansas City) | Kansas - Ft. Leavenworth (KS99) | 12817I |
| ☐ .NET Developer | Virginia - Fairfax (Fair Lakes)(VA02) | 10848I |
| ☐ Analyst | Virginia - Arlington (Navy Annex) (VA54) | 13192I |
| ☐ Analyst | California - Monterey (CA01) | 11565I |
| | Virginia - Rosslyn | |

| ☐ Technical Lead | (USAID Tech Hub) (VA29) | 133341 |
| ☐ Analyst | Virginia - Crystal City (VA19) | 134171 |
| ☐ Signals Analyst | Maryland - Columbia (RABA) (MD16) | 133461 |
| ☐ Senior Network Systems Engineer | California - San Diego (Galaxy) (CA05) | 112561 |
| ☐ Application Programmer | Vermont - Burlington (VT99) | 134151 |
| ☐ Technical Lead/Technical Director | Virginia - FDIC (VA31) | 117411 |
| ☐ Senior Performance Engineer | Virginia - Rosslyn US-VISIT (VA33) | 126921 |
| ☐ Data Manager | South Carolina - Off-site (SC99) | 120641 |
| ☐ Senior Communications Analyst | Virginia - Hampton (Langley AFB)(VA99) | 128701 |
| ☐ Communications Analyst | Virginia - Quantico (VA99) | 111861 |

[ View job(s) ]   [ Submit to job(s) ]   [ Send to friend ]   [ Create sea



About SRA | Services & Solutions | Investor Relations | News & Events | Federal Contracts | **Career Center**

SRA Home | Site Map | Search | Contact Us | Privacy Policy





ABOUT SRA
SERVICES & SOLUTIONS
INVESTOR RELATIONS
NEWS & EVENTS
FEDERAL CONTRACTS
● CAREER CENTER

☑ Home     ☑ Search openings     ☐ Search results

## Search results Your search criteria: (Computing/MIS - Quality Assurance Testi ... m

Results **1-16** of 16
Page  1





[ View job(s) ]   [ Submit to job(s) ]   [ Send to friend ]   [ Create sear

Clear checked

| | Position Title | Location | Requisi |
|---|---|---|---|
| ☐ | Software Test Engineer | Virginia - Fairfax (Fair Lakes) (VA02) | 13424I |
| ☐ | Software Engineer | New York - New York (NY01) | 13644I |
| ☐ | Senior Tester | District of Columbia - DOJ USTP (DC12) | 13663I |
| ☐ | Quality Assurance | California - Beale AFB (CA99) | 12466I |
| ☐ | Operational Test & Evaluation / Analyst | California - Beale AFB (CA99) | 11587I |
| ☐ | Analyst | Virginia - Skyline (VA07) | 12881I |
| ☐ | Test Engineer | Virginia - Fairfax (Fair Lakes) (VA02) | 13005I |
| ☐ | Senior Tester | District of Columbia - Washington (DC99) | 12591I |
| ☐ | Technical Writer | District of Columbia - Washington (DC99) | 13169I |
| ☐ | Senior Communications Analyst | Virginia - Hampton (Langley AFB) (VA99) | 12870I |
| ☐ | Test Engineer | Arizona - Ft. Huachuca (AZ02) | 13311I |
| ☐ | Network Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12444I |
| ☐ | Chief Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12451I |
| ☐ | Systems Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12815I |
| ☐ | Quality Assurance Specialist | Virginia - Newington (VA99) | 10638I |
| ☐ | Integration & Test Engineer | District of Columbia - Washington (DC99) | 12145I |



ABOUT SRA
SERVICES & SOLUTIONS
INVESTOR RELATIONS
NEWS & EVENTS
FEDERAL CONTRACTS
● CAREER CENTER



FORTUNE®
100 BEST
COMPANIES
TO WORK FOR 2007

☑ Home ───── ☑ Search openings ───── ☐ Search results

## Search results Your search criteria: (Computing/MIS - Software Development) | Re

**Results 1-50 of 75**
**Page 1  2 >**

[ View job(s) ]   [ Submit to job(s) ]   [ Send to friend ]   [ Create sear ]

