UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RCM Technologies, Inc.,** | * | Case No. 1:07-CV-00670-JDB |
| Plaintiff, | * | |
| vs. | * | |
| **Beacon Hill Staffing Group, LLC,** *et al.*, | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S REPLY TO OPPOSITION
TO APPLICATION FOR TEMPORARY RESTRAINING ORDER**

**I.      Introduction**

The opposition filed by Defendants, Kimberly A. Ayers ("Ayers") and Beacon Hill Staffing Group, LLC ("Beacon Hill"), to the application of Plaintiff, RCM Technologies, Inc. ("RCM"), is notable more for what is not said than for what is said. For example, Ayers and Beacon Hill totally ignore the fact that they have employed Defendants, William Blackford ("Blackford") and Scott Baillie ("Baillie"), in a manner which clearly violates their Non-Disclosure/Non-Solicitation/Non-Competition Agreements ("the Agreement") with RCM.

Indeed, Ayers and Beacon Hill do not even bother to deny that, since being employed by Beacon Hill, Blackford and Baillie have solicited and serviced customers with whom they personally and frequently dealt with while working for RCM. Ayers and Beacon Hill cannot deny that fact in light of the voluminous documents which RCM has submitted to the Court.

Ayers and Beacon Hill also ignore the fact that RCM provided Blackford, Baillie, and Ayers with highly confidential information about RCM's pricing and marketing strategies, profit margins, future needs of customers, and the identity of prospective customers who were being

610818.1
8/8/2007
30462/102329

targeted. Ayers, Blackford, and Baillie also learned about sales opportunities identified by RCM, the expiration dates of contracts with customers, and detailed information about personnel used to staff customers. None of that information could be easily obtained from public sources and all of it would be very useful to RCM's competitors.

As a consequence, that information was entitled to protection by the Agreements and applicable common and statutory law. Moreover, the fact that Ayers may have refrained from taking RCM documents with her when she quit to work for Beacon Hill does not mean that Baillie, Blackford, and Ayers did not and could not use RCM's confidential information and trade secrets in conjunction with their jobs there.

In fact, neither Ayers nor Beacon Hill has described the duties which any of those individuals have been performing for Beacon Hill. Ayers has stated only that she does not recruit candidates to staff customers' requirements and leaves unanswered precisely what she does as "sales executive."[1] (Ayers Declaration, ¶ 16)

RCM has served Blackford with the Verified Amended Complaint and application for the temporary restraining order. RCM has been unable to serve the Verified Amended Complaint on Baillie at his home or workplace and Defendants' counsel have refused to accept service on his behalf. RCM, however, has mailed a copy of the application for temporary restraining order to Baillie at his home address.

RCM will show below that the arguments made by Ayers and Beacon Hill in opposing a temporary restraining order lack merit. Thus, RCM is entitled to an injunction which prohibits them from continuing to engage in the unlawful conduct described in the Verified Amended

---

[1] Ayers' job at Beacon Hill presumably involves substantial customer contact which would enable Ayers to use RCM's confidential information and prior relationships with RCM customers. Moreover, Ayers has not denied that she has solicited or serviced RCM customers.

2

Complaint and declarations filed by RCM. Indeed, at minimum, RCM is entitled to an injunction which prohibits Beacon Hill from continuing to employ Baillie and Blackford since Beacon Hill has not filed an opposition to that aspect of RCM's application.

I.   **RCM Did Not Unduly Delay Seeking A Temporary Restraining Order.**

Ayers and Beacon Hill repeatedly insist that RCM should be denied a temporary restraining order because RCM waited too long to seek such relief. That contention is not only inconsistent with the facts, but also makes no sense.

As previously explained, RCM did not seek a temporary restraining order when the Complaint was filed in April 2007 because Ayers and Beacon Hill had already successfully recruited Blackford and Baillie. For that reason, an injunction could not effectively undo Ayer's breach of her Agreement.

Moreover, RCM did not know until recently that Blackford and Baillie, working under Ayers' supervision, **were actively soliciting and/or servicing key customers** with whom they had frequently dealt while employed by RCM. After satisfying itself that such activities were occurring on a sufficiently wide scale, RCM decided to incur the substantial expense of seeking a temporary restraining order and preliminary injunction against Defendants.

Thus, Ayers and Beacon Hill cannot reasonably claim that RCM waited too long to seek that relief. *See Fowler v. Printers II, Inc.*, 89 Md. App. 448, 457, 598 A.2d 794, 798 (1991) (court issued temporary restraining order against employee even though employer did not file application until five months after employee resigned and employer had known about employee's unlawful conduct during that entire period). Indeed, Ayers and Beacon Hill would have undoubtedly accused RCM of acting prematurely if RCM had not first confirmed what Blackford, Baillie, and Ayers were doing.

