**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RCM Technologies, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:07-CV-00670 (JDB) |
| v. | ) | |
| | ) | |
| Beacon Hill Staffing Group, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FIING SUPPLEMENTAL EXHIBITS
IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**

Defendants, Beacon Hill Staffing Group, LLC ("Beacon Hill") and Kimberly A. Ayers

("Ayers"), by undersigned counsel, hereby submit the following Exhibits in further support of

their Opposition to Plaintiff's Application for Temporary Restraining Order: (a) Exhibit 2,

Supplemental Affidavit of Kimberly Ayers; (b) Exhibit 3, Affidavit of William Blackford, Jr.;

and (c) Exhibit 4, Affidavit of Scott M. Baillie.

Respectfully Submitted,

**ECKERT SEAMANS CHERIN
& MELLOTT, LLC**

By:      _Mark A. Johnston_
Edward J. Longosz, II, (#368932)
Mark A. Johnston, (#455764)
1747 Pennsylvania Ave., N.W.,
Twelfth Floor
Washington, D.C. 20006
(202) 659-6600

Counsel for Defendants, Beacon Hill Staffing
Group, LLC and Kimberly A. Ayers

Of Counsel:

Robert W. Levy, Esquire
Eckert Seamans Cherin & Mellott, LLC
One International Place, 18th Floor
Boston, MA 02110-2602
TEL: (617) 342-6800
FAX: (617) 342-6899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Notice of Filing Supplemental Exhibits in Support of Defendants' Opposition to Plaintiff's Application for Temporary Restraining Order** was electronically filed and served, this 10th day of August, 2007, to:

R. Michael Smith, Esquire
Gordon Feinblatt Rothman Hoffberger
 & Hollander, LLC
23 East Redwood Street
Baltimore, MD 21202

_____
*Mark A. Johnston*
Mark A. Johnston

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

RCM Technologies, Inc.            )
                             ) Case No.:  1:07-CV-00670 (JDB)

     Plaintiff,             )
                             )

     v.                   )
                             )

Beacon Hill Staffing Group, LLC    )
                             )

and                      )
                             )

Kimberly A. Ayers          )
                             )

     Defendants.           )

## SUPPLEMENTAL AFFIDAVIT OF KIMBERLY AYERS

I, Kimberly Ayers, upon my own personal knowledge, under oath hereby depose and state as follows:

1.      I am in receipt of Plaintiff's Reply to Opposition to Application for Temporary Restraining Order filed with the Court on August 8, 2007.  I submit this Affidavit in order to clarify numerous false, erroneous and misleading statements made by RCM in its Reply.  Specifically, RCM repeatedly asserts that I engaged in improper behavior because I did not deny each and every allegation or contention in RCM's voluminous filings in this case.  This is untrue.  As I stated in my original Affidavit, any failure to respond to a specific allegation by RCM was not to be construed as an admission on my behalf.  Further, RCM has failed to present any evidence of wrongdoing on my behalf, just conclusory allegations.

2.      In order to ensure that the record is clear, I respond to each misleading statement made by RCM as follows:



(a)    Bill Blackford, Scott Baillie and I have not "solicited and serviced customers with whom [we] personally and frequently dealt with while working for RCM" as RCM claims. In fact, it was the practice at RCM for recruiters (which the three of us were during our brief employment with RCM) to have virtually no contact, and in any event no substantive contact, with any of its customers. Bill Blackford, Scott Baillie and I were not a point of contact for any RCM client.

(b)    I did not know of, and was not privy to, any "highly confidential information about RCM's pricing and marketing strategies, profit margins, future needs of customers and identity of prospective customers who were being targeted" as alleged by RCM.

(c)    I was not aware of any specific sales opportunities when I left RCM's employment on December 1, 2006. More importantly, any sales opportunities as of December 1, 2006 are certainly stale and of no value now over eight months after I left their employment. Furthermore, as I have stated, I took no documents, including any potential sales opportunities, expiration dates of contracts with customers or information about personnel used to staff RCM's customers nor, at this late date, do I recall any of the foregoing.

(d)    I know of no confidential information or trade secrets that I learned while employed in my 73 days at RCM. In fact, as I have previously stated, in my ten years of experience in the staffing business there was nothing unique about the way RCM conducted its business.

(e)    Most of the companies where I can recall that RCM had made placements were companies which were already serviced by Beacon Hill prior to my employment with it.

2

(f)    Contrary to RCM's insistence, I did not develop close or in fact, any, business relationships with any of RCM's customers and had very little, if any, contact with its customers. My sole job function at RCM was as a recruiter seeking candidates.

(g)    William Blackford and Scott Baillie do not solicit clients in their positions as recruiters at Beacon Hill. Solicitation of clients is the role of an Account Executive, not a recruiter.

(h)    While employed for Beacon Hill I have not dealt with any candidate with whom I had any communication, nonetheless placed, while employed by RCM.

