UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RCM TECHNOLOGIES, INC.,<br><br>    Plaintiff,<br><br>        v.<br><br>BEACON HILL STAFFING GROUP, LLC, et al.,<br><br>    Defendants. | Civil Action No. 07-0670 (JDB) |

**MEMORANDUM OPINION & ORDER**

In this action, filed on April 12, 2007, plaintiff RCM Technologies, Inc. ("RCM") has sued defendants Beacon Hill Staffing Group, LLC ("Beacon Hill") and three of its employees, Kimberly Ayers, William Blackford and Scott Baillie, all former employees of RCM, alleging that the conduct of defendants violates non-competition agreements ("Agreements") that Ayers, Blackford and Baillie entered with RCM. Almost four months after filing this action, RCM filed an application for a temporary restraining order on July 31, 2007, seeking to enjoin what RCM contends are continuing serious violations of the Agreements. The Court has fully considered the memoranda and supporting affidavits and other materials submitted by both sides. RCM's application/motion for a temporary restraining order will be denied.

Both RCM and Beacon Hill are in the staffing industry and provide temporary and contract employees to work in IT and technical positions for customers in the Washington metropolitan area. They employ personnel in customer sales ("account executives") and in recruiting candidates to fill customers' needs ("recruiters"). At RCM, Ayers was a senior

recruiter and Blackford and Baillie were recruiters.  Each signed an Agreement pursuant to which the employee agreed, for a period of one year after terminating employment, not to disclose RCM's trade secrets or confidential information, not to solicit or attempt to hire other RCM employees, and not to compete with RCM in a new position in the staffing industry.

Ayers voluntarily left RCM on December 1, 2006.  She had been employed at RCM for only 73 days, but had nine years of prior experience in the staffing industry.  According to her, she was actively solicited by a senior official at RCM to leave her prior position and come to work at RCM.[1]  She began work at Beacon Hill in January 2007.  Although she was a recruiter at RCM, charged with locating candidates for employment with RCM's customers, she works solely in sales as an account executive with Beacon Hill.

Blackford and Baillie each worked as a recruiter at RCM from May 2006 until terminating employment on December 14, 2006.  Each has worked as a recruiter in the staffing industry since October 2004.  Since joining Beacon Hill, Blackford and Baillie have continued to work as recruiters.  As one of the reasons for leaving RCM, each has identified concerns with the strength of RCM's sales team.

In its complaint and other materials supporting the temporary restraining order application, RCM asserts claims against Beacon Hill, Ayers, Blackford and Baillie for breach of contract (i.e., violation of the Agreements), tortious interference with contract and prospective business advantage, and violation of the District of Columbia Trade Secrets Act, D.C. Code § 36-401.  Essentially, the allegations are that the Agreements have been, and are continuing to be,

---

[1] Apparently, RCM and its officials have been sued in federal court in Maryland by Ayer's prior employer in an action similar to this one.

violated through the hiring of Blackford and Baillie, the employment of Ayers, Blackford and Baillie in competition with RCM (particularly their contacts with RCM's present or past customers and recruits), and the use and disclosure by Ayers, Blackford and Baillie of RCM's trade secrets and confidential information.

RCM filed suit against Beacon Hill and Ayers on April 12, 2007.  No emergency relief was sought, and the case proceeded on a normal, leisurely schedule through service, answer, setting an initial scheduling conference and the parties' required "meet and confer" conference. On July 26, RCM moved for leave to file an amended complaint adding Blackford and Baillie as defendants, and then following the July 30 initial scheduling conference RCM moved on July 31 for a temporary restraining order.

The standard for issuance of the "extraordinary and drastic remedy" of a temporary restraining order or a preliminary injunction is very high, see Mazurek v. Armstrong, 520 U.S. 968, 972 (1997), and by now very well established.  The movant must demonstrate (1) a substantial likelihood of success on the merits of its claims; (2) that it will suffer irreparable harm if an injunction is not granted; (3) that the issuance of an injunction will not unduly or substantially harm other parties; and (4) that the public interest favors issuance of an injunction. See, e.g., Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360 (D.C. Cir. 1999); CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).  These factors interrelate on a sliding scale and should be balanced against each other; with a particularly weak showing on one factor, satisfaction of the others may still not warrant injunctive relief.  See Davenport, 166 F.3d at 361; Taylor v. Resolution Trust Corp., 56 F.3d 1497, 1506 (D.C. Cir. 1995); Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 842-43 (D.C.

Cir. 1977). A showing of substantial likelihood of success is especially important, and it would take a very strong showing on the other factors to overcome a failure to demonstrate a substantial likelihood of success on the merits. Davenport, 166 F.3d at 366.