Clear checked

| | Position Title | Location | Requisi |
|---|---|---|---|
| ☐ | Java/J2EE Developer | Florida - Off-site (FL99) | 13685I |
| ☐ | Business Analyst | Virginia - Fairfax (Fair Lakes) (VA02) | 13124I |
| ☐ | J2EE Software Engineer | Maryland - Columbia (RABA) (MD16) | 13577I |
| ☐ | Sr. C/C++ Software Engineer | Maryland - Columbia (RABA) (MD16) | 13578I |
| ☐ | Jr. C/C++ Software Engineer | Maryland - Columbia (RABA) (MD16) | 13579I |
| ☐ | Senior Information Assurance Technical Lead | Virginia - Willow Oaks (8260) (VA24) | 13673I |
| ☐ | Senior Software Engineer Development Lead | District of Columbia - DOJ USTP (DC12) | 12162I |
| ☐ | C Embedded Developer | Maryland - Columbia (RABA) (MD16) | 13318I |
| ☐ | Software Engineer | New York - New York (NY01) | 13644I |
| ☐ | Mid-level Java developer | District of Columbia - Washington(US Courts)(DC03) | 12979I |
| ☐ | Software Engineer | Virginia - Arlington (Off-Site) (VA99) | 13281I |
| ☐ | Jr level Programmer Analyst/Support | District of Columbia - Washington(US Courts)(DC03) | 13589I |
| ☐ | Web Designer | Virginia - Herndon SBA DCMS (VA51) | 13366I |
| ☐ | Software Engineer | District of Columbia - Off-site (DC99) | 13402I |
| ☐ | Technical Lead | Virginia - Herndon (VA27) | 13664I |
| ☐ | Analyst | Maryland - New Carrollton (MD03) | 13214I |
| | | Maryland - New Carrollton | |

| ☐ Software Engineer | (MD03) | 13217I |
| ☐ Sr. Software Developer | Maryland - Bethesda NIH (MD04) | 13613I |
| ☐ Sr. Software Developer | Maryland - Bethesda NIH (MD04) | 13611I |
| ☐ Software Engineer | Virginia - Fairfax (Fair Lakes) (VA02) | 13160I |
| ☐ Software Engineer | New Jersey - Eatontown (Galaxy) (NJ03) | 13400I |
| ☐ Sr. System/Software Engineer | Maryland - Columbia (RABA) (MD16) | 13581I |
| ☐ Integration Specialist | Maryland - Columbia (RABA) (MD16) | 13580I |
| ☐ Software Engineer | Maryland - Rockville (MD01) | 12927I |
| ☐ Programmer Analyst | Washington - Bremerton (Pacific Ave) (WA02) | 13266I |
| ☐ Technical Lead/Cold Fusion Developer | Virginia - Arlington Center (VA38) | 13528I |
| ☐ Programmer Analyst (Java) | Virginia - Alexandria (Galaxy) (VA35) | 11010I |
| ☐ Software Engineer | Virginia - Skyline (VA07) | 13623I |
| ☐ Business Intelligence Engineer | District of Columbia - Washington(US Courts)(DC03) | 9633BI |
| ☐ Software Engineer | California - San Diego (Galaxy) (CA05) | 11764I |
| ☐ Software Engineer | Virginia - Willow Oaks (8280) (VA55) | 13220I |
| ☐ Project Manager USDA FAST (Kansas City) | Kansas - Ft. Leavenworth (KS99) | 12817I |
| ☐ Software Engineer | Virginia - Off-site (VA32) | 13269I |
| ☐ Senior Software Engineer | District of Columbia - Washington (DC99) | 12985I |
| ☐ Principal J2EE Engineer | Maryland - Columbia (RABA) (MD16) | 13344I |
| ☐ Business Objects Developer | District of Columbia - Washington(US Courts)(DC03) | 12858I |
| ☐ .NET DEVELOPER | Virginia - Off-site (VA32) | 13025I |
| ☐ Business Requirements Analyst | District of Columbia - Washington(US Courts)(DC03) | 13377I |
| ☐ Mid-Level Software Engineer | District of Columbia - Washington (DC99) | 13125I |
| ☐ C Embedded Developer | Maryland - Columbia (RABA) (MD16) | 13349I |
| ☐ Shoreside Applications Lead | Virginia - Fairfax (VA99) | 12930I |
| ☐ User Interface Developer | Virginia - Fairfax (Fair Lakes) (VA02) | 13052I |
| ☐ J2EE Software Engineer | District of Columbia - Washington (DC99) | 12472I |