In addition, Defendants can hardly complain about being finally called to task and insist that RCM cannot obtain an injunction because they succeeded in engaging in their unlawful conduct without detection for longer than should have been allowed. In fact, Ayers, Blackford, and Baillie made statements to RCM when they resigned which were calculated to deceive RCM about what they intended to do.

For instance, Ayers does not deny that she told RCM that she was quitting for unspecified "personal reasons," when the truth was that she was leaving to open Beacon Hill's new office in the District of Columbia. Indeed, a profile posted for Ayers on Linkedin shows that she started working for Beacon Hill in December 2006, not a month later as represented in the opposition to the application for a temporary restraining order. (Park Declaration) As a consequence, the denial of the injunction sought by RCM would effectively reward Defendants for having deceived RCM. *See C-E-I-R, Inc. v. Computer Dynamics Corp.*, 229 Md. 357, 364-366, 183 A.2d 374, 378-379 (1962) (employee obligated to disclose to employer and should not conceal what employee intended to do after resignation so employer could determine whether legal action to protect employer's business interests was appropriate).

Defendants certainly cannot point to any prejudice sustained due to any delay in RCM's request for an injunction, especially where the Complaint put Ayers and Beacon Hill on notice that RCM considered their conduct to be unlawful. Furthermore, the fact remains that the restrictions imposed by the Agreements on Ayers, Blackford, and Baillie remain in effect until at least December 2007. Hence, RCM is entitled to an injunction enforcing the Agreements and prohibiting Defendants from continuing to engage in their unlawful conduct.

III.   **Ayers and Beacon Hill Have Failed To Demonstrate That RCM Is Not Entitled To A Temporary Restraining Order.**

    A.   **Ayers And Beacon Hill Have Not Demonstrated That RCM Is Unlikely To Prevail On Its Claims.**

        1.   **Breach of Contract**

Ayers and Beacon Hill have made no effort to dispute the following information presented by RCM pertaining to its breach of contract claim.

1. Ayers, Baillie, and Blackford knowingly and voluntarily signed the Agreements when they began employment with RCM.

2. Ayers, Baillie, and Blackford had no prior business relationships with RCM's customers and did not bring any customers to RCM when they left their prior employers.

3. In the course of dealing with RCM's customers, Ayers, Baillie, and Blackford learned about their preferences, habits, business operations, decision-making process, and criteria for selecting temporary and contract employees. Knowledge of that information greatly facilitates obtaining business from RCM's customers, even if job openings are posted in some instances on websites or the internet.

4. Baillie and Blackford developed close business relationships with RCM customers.

5. RCM provided confidential information and trade secrets to Ayers, Baillie, and Blackford at staff meetings and in other ways concerning: (a) pricing and marketing strategies, profit margins, future needs of customers, customers being targeted, sales opportunities, and the expiration dates of contracts with customers; and (b) the identity, qualifications, dependability, skills, and job performance of personnel routinely used by RCM to staff customers and prospective customers.

6. Ayers recruited Baillie and Blackford to work for Beacon Hill after she started her employment at that company in December 2006

7. Since being employed by Beacon Hill, Ayers, Baillie, and Blackford have used information which they obtained while working for RCM and which RCM considered confidential in soliciting and servicing RCM customers, recruit personnel to staff customers, and otherwise compete against RCM.

8. While working for Beacon Hill, Baillie and Blackford have actively solicited and serviced customers with whom they had developed close business relationships while employed by RCM.

9. Documents, such as e-mails, submitted by RCM clearly demonstrate that Ayers served as a point of contact for RCM's customers and had regular dealings with them. Indeed, RCM took Ayers to meetings where customers were being actively solicited. (Declaration of Sean Delaney)

10. Ayers, Baillie, and Blackford can continue to earn a living in the Washington Metropolitan Area by working as recruiters for companies which service market segments that RCM does not handle and as in-house recruiters for various corporations.

The Agreements imposed restrictions which were reasonably necessary to protect RCM's legitimate interests in its customer goodwill and confidential information. Moreover, none of the restrictions unduly limited the ability of Ayers, Baillie, or Blackford to earn a living by working in their chosen occupation.