(i)    I have not used any information which I learned from my employment with RCM which is confidential to RCM. I did not develop close business relationships with any customer of RCM; although I was copied on emails, I was not a point of contact for RCM's customers and had no regular dealings with them.

(j)    The only meetings that I went to which were attended by purported customers of RCM were lunches with my brother; a meeting with an individual of a company whom I worked with prior to joining RCM and who is a personal friend of mine (Craig Park was at this meeting); and I accompanied Sean Delaney on a visit to another company so that Sean could get a badge. Sean and I briefly met someone in recruiting, but I do not recall talking about requirements.

3.    My duties at Beacon Hill are as an Account Executive and, notwithstanding that I had no substantive contact with any of RCM's customers (with the exception of my brother who worked for Fannie Mae), I have not solicited any companies in which my candidates were placed by RCM's account managers while I was a recruiter at RCM.

3

4.    I was an employee at will at RCM and could terminate my employment for any reason, or for no reason, just as RCM could terminate my employment for any reason or no reason.

5.    I reserve the right to respond to or address any additional allegations or statements not previously made by RCM concerning this matter.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS *11* DAY OF AUGUST, 2007.

_____
Kimberly Ayers

4

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

RCM Technologies, Inc.          )
                                        )

    Plaintiff,             )

                                          )     Case No.: 1:07-CV-00670 (JDB)

v.                         )

                                        )

Beacon Hill Staffing Group, LLC, et al.  )

                                        )

    Defendants.          )

### AFFIDAVIT OF WILLIAM BLACKFORD, JR.

I, William Blackford, Jr., upon my own personal knowledge, under oath hereby depose and state as follows:

1.     I am one of the Defendants in the above matter. I have personal knowledge of the fact set forth herein, and make this Affidavit in support of Defendants' Opposition to Plaintiff's Application for Temporary Restraining Order.

2.     I am 27 years old, married and self supporting. I am a graduate of Mary Washington College where I received my bachelor's of science degree in business administration.

3.     From July, 2002 until September, 2004 I was employed in the financial services industry. In October, 2004, I began working for Manpower Professional ("Manpower") as a Technical Recruiter in Linthicum, Md. In this position I did full cycle recruiting for junior, mid, and senior level positions. I worked on contract, contract-to-hire, and direct hire positions with federal and commercial clients.

4.     In May, 2006, I left Manpower and accepted a Technical Recruiter position with RCM Technologies, Inc. ("RCM"). My job responsibilities with RCM were the same as they



were in my previous position with Manpower. My pay at RCM was a base of $40,000 plus commissions for successful placements.

5.    I received no training, nor was any generally available, while employed at RCM.

6.    Contrary to the statements made by RCM, I have not "solicited and serviced customers with whom [I] personally and frequently dealt with while working for RCM" as RCM claims.

7.    I did not know of, and was not privy to, any "highly confidential information about RCM's pricing and marketing strategies, profit margins, future needs of customers and identity of prospective customers who were being targeted" as alleged by RCM.

8.    I know of no confidential information or trade secrets that I learned while employed at RCM.

9.    I left RCM on December 14, 2006 for a number of reasons:

(a)    I felt that the sales team was below average and lacked the motivation/desire to succeed;

(b)    When I was hired I was told that the Sales Team at RCM had a number of existing clients and great relationships with there clients. However, when I started working at RCM I found that our sales team had very few existing relationships and they were not making the necessary efforts to generate business or to develop additional opportunities from existing relationships;

(c)    I was very concerned about the lack of business coming in. We had very few positions to work on, and considering that my livelihood relies on the ability of the sales people to bring in positions, I was very concerned about working in this environment;

(d)    I had a conflict of personality with RCM's sales manager, Sean Delaney.

10.     Prior to leaving RCM, I spoke with Craig Park, the Vice President responsible for managing RCM's Bethesda, Md. office, about some of my concerns in regards to the Sales Team. However, Craig did not make any attempts to remedy address the problems which I brought to his attention. As a result, I felt that the office would not be successful unless these ever present problems were rectified.

11.     When I left RCM I told Craig Park the reason why I was leaving was that I could not work with Sean Delaney anymore.

12.     When I left my employment at RCM I took only my personal belongings, which included a picture of my wife and my headset. I did not take any information or other property belonging to RCM. I did not take, nor do I have in my possession, custody or control, any customer lists, candidate lists, personnel lists, fee schedules, training manuals or materials, compilations of information, or other documents that belong to RCM.

13.     I have had no contact with any candidate whom I placed, or to the best of my memory, had any dealings with while employed at RCM. I have not solicited any companies which I made placements at while employed by RCM. All the companies I have dealt with are generally known in the industry or available through public sources.