  RCM has not met its very high burden here. To begin with, even assuming the validity and enforceability of the Agreements, a point which defendants dispute, the evidence presently before the Court does not clearly establish that there has been a broad violation or breach of the Agreements. Hence, RCM has not shown at this time the requisite substantial likelihood of success on the merits. It may be that the hiring of Blackford and Baillie was in violation of the Agreements, but even if so, RCM did not seem concerned when that occurred and did not seek emergency relief until many months later. It is, therefore, by itself hardly the stuff of which a strong likelihood of success on the merits is made.

  The remainder of RCM's case on the merits is, it is fair to say, in dispute and thus RCM has not made the requisite clear showing that it is likely to succeed. Certainly RCM contends that Ayers, Blackford and Baillie have been soliciting other RCM employees, RCM's customers, and recruits RCM has used in the past to staff positions, and have been using RCM trade secrets and other confidential information, all of which could violate the Agreements. But defendants have firmly denied those contentions in several affidavits, and the record at this point does not plainly favor RCM's version of events. While the Court cannot resolve these core issues on RCM's present motion, it is enough that at this stage of the litigation RCM has not shown a strong likelihood of success on the merits of its claims.

  The Court notes that some elements of the current record cast doubt on the strength of RCM's claims. Ayers was only employed at RCM for seventy-three days out of a more than

nine-year period in the staffing industry. And while Ayers was a recruiter at RCM, having little contact with customers, she has worked primarily in sales over the length of her career and is an account executive at Beacon Hill now. Blackford and Baillie were also at RCM for relatively brief parts of their careers, with little customer contact. All three contend forcefully that while at RCM they had no access to RCM trade secrets or confidential information, or even to RCM's customers. This history raises some question with respect to RCM's contentions that its former employees are now soliciting its customers and staffing resources and using RCM trade secrets or confidential information -- contentions which, of course, are strongly denied by Ayers, Blackford and Baillie. There is no specific evidence, as yet, that they actually acquired and have been utilizing protected RCM trade secrets or confidential information. Hence, RCM has not made a clear showing at this early stage of a strong likelihood of success on the merits.

Nor does RCM fare any better on the equally fundamental requirement that it show irreparable injury sufficient to warrant issuance of the "extraordinary and drastic remedy" of a temporary restraining order.[2] Under the clear law in this circuit, the injury in support of extraordinary preliminary injunctive relief "'must be both certain and great; it must be actual and not theoretical,'" and "'of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). RCM's alleged injury, however, remains at this time largely speculative, and far short of the certainty and imminence that is required.

---

[2] On the other side of the balance of harms, an injunction that may effectively cause Ayers, Blackford and Baillie to cease work with Beacon Hill would be very disruptive and therefore should not be lightly entered.

It is noteworthy that RCM waited until July 31, 2007, eight months after Ayers left RCM and went to work for Beacon Hill, and almost four months after this action was filed, to seek a temporary restraining order. RCM's explanation for the delay is basically that it only recently learned of activities by its former employees and Beacon Hill that amounted to breach of the Agreements and posed a significant risk to RCM's ongoing business. But it appers that some elements of RCM's alleged injury have been known for months -- for example, the hiring of Blackford and Baillie by Beacon Hill and (allegedly) Ayers. And other injury claims -- for example, the risk of trade secrets and other confidential information being used -- are no less speculative today than was the case several months ago. Indeed, while RCM may reasonably fear use of its business confidential information, or other conduct possibly in violation of the Agreements, the specific evidence of such violations and any impact on RCM remains lacking. Specific, concrete and imminent claims of injury simply have yet to be established. Given this history, RCM has not made on the current record the clear showing of irreparable harm that will support the extraordinary injunctive relief it seeks.

In so concluding, the Court does not intend to offer any firm assessment of irreparable harm, or the overall balance of harms, other than to conclude that at this time RCM has not met its burden on irreparable harm. Nor should that conclusion or the Court's conclusion on the likelihood of success on the merits be taken as any observation as to the seriousness of RCM's claims. If defendants are ultimately shown to be in breach of the Agreements or otherwise liable on RCM's claims, those are serious matters that could warrant the type of emergency relief RCM seeks. Until then, Ayers, Blackford and Baillie are well-advised to avoid conduct that would potentially be in breach of the Agreements with RCM that they entered and remain bound by.

Accordingly, and for these reasons, it is hereby

**ORDERED** that RCM's motion for a temporary restraining order is **DENIED**; it is further

**ORDERED** that RCM's motion to seal is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that counsel for the parties shall confer by August 29, 2007, and shall by September 4, 2007, provide to the Court (1) a proposed schedule (joint or, if necessary, separate) for limited expedited discovery and briefing relevant to a motion for a preliminary injunction, and (2) a proposed protective order to govern such discovery and preliminary injunction proceedings, with sufficient specificity to identify the precise materials covered.

**SO ORDERED**.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Dated: August 21, 2007