| | | |
|---|---|---|
| ☐ Project Manager/Program Manager | District of Columbia - Washington(US Courts)(DC03) | 13131I |
| ☐ Sr Business Intelligence Developer | District of Columbia - Off-site (DC99) | 11908I |
| ☐ Application Programmer | Vermont - Burlington (VT99) | 13415I |
| ☐ Database Administrator | Illinois - Chicago (IL03) | 13338I |
| ☐ Senior Software Engineer/Developer | Virginia - Rosslyn (USAID) (VA34) | 12810I |
| ☐ C++ Software Engineer | Maryland - Columbia (RABA) (MD16) | 13409I |
| ☐ Software Engineer | Virginia - Arlington Center (VA38) | 12838I |

[ View job(s) ]     [ Submit to job(s) ]     [ Send to friend ]     [ Create sea...



About SRA | Services & Solutions | Investor Relations | News & Events | Federal Contracts | **Career Center**

SRA Home | Site Map | Search | Contact Us | Privacy Policy



ABOUT SRA
SERVICES & SOLUTIONS
INVESTOR RELATIONS
NEWS & EVENTS
FEDERAL CONTRACTS
• CAREER CENTER





FORTUNE®
100 BEST
COMPANIES
TO WORK FOR 2007



# CAREER CENTER

☑ Home    ☑ Search openings    • Search results

## Search results Your search criteria: (Computing/MIS - Systems Analysis) | Refine s

Results **1-31** of 31
Page   1

[ View job(s) ]    [ Submit to job(s) ]    [ Send to friend ]    [ Create sear

Clear checked

| | Position Title | Location | Requisi |
|---|---|---|---|
| ☐ | Senior Space Analyst | Virginia - Fairfax (VA99) | 13496I |
| ☐ | Problem Mgmt Test Lead | District of Columbia - Washington (DC99) | 12795I |
| ☐ | Information Engineer | Virginia - Skyline (VA07) | 13655I |
| ☐ | Analyst | Maryland - New Carrollton (MD03) | 13214I |
| ☐ | Sr Financial Management Specialist | Virginia - Arlington Center (VA38) | 11728I |
| ☐ | Software Engineer | Maryland - Rockville (MD01) | 12927I |
| ☐ | Systems Engineer | Virginia - Skyline (VA07) | 10967I |
| ☐ | Systems Engineer | Virginia - Skyline (VA07) | 10965I |
| ☐ | Analyst | Virginia - Skyline (VA07) | 12881I |
| ☐ | Project Manager USDA FAST (Kansas City) | Kansas - Ft. Leavenworth (KS99) | 12817I |
| ☐ | Systems Engineer | District of Columbia - Washington (US Courts)(DC03) | 13374I |
| ☐ | Systems Engineer | Virginia - McLean (VA26) | 12554I |
| ☐ | Jr. Business Intelligence Developer | District of Columbia - Washington (DC99) | 11910I |
| ☐ | Application Programmer | Vermont - Burlington (VT99) | 13415I |
| ☐ | Technical Lead/Technical Director | Virginia - FDIC (VA31) | 11741I |
| ☐ | Technical Writer | District of Columbia - Washington (DC99) | 13169I |
| ☐ | Network Engineer | Virginia - Springfield Newington (VA16) | 13191I |
| ☐ | Database Administrator | Illinois - Chicago (IL03) | 13338I |

| | | | |
|---|---|---|---|
| ☐ | Senior Software Engineer/Developer | Virginia - Rosslyn (USAID) (VA34) | 12810I |
| ☐ | Systems Architect | Virginia - Arlington Center (VA38) | 12185I |
| ☐ | Senior Communications Analyst | Virginia - Hampton (Langley AFB) (VA99) | 12870I |
| ☐ | Communications Analyst | Virginia - Quantico (VA99) | 11186I |
| ☐ | Systems Engineer | Virginia - Herndon (VA27) | 12963I |
| ☐ | Systems Engineer | Virginia - Crystal City (VA19) | 13315I |
| ☐ | Systems Engineer | Virginia - Crystal City (VA19) | 13305I |
| ☐ | Network Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12444I |
| ☐ | Chief Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12451I |
| ☐ | Configuration Management Specialist | District of Columbia - PBGC 1275 K Street (DC15) | 12470I |
| ☐ | Computer Operations Manager | District of Columbia - PBGC 1275 K Street (DC15) | 12811I |
| ☐ | Systems Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12815I |
| ☐ | Quality Assurance Specialist | Virginia - Newington (VA99) | 10638I |