In addition, Ayers, Baillie, and Blackford have clearly breached their Agreements by soliciting and servicing RCM's customers while working for Beacon Hill. Finally, the Court will not contravene any public policy by requiring those individuals to honor contracts which they

freely executed. *See Platinum Management, Inc. v. Dahms,* 666 A.2d 1028, 1033 and 1038 (N.J. Super. Ct. Law. Div. 1995); *Raven v. A. Klein & Co., Inc.,* 478 A.2d 1208, 1984 (N.J. Super. Ct. App. Div. 1984); *A.T. Hudson & Co., Inc. v. Donovan,* 524 A.2d 412, 415 (N.J. Super. Ct. App. Div. 1987); *Solari Indusries, Inc. v. Malady,* 264 A.2d 53, 59-61 (N.J. 1970).

### 2. Tortious Interference With Contract

Beacon Hill presumably knew about the Agreement signed by Ayers when it hired her and Ayers has not denied that she knew that Blackford and Baillie had signed identical contracts when she offered them jobs. Moreover, the Complaint filed by RCM certainly put Beacon Hill on notice about the existence of the Agreements signed by Ayers, Baillie, and Blackford at least as early as May 2007.

Despite that knowledge, Beacon Hill has continued to employ Ayers, Baillie, and Blackford in capacities which breach their Agreements with RCM. The fact that Beacon Hill felt no animosity toward RCM does not mitigate Beacon Hill's liability for hiring those individuals. *See Mercer Management Consulting, Inc. v. Wilde,* 920 F. Supp. 219, 239 (D.D.C. 1996); *Fowler,* 89 Md. App. at 466-472, 598 A.2d at 802-805.

Beacon Hill obviously made a conscious decision to hire Ayers, Baillie, and Blackford because they had established customer relationships and confidential information procured at a competitor's expense.[2] By pursuing that strategy, Beacon Hill avoided the direct and indirect

---

[2] As evidenced by Ayers' declaration, staffing companies typically require key personnel to sign contracts similar to the Agreement. Thus, Beacon Hill, which may also require such contracts to be signed, had every reason to suspect that Ayers, Baillie, and Blackford were parties to the Agreements with RCM. *See Platinum Management, Inc.,* 666 A.2d at 1035 and 1041 (new employer's failure to ask whether employee was party to a non-compete contract with former employer manifested willful blindness to that fact where such agreements were used by new employer).

start-up costs associated with opening a new office in the District of Columbia.[3]  Hence, RCM is likely to prevail on its claim against Beacon Hill for tortious interference with the Agreements.

### 3. Misappropriation of Trade Secrets and Confidential Information

As explained above, Defendants have been able to rely upon confidential information about RCM's customers and about IT and technical personnel in the Washington Metropolitan Area.  Indeed, RCM provided Ayers, Blackford, and Baillie with far more information than can be found on job openings and resumes posted on websites or the internet.

For example, RCM had accumulated information through experience concerning the reliability, dependability, and **actual** technical and interpersonal skills of candidates for positions with customers.  That type of invaluable information cannot be gleaned from a resume or brief interview with a candidate.  The fact RCM employed Ayers for a period of months rather than years did not preclude her from obtaining and utilizing such confidential information.[4]

Moreover, **none** of that information, which RCM provided to Ayers, Baillie, and Blackford and has compiled over time with substantial effort and expense, was readily available to RCM's competitors.  Thus, RCM was entitled to protection from Defendants' unauthorized use of that information.  *See Morgan Stanley DW, Inc. v. Rothe,* 120 F. Supp. 2d 67, 74-76 (D.D.C. 2001) (list of customers and information about business done with them by employer held to be confidential information and trade secrets protected by Uniform Trade Secrets Act);

---

[3]  In opposing a temporary restraining order, Beacon Hill does not claim to have had any sources of business in the Washington Metropolitan Market before hiring Ayers, Baillie, and Blackford. At most, Beacon Hill tries to create the impression that it had preexisting relationships with some customers who had been were serviced by those former RCM employees, without stating whether those companies were using Beacon Hill to staff positions in the market relevant to this case.

[4]  For example, Ayers would not have known about Baillie and Blackford and their skills, relationships with, and knowledge about RCM's customers if she had not worked for that company.

*A.T. Hudson & Co., Inc. v. Donovan,* 524 A.2d 412, 413 (N.J. Super. Ct. App. Div. 1987) (identity of managers at customers who make procurement decisions is protected confidential information of former employer where competitors would incur time and effort to obtain same data).