14.     I had no dealings with any company clients of RCM during my time of employment there.

15.     Substantially all of the expense reports attached to Mr. Park's Declaration filed in support of RCM's Application confirm that I only entertained candidates, not customers, in my position as a recruiter. The notations on these expense reports referencing companies only show where the candidates were placed. For example, I took Robert Wade to lunch after successfully

3

placing him in a position. Mr. Wade was a candidate, not a client. I have had no dealings with Mr. Wade since I began working for Beacon Hill.

16.    I am not aware of any trade secrets or confidential information which belong to RCM, nor do I believe any exist.

17.    I will suffer substantial harm if I am not permitted to continue my current employment, which is my only source of income, as this would prevent me from earning a livelihood. Further, outside of my retirement funds, I have little in the way of savings upon which I could rely if unable to work in my current job.

18.    There are many allegations contained in the papers filed by RCM; my failure to object to any of them should not be construed to mean that I agree with the allegations.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _____ DAY OF AUGUST, 2007.

_____
William Blackford, Jr.

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RCM Technologies, Inc.    )
          )
  Plaintiff,     )
          )  Case No.:  1:07-CV-00670 (JDB)
  v.       )
          )
Beacon Hill Staffing Group, LLC, et al. )
          )
  Defendants.    )

## AFFIDAVIT OF SCOTT M. BAILLIE

I, Scott M. Baillie, upon my own personal knowledge, under oath hereby depose and state as follows:

1.  I am one of the Defendants in the above matter.  I have personal knowledge of the fact set forth herein, and make this Affidavit in support of Defendants' Opposition to Plaintiff's Application for Temporary Restraining Order.

2.  I am 30 years old, married and self-supporting.  I attended the University of Maryland, but did not receive a degree.

3.  From 2002 until October of 2004, I was employed by John Hancock where I sold insurance.  In October, 2004, I began working for Maxim Healthcare Services as a recruiter.  In May, 2005 I accepted a position with Manpower Professional ("Manpower") as an IT Recruiter.

4.  In May, 2006, I was recruited by RCM Technologies, Inc. ("RCM") through an executive recruiting firm.  I left Manpower and accepted a Technical Recruiter position with RCM and began on May 18, 2006.



5.    My job responsibilities with RCM were the same as they were in my previous position with Manpower.  My pay at RCM was a base of $40,000 plus commissions for successful placements.

6.    I received no training while employed at RCM.  As a recruiter for RCM, I primarily used Monster.com and other job boards to identify candidates.

7.    Contrary to the statements made by RCM, I have not "solicited and serviced customers with whom [I] personally and frequently dealt with while working for RCM" as RCM claims.

8.    I did not know of, and was not privy to, any "highly confidential information about RCM's pricing and marketing strategies, profit margins, future needs of customers and identity of prospective customers who were being targeted" as alleged by RCM.

9.    I know of no confidential information or trade secrets that I learned while employed at RCM.

10.    My sole job function at RCM was as a recruiter seeking candidates.  I did not develop any business relationships with any of RCM's customers and never went on a client meeting with RCM.  I never spoke with an RCM client, or emailed an RCM client directly.

11.    While employed for Beacon Hill I have not dealt with any candidate with whom I had any communication, nonetheless placed, while employed by RCM.

12.    I left RCM on December 14, 2006 for a number of reasons:

(a)    Upon joining RCM, I was told there were numerous established accounts with exclusive relationships.  I learned very quickly that was not the case.  I was also told that there was an equal relationship between sales executives and recruiters.  I felt that I was grossly misinformed in this respect and that recruiters as a whole were poorly treated.

(b)    When I was hired, I was further told that the sales team at RCM had a number of existing clients and great relationships with their clients. However, when I started working at RCM, I found that our sales team had very few existing relationships; and they were not making the necessary efforts to generate business or to develop additional opportunities from existing relationships; and

(c)    I had a conflict of personality with RCM's sales manager, Sean Delaney, and felt that it was affecting my ability to earn commissions.

13.    When I left my employment at RCM I took only my personal belongings, which included a picture of my wife. I did not take any information or other property belonging to RCM. I did not take, nor do I have in my possession, custody or control, any customer lists, candidate lists, personnel lists, fee schedules, training manuals or materials, compilations of information, or other documents that belong to RCM.

14.    Substantially all of the expense reports attached to Mr. Park's Declaration filed in support of RCM's Application confirm that recruiters only entertained candidates, not customers.

15.    I am not aware of any trade secrets or confidential information which belong to RCM, nor do I believe any exist.

16.    I will suffer substantial harm if I am not permitted to continue my current employment, which is my only source of income, as this would prevent me from earning a livelihood. Further, outside of my retirement funds, I have little in the way of savings upon which I could rely if unable to work in my current job.

17.    There are many allegations contained in the papers filed by RCM; my failure to object to any of them should not be construed to mean that I agree with the allegations.

3

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS *1* DAY OF

AUGUST, 2007.

_____
Scott M. Baillie

4