[ View job(s) ]   [ Submit to job(s) ]   [ Send to friend ]   [ Create sea⋯ ]



About SRA | Services & Solutions | Investor Relations | News & Events | Federal Contracts | **Career Center**

SRA Home | Site Map | Search | Contact Us | Privacy Policy



**ABOUT SRA**
**SERVICES & SOLUTIONS**
**INVESTOR RELATIONS**
**NEWS & EVENTS**
**FEDERAL CONTRACTS**
● **CAREER CENTER**



☑ Home   ☑ Search openings   ☐ Search results

### Search results Your search criteria: (Computing/MIS - Technical Support/Help ... m

**Results 1-20 of 20**
**Page   1**

[ View job(s) ]   [ Submit to job(s) ]   [ Send to friend ]   [ Create sea




Clear checked

| | Position Title | Location | Requisi |
|---|---|---|---|
| ☐ | Help Desk Team Lead | Missouri - St. Louis NARA (MO01) | 13333I |
| ☐ | Help Desk Specialist | Virginia - Rosslyn (PFPA) (VA34) | 13571I |
| ☐ | Technical Support Specialist | Virginia - FDIC (VA31) | 13230I |
| ☐ | Help Desk Technician | Virginia - FDIC (VA31) | 13294I |
| ☐ | Tier II Technical Support | Virginia - FDIC (VA31) | 13479I |
| ☐ | Desktop Support Team Lead | Virginia - FDIC (VA31) | 13518I |
| ☐ | Help Desk Technician | Virginia - FDIC (VA31) | 13523I |
| ☐ | Help Desk Support | Virginia - FDIC (VA31) | 13173I |
| ☐ | Database Administrator | Illinois - Chicago (IL03) | 13338I |
| ☐ | User Survey Support | Virginia - FDIC (VA31) | 13258I |
| ☐ | Help Desk Specialist | District of Columbia - Washington (OPM) (DC11) | 13248I |
| ☐ | Help Desk Support Tier 1 | District of Columbia - Washington (OPM) (DC11) | 13247I |
| ☐ | Help Desk Manager Tier 2 | District of Columbia - Washington (OPM) (DC11) | 13246I |
| ☐ | Help Desk Manager | District of Columbia - Washington (OPM) (DC11) | 13244I |
| ☐ | Service Manager | District of Columbia - PBGC 1275 K Street (DC15) | 12441I |
| ☐ | Network Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12444I |
| ☐ | Chief Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12451I |
| ☐ | Configuration Management Specialist | District of Columbia - PBGC 1275 K Street (DC15) | 12470I |

| ☐ | Computer Operations Manager | District of Columbia - PBGC 1275 K Street (DC15) | 12811 |
| ☐ | Systems Engineer | District of Columbia - PBGC 1275 K Street (DC15) | 12815 |

[ View job(s) ]   [ Submit to job(s) ]   [ Send to friend ]   [ Create sea



About SRA | Services & Solutions | Investor Relations | News & Events | Federal Contracts | **Career Center**

SRA Home | Site Map | Search | Contact Us | Privacy Policy



Comptroller of the Currency
Administrator of National Banks

ENSURING A SAFE AND SOUND
NATIONAL BANKING S
FOR ALL AMERICANS

Search

Advanced Search | Subject Index | Site Map | Directory |
Contact the OCC

Home
What's New
About the OCC
Banker Education
Careers at the OCC
Job Search
Entry-Level Bank
Examiner Careers
Experienced Bank
Examiner Careers
Other OCC Careers
Bank Examiner
Cooperative Education
Program
Salaries
Benefits
Equal Employment
Opportunity
Community Affairs
Corporate Applications
CRA Information
Consumer Complaints
and Assistance
Electronic Banking
FOIA
Issuances
Legal and Regulatory
National Bank Appeals
News Releases
Publications
Public Information
Related Sites
Speeches

**National BankNet**
Username

Password

Login
What is BankNet?