Furthermore, RCM's counsel filed the declarations supporting the application for an injunction with the understanding based on statements made at the scheduling conference that a stipulated protective order would be entered which treated as confidential certain documents submitted or exchanged by the parties. RCM has sent a draft of such an order to Defendants' counsel for review and signature. Out of an excess of caution, however, RCM will also file a motion to seal all documents which have been filed and are deemed to contain confidential information. Thus, the filing of documents by RCM was not intended to suggest that some of the information contained in those papers was not confidential.

**B.    RCM Will Be Irreparably Harmed If A Temporary Restraining Order Is Not Granted**

Ayers and Beacon Hill argue that RCM will suffer no irreparable harm if a temporary restraining order does not issue and that an award of damages can adequately redress any injury caused by Defendants' unlawful conduct. That argument obviously ignores reality and the conclusion reached by numerous other courts which have granted injunctions in similar cases. *See e.g., Morgan Stanley DW, Inc.,* 150 F. Supp. 2d at 72; *Fowler,* 89 Md. App. at 459-472, 598 A.2d at 799-805 and cases cited therein. Those courts have recognized that the harm to an employer's customer relationships, business reputation, and confidential information can never be fully calculated and redressed by a damage award.

### C. The Temporary Restraining Order Requested Will Not Substantially Injure Defendants.

Ayers and Beacon Hill contend that the issuance of a temporary restraining order will substantially injure them. That contention lacks merit.

RCM is not trying to stifle competition from Beacon Hill, which has successfully operated in various markets in the United States, including areas serviced by RCM, and can obviously do so in the Washington Metropolitan Area without employing Ayers, Baillie, or Blackford.[5] Indeed, Beacon Hill has not characterized any of those individuals as essential to its operations.

As pointed out above, Ayers, Baillie, and Blackford can obtain employment with other companies, including temporary and contract employee agencies and corporations. Thus, none of them will be unemployable or face impoverishment if they are unable to work for Beacon Hill. In fact, Ayers does not even contend that she tried without success to find employment with another company before accepting a job at Beacon Hill.

Moreover, the temporary restraining order will be of very limited duration and in effect only until the Court has conducted a hearing on RCM's request for a preliminary injunction. RCM has already asked the Court to expedite discovery so that hearing can be held as soon as possible. In addition, RCM will be required to post a bond which will serve as security for any loss of pay that Ayers, Baillie, and Blackford might incur and Beacon Hill does not claim that its District of Columbia office will be unable to operate during the period before that hearing. As a consequence, a temporary restraining will not unduly prejudice Defendants.

---

[5] According to Beacon Hill's website, the company has offices in Boston, Chicago, Cleveland, Minneapolis, and the District of Columbia.

### D. The Public Interest Will Be Furthered By Issuing A Temporary Restraining Order.

Ayers and Beacon Hill insist that the public interest will not be served if the temporary restraining order requested by RCM issues because she would be precluded from earning a living and Beacon Hill performs an important service. Once again, RCM does not seek to prevent Ayers from working in her chosen occupation and she can obtain a job at another company which will allow her to comply with her Agreement.

Moreover, Beacon Hill can continue to provide its services to the public without employing Ayers, Baillie, or Blackford. Thus, RCM has not sought to deprive the public of that service or to stifle competition in a market where several companies compete with each other.

### IV. Conclusion

For the reasons stated in its memoranda, RCM asks the Court to grant a temporary restraining order and to schedule a hearing on a preliminary injunction. As stated above, at minimum, RCM is clearly entitled to an injunction which prohibits Beacon Hill from continuing to employ Baillie and Blackford since Beacon Hill failed to oppose that aspect of RCM's application.

Respectfully Submitted,

\_\_\_\_\_/s/_____
R. Michael Smith (D.C. Bar No. 372654)
Charles R. Bacharach (D.C. Bar No. 448842)
Gordon, Feinblatt, Rothman,
 Hoffberger & Hollander
233 E. Redwood Street
Baltimore, MD  21202
410-576-4174
Attorneys for RCM Technologies, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 8, 2007, a copy of the foregoing Plaintiff's Reply To Opposition To Application For Temporary Restraining Order was mailed, first-class, postage prepaid, to:

Edward J. Longosz, II
Eckert Seamans Cherin & Mellott, LLC
1747 Pennsylvania Ave., NW
Suite 1200
Washington, D.C. 20006

Robert W. Levy
Eckert Seamans Cherin & Mellott, LLC
One International Place
18th Floor
Boston, MA 02110-2602

Scott Baillie
14906 McKisson Court
# A
Silver Spring, MD 20906

William Blackford,
4201 Lee Highway
# 104
Arlington, VA 22207

/s/