## Careers at the OCC:
## Headquarters

The following chart lists salary ranges that reflect base pay only for each position. Click
on the specific position(s) you are interested in to read each job announcement. If a
geographical pay differential applies, the announcement will state the percentage
directly under the salary range.

| Vacancy # | Position | Location | Salary Range | Closes |
|---|---|---|---|---|
| DEU-HQ-07-094 | Director for Congressional Liaison, NB-301-VII | Washington, DC | $110,079 to $206,790 per year<br><br>The salary range above includes 13% geographic differential pay. | 08/03/2007 |
| DEU-HQ-07-095 | Congressional Affairs Specialist, NB-301-V | Washington, DC | $65,201 - $121,362 per year<br><br>The salary range above includes 13% geographic differential pay. | 08/03/2007 |
| DEU-TP-07-008 | Financial Analyst, NB-1160-V/VI | Washington, DC | NB-V $65,201 - $121,362 per year NB-VI $86,332 - $160,573 per year<br><br>The salary range above includes 13% geographic differential pay. | 08/03/2007 |
| DEU-PB-07-006 | Web Content Specialist, NB-0301-V | Washington, DC | $65,201 - $121,362<br><br>The salary range above includes 13% geographic differential pay. | 08/08/2007 |
| | | | $65,201 - $121,362 per | |

DEFENDANT'S
EXHIBIT
ALL-STATE LEGAL®

| | | | year<br><br>The salary range above includes 13% geographic differential pay. | |
|---|---|---|---|---|
| DEU-MT-07-009 | Program Analyst, NB-343-V | Washington, DC | year<br><br>The salary range above includes 13% geographic differential pay. | 08/08/2007 |
| DEU-TM-07-013 | Credit Risk Analyst, NB-0301- IV | Washington, DC | $47,912 - $89,044<br><br>The salary ranges above includes 13% geographic differential pay. | 08/14/2007 |
| DEU-MT-07-010 | Program Coordinator (Section 508), NB-0301-V | Washington, DC | $65,201 - $121,362<br><br>The salary range above includes 13% geographic differential pay. | 08/15/2007 |
| DEU-MT-07-011 | Senior Configuration Management Specialist , NB-2210-VI | Washington, DC | $86,332 to $160,573 per year<br><br>The salary range above includes 13% geographic differential pay. | 08/15/2007 |
| EXT-TM-07-001 | National Bank Examiner (Compliance Specialist), NB-570-VI | Washington, DC | $86,332 to $160,573 per year<br><br>The salary range above includes 13% geographic differential pay. | 08/24/2007 |
| EXT-TM-07-002 | National Bank Examiner (Operational Risk Analyst), NB-0570-VI | Washington, DC | $86,332 to $160,573 per year<br><br>The salary range above includes 13% geographic differential pay. | 08/24/2007 |
| DEU-PB-07-014 | Senior Public Affairs Specialist, NB-1035-VI | Washington, DC | $86,332- $160,573 per year<br><br>The salary ranges above includes 13% | 08/29/2007 |

| | | | | |
|---|---|---|---|---|
| | | | geographic differential pay. | |
| EXT-HQ-07-100-DHA | Financial Economist, NB-110-V | Washington, DC | $65,201 to $121,362 per year<br><br>The salary range above includes 13% geographic differential pay. | Until Filled |

**Download forms (from the OPM Web site):**

- **OF 612 Optional Application for Federal Employment**   **[PDF]   [Word]**
  - **SF 181 Race and National Origin Identification**                **[PDF]**

**Headquarters   Large Banks   Northeast   Central   Southern   Western
Current Job Openings   OCC Careers Page**



| | |
|---|---|
|  The Office of the Comptroller of the Currency was created by Congress to charter national banks, to oversee a nationwide system of banking institutions, and to assure that national banks are safe and sound, competitive and profitable, and capable of serving in the best possible manner the banking needs of their customers. | **Accessibility | Web Privacy Policy | Contact Us Department of the Treasury | USA.gov | No Fear Act | Get Acrobat Reader | HelpWithMyBank.gov |** |

Stanley, Inc. - Advance Your Career with Stanley



COMPANY
CAPABILITIES
CUSTOMERS
CAREERS
INVESTOR RELATIONS

CONTACT US | CONTRACT VEHICLE

Stanley's employees represent some of the best and brightest talent in our
Because this talent is our most important asset, we have challenged ou
continually motivate and retain our people. We strive to maintain our e
competitive edge by investing in their education and continually enhance o
to make Stanley an even greater place to work.

## Openings

CAREERS
VIEW OPENINGS
- RECRUITING EVENTS
- FAQS
OUR CULTURE
EMPLOYEE BENEFITS

### Job Listings

Here are our current job openings. Please view the details for more information, and apply from that page if you are interested.

**Page 1 of 7** 

| Position # | Position Title | Location | Posted Date |
|---|---|---|---|
| 3719 | Analyst | DE-Wurzburg | 05-23-07 |
| 3109 | Cataloger/Classifier | US-DC-Washington | 02-13-07 |
| 4120 | Database Administrator | IQ-Camp Victory | 07-27-07 |
| 3126 | Database Administrator (AWRDS) | US-VA-Arlington | 02-16-07 |
| 3318 | Database Administrator (MWB) | KW-Camp Arifjan | 03-19-07 |
| 3589 | Database Administrator, Senior | US-VA-Arlington | 05-01-07 |
| 4049 | Database/Web Developer | US-SC-North Charleston | 07-20-07 |
| 3501 | Developer | US-GA-Albany | 04-09-07 |
| 3665 | Documentum Developer | US-VA-Arlington | 05-14-07 |
| 4038 | Electronic Technician | US-AL-Redstone Arsenal | 07-19-07 |

**JOB SEARCH AGENT OPTIONS:**

You can save these search settings as an agent, meaning an e-mail will be sent to you every time a new opening matches your criteria. If you would like to create an agent, please fill out the form below and click the create button.

Name of Agent:

[ Create Agent ]     [ Manage My Agents ]

**USE THIS FORM TO DO ANOTHER JOB SEARCH:**



DEFENDANT'S
EXHIBIT

E

 **STANLEY**

COMPANY
CAPABILITIES
CUSTOMERS
CAREERS
INVESTOR RELATIONS

CONTACT US | CONTRACT VEHICLE

 Stanley's employees represent some of the best and brightest talent in our
Because this talent is our most important asset, we have challenged our
continually motivate and retain our people. We strive to maintain our er
competitive edge by investing in their education and continually enhance o
to make Stanley an even greater place to work.

## Openings

### Job Listings

Here are our current job openings. Please view the details for more information,
and apply from that page if you are interested.

**Page 1 of 1**

| Position # | Position Title | Location | Posted Date |
|---|---|---|---|
| 3540 | Senior AWRDS Programmer | US-VA-Alexandria | 04-19-07 |
| 4080 | Senior Programmer/Technical Lead (CLC2S) | US-VA-Dumfries | 07-24-07 |

**JOB SEARCH AGENT OPTIONS:**

You can save these search settings as an agent, meaning an e-mail will be sent
to you every time a new opening matches your criteria. If you would like to
create an agent, please fill out the form below and click the create button.

Name of Agent:

[ Create Agent ]    [ Manage My Agents ]

**USE THIS FORM TO DO ANOTHER JOB SEARCH:**

Keywords:

Location:    (All)
DE-Wurzburg
IQ-Camp Anaconda
IQ-Camp Victory

Category:

CAREERS
VIEW OPENINGS
- RECRUITING EVENTS
- FAQS
OUR CULTURE
EMPLOYEE BENEFITS

**FORTUNE**
**100 BEST**
**COMPANIES**
**TO WORK FOR 2007**



COMPANY
CAPABILITIES
CUSTOMERS
    CAREERS
INVESTOR RELATIONS

CONTACT US | CONTACT US 4IOL



Stanley's employees represent some of the best and brightest talent in our
Because this talent is our most important asset, we have challenged our
continually motivate and retain our people. We strive to maintain our e
competitive edge by investing in their education and continually enhance o
to make Stanley an even greater place to work.

## Openings

CAREERS
VIEW OPENINGS
- RECRUITING EVENTS
- FAQS
OUR CULTURE
EMPLOYEE BENEFITS

### Job Listings

Here are our current job openings. Please view the details for more information,
and apply from that page if you are interested.



FORTUNE
100 BEST
COMPANIES
TO WORK FOR 2007

**Page 1 of 1**

| Position # | Position Title | Location | Posted Date |
|---|---|---|---|
| 4136 | Engineering Technician I | US-SC-North Charleston | 07-31-07 |

**JOB SEARCH AGENT OPTIONS:**

You can save these search settings as an agent, meaning an e-mail will be sent
to you every time a new opening matches your criteria. If you would like to
create an agent, please fill out the form below and click the create button.

    Name of Agent:

    [ Create Agent ]    [ Manage My Agents ]

**USE THIS FORM TO DO ANOTHER JOB SEARCH:**

Keywords:

Location:    (All)
             DE-Wurzburg
             IQ-Camp Anaconda
             IQ-Camp Victory

Category:    (All)
             Administrative, Clerical & Production - Administrative Assista
             Administrative, Clerical & Production - Administrative Assista
             Administrative, Clerical & Production - Coordinator

             [ Search ]

Stanley, Inc. - Advance Your Career with Stanley



COMPANY
CAPABILITIES
CUSTOMERS
██ CAREERS
INVESTOR RELATIONS

CONTACT US I CONTRACT VEHICL



Stanley's employees represent some of the best and brightest talent in our
Because this talent is our most important asset, we have challenged ou
continually motivate and retain our people. We strive to maintain our e
competitive edge by investing in their education and continually enhance o
to make Stanley an even greater place to work.

## Openings

### Job Listings

Here are our current job openings. Please view the details for more information,
and apply from that page if you are interested.

**Page 1 of 1**

| Position # | Position Title | Location | Posted Date |
|---|---|---|---|
| 3719 | Analyst | DE-Wurzburg | 05-23-07 |
| 4038 | Electronic Technician | US-AL-Redstone Arsenal | 07-19-07 |
| 4084 | Special Projects Systems Tester | US-SC-North Charleston | 07-24-07 |

CAREERS
VIEW OPENINGS
- RECRUITING EVENTS
- FAQS
OUR CULTURE
EMPLOYEE BENEFITS



**JOB SEARCH AGENT OPTIONS:**

You can save these search settings as an agent, meaning an e-mail will be sent
to you every time a new opening matches your criteria. If you would like to
create an agent, please fill out the form below and click the create button.

Name of Agent:

[ Create Agent ]    [ Manage My Agents ]

**USE THIS FORM TO DO ANOTHER JOB SEARCH:**

Keywords:

Location:    (All)
DE-Wurzburg
IQ-Camp Anaconda
IQ-Camp Victory

Category:



COMPANY
CAPABILITIES
CUSTOMERS
CAREERS
INVESTOR RELATIONS

CONTACT US | CONTRACT VEHICLE



Stanley's employees represent some of the best and brightest talent in our
Because this talent is our most important asset, we have challenged ou
continually motivate and retain our people. We strive to maintain our e
competitive edge by investing in their education and continually enhance o
to make Stanley an even greater place to work.

## Openings

CAREERS
VIEW OPENINGS
- RECRUITING EVENTS
- FAQS
OUR CULTURE
EMPLOYEE BENEFITS

### Job Listings

Here are our current job openings. Please view the details for more information,
and apply from that page if you are interested.



**Page 1 of 1**

| Position # | Position Title | Location | Posted Date |
|---|---|---|---|
| 3872 | Senior Systems Analyst | US-DC-Washington | 06-19-07 |

**JOB SEARCH AGENT OPTIONS:**

You can save these search settings as an agent, meaning an e-mail will be sent
to you every time a new opening matches your criteria. If you would like to
create an agent, please fill out the form below and click the create button.

Name of Agent:

[ Create Agent ]    [ Manage My Agents ]

**USE THIS FORM TO DO ANOTHER JOB SEARCH:**

Keywords:

Location:
(All)
DE-Wurzburg
IQ-Camp Anaconda
IQ-Camp Victory

Category:
(All)
Administrative, Clerical & Production - Administrative Assista
Administrative, Clerical & Production - Administrative Assista
Administrative, Clerical & Production - Coordinator

[ Search ]